## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MOBITV, INC., *et al.*,[1]<br><br>                           Debtors. | Chapter 11<br><br>Case No. 21-10457 (\_\_\_)<br><br>Joint Administration Requested |

### DEBTORS' MOTION FOR ENTRY OF ORDER AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) GRANTING RELATED RELIEF

MobiTV, Inc. and MobiTV Service Corporation, the above-captioned debtors and debtors in possession (the "Debtors"), hereby move (the "Motion") for the entry of an order (i) authorizing the Debtors to (a) continue operating the Cash Management System (as defined herein), (b) open a new "DIP Funding Account" (as defined below), (c) honor and pay the Bank Fees (as defined herein) in the normal course, (d) maintain existing business forms, and (e) granting certain related relief, as described more fully herein.  In support of the Motion, the Debtors submit the declaration of Terri Stevens (the "First Day Declaration"),[2] filed concurrently herewith and incorporated herein by reference. In further support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.  The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District*

---

[1]  The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: MobiTV, Inc. (2422) and MobiTV Service Corporation (8357). The Debtors' mailing address is 1900 Powell Street, 9th Floor, Emeryville, CA 94608.

[2]  A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

*Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory basis for the relief requested herein are sections 105, 345, and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Rule 2015-2.

## BACKGROUND

**A.      Case Background**

4.      On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases (the "Chapter 11 Cases").

5.      The Debtors are leading providers of end-to-end internet protocol streaming television services ("IPTV") through which the Debtors provide a video platform and technology that streams content from leading television providers such as HBO, Fox, the Walt Disney Company, NBC, CBS, and others. The Debtors offer their IPTV services and technology to cable television operators, broadband providers, and cellular device carriers via its proprietary cloud-

2

based, fully customizable, white label application, allowing the Debtors' over 125 business customers to provide television content to over 300,000 end-user subscribers.

6. Additional information regarding the Debtors' business and capital structure, as well as a description of the events precipitating the filing these Chapter 11 Cases, is set forth in the First Day Declaration.

**B.      Cash Management System**

7. In the ordinary course of business, the Debtors use a cash management system to collect funds from their operations and to pay operating and administrative expenses (the "Cash Management System"). The Cash Management System allows the Debtors to collect and transfer efficiently the cash generated by its business and pay their financial obligations. The Cash Management System has been in place for more than six years and is essential to the stability of the Debtors' assets and business objectives, and to maximizing the value of their estates.

8. As of the Petition Date, the Debtors maintain nine (9) bank accounts (the "Bank Accounts") at Silicon Valley Bank ("SVB" or the "Bank"). The Cash Management System generally consists of (i) a receivables account, into which the Debtors receive automated clearinghouse ("ACH") transfer payments from customers ("Receivables Account"); (ii) two payroll accounts, one of which is directly debited by the Debtors' payroll administrator ("Payroll Account") and one of which is inactive; (iii) an account from which the Debtors write checks to creditors who do not or cannot accept ACH or wire transfers ("Payables Account"); (iv) a collateral account securing obligations on corporate credit cards issued by SVB; (v) an operating account for debtor MobiTV Service Corporation that, except for some minimal activity related to paying down

corporate credit card debt, is little used (the "Service Operating Account"); and (vi) a main operating account (the "Operating Account"). Funds are transferred from the Operating Account to fund payments from the Payroll Account, the Payables Account, and the Service Operating Account. Payments to creditors are primarily made from the Operating Account, in a variety of ways, including drafts, wire transfers, and ACH transfers.

9.    The Debtors also maintain two bank accounts at SVB (Account Nos. 2500 and 8480) whose cash balances secure a letter of credit and a corporate credit card. Account No. 2500 secures a letter of credit in the approximate amount of $350,000 in favor of the Debtors' landlord. Account No. 8480 secures the Debtors' corporate creditor with SVB (approx. $15,000).

10.    The Debtors also have a currently inactive Bank Account that had previously been dedicated to receiving and disbursing the proceeds of a PPP Loan from the federal government. The Debtors intend to dedicate this Bank Account to hold the adequate assurance deposit for utility providers.[3]

11.    All funds on deposit in the Debtors' Bank Accounts are insured by the Federal Deposit Insurance Corporation to the extent provided by law. SVB is on the U.S. Trustee's list of approved depository institutions. A general diagram of the movement of funds within the Cash Management System is attached hereto as **Exhibit B**.

12.    As of the Petition Date, there was approximately $42,000 in cash in the Bank Accounts.[4]

---

[3] Contemporaneously herewith, the Debtors filed a motion seeking approval of adequate assurance of payment for future utility services and related relief.

[4] There is approximately $365,000 in the two cash collateral accounts described in ¶9 above.

4

13.     The Cash Management System is carefully managed through oversight procedures implemented by the Debtors' financial and accounting personnel.  Through its control over the Cash Management System and the daily reporting received in connection therewith, the Debtors' management can provide cash forecasting and reporting, monitor the collection and disbursement of funds, and maintain control of the administration of the Bank Accounts.  The Cash Management System is essential to the efficient execution and achievement of the Debtors' strategic business objectives, and, ultimately, to maximizing the value of the Debtors' estate.

**C.     Bank Fees**

14.     The Debtors incur certain fees and charges in connection with the ordinary course operation of the Cash Management System (collectively, the "Bank Fees").  The Bank Fees include account maintenance charges, charges relating to ACH and wire transfers, lockbox and depository service charges, and other customary miscellaneous charges. On average, the Debtors incur only de minimis Bank Fees per month. In the ordinary course of business, the Bank charges, and the Debtors pay, honor, or allow the deduction from the appropriate bank accounts, certain service charges, and other fees, costs, and expenses.  The Debtors do not believe there are any material prepetition Bank Fees outstanding on the Petition Date, but nonetheless seeks approval to pay any such Bank Fees in the ordinary course.

**D.     Business Forms**

15.     The Debtors utilize numerous preprinted business forms in the ordinary course of its business (including, without limitation, letterhead, purchase orders, invoices, and checks), including in connection with its Cash Management System.  The Debtors would be required by the United States Trustee (the "U.S. Trustee") under the U.S. Trustee's *Operating*

5

*Guidelines for Chapter 11 Case* (the "U.S. Trustee Guidelines") to incur the expense and delay of ordering entirely new business forms referencing the Debtors' status as debtors in possession absent relief from the Court.  The Debtors seek authority to use their pre-existing business forms without such a reference in order to minimize expense to the estate.  The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors in possession and, therefore, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reorder checks with the designation "Debtor-in-Possession" and the corresponding case number.

**E.**     **The Debtors' Bank Accounts Comply with Section 345 of the Bankruptcy Code**

16.     Pursuant to the U.S. Trustee Guidelines, the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office.  As noted above, the Bank Accounts are maintained at SVB, which has executed a Uniform Depository Agreement ("UDA") with, and is designated as an authorized depository by, the U.S. Trustee, pursuant to the U.S. Trustee Operating Guidelines.  For this reason and the reasons articulated above, the Debtors submit that they are in compliance with section 345 of the Bankruptcy Code and with the U.S. Trustee Operating Guidelines.

**RELIEF REQUESTED**

17.     By this Motion, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule  2015-2, the Debtors request the entry of

an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>"), authorizing but not directing the Debtors, in their discretion, to (a) continue operating the Cash Management System, (b) open a new "DIP Funding Account" (as defined herein), (c) honor and pay the Bank Fees (as defined herein) in the normal course, (d) maintain existing business forms, and (e) granting certain related relief, as described more fully herein.

## BASIS FOR RELIEF

**A.      Maintaining the Existing Cash Management
          System Is Essential to Debtors' Operational Stability**

18.      The U.S. Trustee Guidelines require a debtor in possession to, among other things:

  a.      establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes;

  b.      close all existing bank accounts and open new debtor-in-possession accounts;

  c.      maintain a separate debtor-in-possession account for cash collateral; and

  d.      obtain checks that bear the designation "debtor-in-possession" and reference the bankruptcy case number and type of account on such checks.

19.      These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.  Enforcement of this provision of the U.S. Trustee Guidelines during these Chapter 11 Cases would severely disrupt the administration of the Debtors' estates.   Accordingly, the Debtors respectfully request authorization to operate the Bank Accounts in the same manner as they were maintained in the ordinary course of business prior to the Petition Date.

DOCS_DE:233048.7

20.     Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Additionally, courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys.,* 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

21.     Here, continued use of the Cash Management System will facilitate the Chapter 11 Case by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of postpetition obligations. The Debtors respectfully submit that parties in interest will not be harmed by the maintenance of the existing Cash Management System because the Debtors employ appropriate mechanisms and internal control procedures to prevent unauthorized payments on account of obligations incurred before the Petition Date. As such, maintaining the Cash Management System is in the best interests of the Debtors' estate.

22.     The Debtors are required under the terms of their proposed debtor in possession financing to open a new Bank Account with an approved depository institution to receive, hold and disburse the proceeds of DIP financing (the "DIP Funding Account").  The DIP Funding Account will be subject solely to the liens and security interest of the DIP financing lender.  The Debtors respectfully submit that parties in interest will not be harmed by the opening and continuation of the DIP Funding Account as it will held in an institution that has executed a UDA with the U.S. Trustee.

23.     Furthermore, as discussed above, in the ordinary course of business, the Debtors conduct transactions through electronic wire transfers and other similar methods.  If the Debtors' ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, their estates will incur additional and unnecessary costs.  Accordingly, the Debtors submit that it is in the best interests of all stakeholders for the Court to grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check with a notation representing the reason for the disbursement.

**B.     Authorizing (i) the Bank to Continue to Maintain, Service, and Administer the Bank Accounts and (ii) the Debtors to Pay Bank Fees, Each in the Ordinary Course of Business, Is Warranted**

24.     The Debtors respectfully request that the Court authorize the Bank to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as Debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Bank should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect

9

thereto; provided, however, that any check, advise, draft, or other notification that the Debtors advised the Bank to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Bank only to the extent authorized by order of the Court.

25.    The Debtors further request that the Court authorize the Bank to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.  The Debtors also request that, to the extent the Bank honors a prepetition check or other item drawn on any account either (i) at the direction of the Debtors, (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, the Bank will not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Bank is not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

26.    The Debtors further request that the Court authorize them to pay the Bank Fees and authorize the Bank to (i) continue to charge the Bank Fees and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business.  The Debtors' inability to pay the prepetition Bank Fees or to continue to pay the Bank Fees in the ordinary course of business postpetition could hinder its ability to manage the Cash Management System to the detriment of the Debtors' estates.

27.     Courts in this district routinely have waived the U.S. Trustee Operating Guidelines in operating Chapter 11 case with ongoing business operations and restructuring efforts.  *See, e.g., In re TZEW Holdco, LLC*, Case No. 20-10910 CSS) (Bankr. D. Del. April 14, 2020); *In re PES Holdings, LLC*, No. 19-11626 (KG)(Bankr. D. Del. Aug. 20, 2019) (authorizing the Debtors' continued use of existing bank accounts); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re Diesel USA, Inc.*, No. 19-10432 (MFW) (Bankr. D. Del. Mar. 5, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) (same).

**C.     The Court Should Authorize the Debtors to
Continue Using Their Existing Business Forms**

28.     To avoid disruption of the Cash Management System and unnecessary expenses, pursuant to Local Rule 2015-2(a), the Debtors request authorization to continue to use their business forms substantially in the form existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession.  The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors in possession and, thus, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reorder checks with the designation "Debtor-in-Possession" and the case number.

29.     Courts in this District have routinely allowed debtors to use their prepetition business forms without the "Debtor-in-Possession" label.  *See, e.g., In re TZEW Holdco, LLC*,

11

Case No. 20-10910 CSS) (Bankr. D. Del. April 14, 2020); *In re PES Holdings, LLC*, No. 19-11626

(KG) (Bankr. D. Del. Aug. 20, 2019) (authorizing Debtor's continued use of preprinted business

forms without a "Debtor in Possession" marking until the supply is exhausted); *In re Blackhawk*

*Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same); *In re Z Gallerie, LLC*,

No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re Diesel USA, Inc.*, No. 19-10432

(MFW) (Bankr. D. Del. Mar. 5, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KR)

(Bankr. D. Del. Feb. 26, 2019) (same).

### D.    The Relief Is Necessary to Avoid Immediate and Irreparable Harm

30.    Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . .

property of the estate, including a motion to pay all or part of a claim that arose before the filing

of the petition" within 21 days after the commencement of a chapter 11 case to the extent the

"relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Here, the

relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their

estates, as set forth in the First Day Declaration, and is therefore appropriate under Bankruptcy

Rule 6003.

31.    As discussed above, the urgency of the relief requested justifies immediate

relief. To ensure the relief requested is implemented immediately, the Debtors request that the

Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day

stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

32.    Nothing contained in this Motion is an admission of the validity of any

claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim,

DOCS_DE:233048.7

or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If the Court grants the relief requested in this Motion, any authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's right to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## NOTICE

33.     The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims; (iii) Silicon Valley Bank; (iv) the Internal Revenue Service; (v) counsel to the DIP Lender; (vi) counsel to the Prepetition Lender; (vii) the Office of the United States Attorney for the District of Delaware; and (viii) all parties entitled to notice pursuant to Local Rule 9013-1(m). A copy of the Motion is also available on the Debtors' case website at https://cases.stretto.com/MobiTV. Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

34.     The Debtors have not made any prior request for the relief sought herein to this Court or any other court.

13

## CONCLUSION

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem just

and proper.

Dated:   March 1, 2021
         Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Mary F. Caloway (No. 3059)*
Debra I. Grassgreen (*pro hac vice* application pending)
Jason H. Rosell (*pro hac vice* application pending)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone:     302-652-4100
Facsimile:     302-652-4400
Email:         dgrassgreen@pszjlaw.com
               jrosell@pszjlaw.com
               mcaloway@pszjlaw.com

[Proposed] *Counsel to the*
*Debtors and Debtors in Possession*