**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>MOBITV, INC., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 21-10457 (___)<br><br>Joint Administration Requested |

**MOTION FOR THE ENTRY OF**
**INTERIM AND FINAL ORDERS AUTHORIZING**
**THE DEBTORS TO (A) PAY WAGES AND SALARIES, (B) HONOR**
**AND MAINTAIN EMPLOYEE BENEFITS, AND (C) PAY**
**REIMBURSABLE EMPLOYEE EXPENSES**

The above-captioned debtors and debtors in possession (the "Debtors"), hereby move (the "Motion") for the entry of an interim order (the "Interim Order") and a final order ("Final Order"), substantially in the form of Exhibit A and Exhibit B hereto, respectively: (i) authorizing, but not directing, the Debtors to (a) pay and/or honor and remit prepetition wages, salaries, and certain other compensation, payroll withholdings, and benefit contributions, (b) maintain employee medical and similar benefits, and (c) pay reimbursable employee expenses; and (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing. In support of the Motion, the Debtors submit the declaration of Terri Stevens (the "First Day Declaration"), filed concurrently herewith and incorporated herein by reference. In further support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: MobiTV, Inc. (2422) and MobiTV Service Corporation (8357). The Debtors' mailing address is 1900 Powell Street, 9th Floor, Emeryville, CA 94608.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory basis for the relief requested herein are sections 105(a), 363(b), and 507(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

## BACKGROUND

### A.     Case Background

4.     On the date hereof (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

5.      The Debtors are leading providers of end-to-end internet protocol streaming television services ("IPTV") through which the Debtors provide a video platform and technology that streams content from leading television providers such as HBO, Fox, the Walt Disney Company, NBC, CBS, and others. The Debtors offer their IPTV services and technology to cable television operators, broadband providers, and cellular device carriers *via* its proprietary cloud-based, fully customizable, white label application, allowing the Debtors' over 125 business customers to provide television content to over 300,000 end-user subscribers.

6.      Additional information regarding the Debtors' business and capital structure, as well as a description of the events precipitating the filing of these Chapter 11 Cases, is set forth in the First Day Declaration.

**B.      Employees**

7.      The Debtors utilize, in the aggregate, approximately 86 employees in various engineering, sales, operational, and back office and administrative positions to perform the functions necessary to efficiently and effectively operate the Debtors' business (collectively, the "Employees").[2]   All of the Employees are full time Employees, and no Employees are subject to collective bargaining agreements.

8.      To minimize the personal hardships that the Employees will suffer if prepetition employment-related obligations are not paid or honored, to maintain the morale of the Employees during the critical time of these Chapter 11 Case, and to minimize disruptions to the Debtors' ongoing business operations and the administration of the estates, the Debtors, by this

---

[2]  All Employees are employed by debtor MobiTV, Inc.  MobiTV Services Corporation has no employees.

motion, seek authority in their sole discretion, to: (i) pay unpaid prepetition claims for wages, salaries, and other compensation (collectively, the "<u>Unpaid Wages</u>") to the Employees up to the statutory cap of $13,650 per employee; (ii) pay and remit the Withholding Obligations (as defined below) to the proper third parties; (iii) pay any prepetition fees and charges owed to the Payroll Administrators (as defined below); (iv) honor and maintain certain Employee related benefits and programs (as more fully set forth herein) offered by the Debtors (collectively, the "<u>Benefits</u>"); (v) reimburse certain business Expense Reimbursement Obligations (as defined below) incurred prepetition; (vi) pay and remit certain amounts associated with the Debtors' Supplemental Workforce (as defined below); and (vii) pay all costs incidental to the foregoing, as more fully set forth below.

9.       The prepetition accrued amounts that the Debtors are seeking authority to pay are summarized as follows, exclusive of any *di minimis* amounts more fully set forth herein below:

| Wages or Benefits | Interim Amount | Final Amount |
|---|---|---|
| Wages | $40,000 | $40,000 |
| Sales Commission Obligations | $30,000 | $30,000 |
| Withholding Obligations | $100,000 | $100,000 |
| Expense Reimbursement Obligations | $2,700 | $2,700 |
| Payroll Administrators | $4,500 | $4,500 |
| FSA Plan Obligations | $45,000 | $45,000 |
| Life & Disability Insurance | $5,300 | $5,300 |
| Supplemental Workforce Obligations | $285,000 | $285,000 |
| 401(k) Plan Obligations | $1,200 | $1,200 |
| TOTAL: | $513,700 | $513,700 |

4

10.    For the avoidance of doubt, the Debtors request authority, but not direction, to pay such prepetition amounts on a postpetition basis, provided that no Employee will be paid a total distribution of more than the $13,650 statutory cap, except as otherwise required by applicable non-bankruptcy law.

**C.    Wages, Withholding Obligations, and Business Expense Reimbursements**

    **(i)    Employee Wages**

11.    Salaried Employees. The Debtors have 76 salaried Employees who are paid current on the 15th or last day of the month, unless such day falls on a weekend or holiday, in which case, the salaried Employees are paid on the immediately preceding business day.  The last payroll was made on February 26, 2021 and included all Wages earned from February 16 through February 28, 2021.

12.    Hourly Employees. The Debtors have 10 hourly Employees, who, similar to the Debtors' salaried Employees, are paid in arrears on the 15th and last day of the month unless such day falls on a weekend or holiday, in which case, the hourly Employees are paid on the immediately preceding business day.  However, the Debtors' hourly Employees are typically paid one week in arrears in order to allow the Debtors to compile, reconcile, and otherwise account for the actual time expended in a pay period by such hourly Employees. Notwithstanding the foregoing, the Debtors' last payroll for its hourly Employees was made on February 26, 2021 and included all known accrued but unpaid Wages through the end of February 2021.  Accordingly, as of the Petition Date, there were no accrued but unpaid hourly Employee Wages.

13.     In the aggregate, the Debtors' average monthly payroll is approximately $1.45 million.  The Debtors' next semi-monthly payroll is scheduled for March 15, 2021 and will be funded by the Debtors on March 11, 2021, consistent with the payroll funding procedures discussed herein.

14.     Notwithstanding that the Debtors believe that there were no Unpaid Wages as of the Petition Date, the Debtors respectfully request authority to pay any Unpaid Wages out of an abundance of caution, not to exceed $40,000, provided that no single Employee shall receive any Wages or other compensation in excess of the $13,650 statutory cap.

**(ii)     Sales Commissions**

15.     The Debtors pay commissions monthly to three eligible sales Employees (the "Sales Commissions") as a component of their ordinary course compensation.  The Sales Commissions are earned by the sales Employees based upon the revenue received by the Debtors on account of sales to the Debtors' customers.  On average, the Debtors incur approximately $30,000 in Sales Commissions obligations (the "Sales Commission Obligations") each month. As of the Petition Date, the Debtors estimate that there is approximately $30,000 in accrued but unpaid Sales Commission Obligations.  The Debtors seek authority to pay the prepetition Sales Commission Obligations, provided that no one employee will receive any amount in excess of the $13,650 cap, and continue to honor the Sales Commissions in the ordinary course of business postpetition.

**(iii)     Employer Tax Obligations and Withholding Obligations**

16.     In the ordinary course of business, the Debtors routinely withhold from Wages, and also owe in connection with Wages, certain amounts required to be transmitted to

6

taxing authorities, including without limitation, employer payroll taxes and Employees' portions of FICA and unemployment taxes (collectively, the "Payroll Tax Obligations").  The Payroll Tax Obligations are remitted by an administrator, ADP (as defined herein), as discussed below, and total approximately $500,000 per month.  In the ordinary course of business, the Debtors also withhold contributions to the Debtors' health vision, dental, and other benefit and insurance plans, 401(k) contributions and 401(k) loan repayments, employee medical contributions, flexible spending and dependent care accounts and other similar accounts, and withholdings for garnishment, or child support or similar obligations pursuant to court order or law (the "Benefit Withholdings" and, together with the Payroll Tax Obligations, the "Withholding Obligations").

17.     The Debtors estimate that, as of the Petition Date, there are no accrued and unpaid Withholding Obligations.  However, out of an abundance of caution, the Debtors seek authority to pay any Withholding Obligations to the appropriate party or authority in an amount of up to $100,000.  The Debtors also seek authority to continue to withhold any and all Withholding Obligations from the Employees' paychecks and remit such amounts to the applicable governmental units or third parties in the ordinary course of business.

**(iv)     Employee Business Expense Reimbursement and Data Stipend**

18.     The Debtors typically directly pay incidental business expenses in the ordinary course of business.  The Debtors also provide limited, approved business expense reimbursement to its Employees (the "Incidental Expense Reimbursement Obligations") pursuant to their internal policies and procedures, which typically average approximately $50,000 per month in the aggregate and are paid in the ordinary course of business once such

7

expense reimbursement requests are submitted by the Employee and then reviewed and approved by the Debtors.  The Debtors do not believe that there are any outstanding Incidental Expense Reimbursement Obligations as of the Petition Date.

19.    In addition, beginning in April 2020, the Debtors began providing a stipend of $32.50 each pay period (the "Data Stipend", together with the Incidental Expense Reimbursement Obligations, the "Expense Reimbursement Obligations") to each Employee for costs incurred with respect to data and internet usage resulting from the shift of working in the office to working from home in response to the ongoing COVID-19 Pandemic.  The Debtors pay, in the aggregate, approximately $5,500 each month with respect to the Data Stipend.

20.    The Debtors do not believe that there are any prepetition amounts due and owing with respect to the Expense Reimbursement Obligations.  However, out of an abundance of caution, the Debtors respectfully request to pay up to $2,700, in the aggregate, on account of any accrued but unpaid prepetition Expense Reimbursement Obligations and to continue to pay the Expense Reimbursement Obligations consistent with past practice in the ordinary course of business.

**D.    Payroll / Benefits Administration and Related Fees**

21.    The Debtors employ ADP, Inc. ("ADP") as their payroll administrator to process and transfer payroll and payroll tax related amounts to the Employees and applicable authorities.  As part of each payroll, the Debtors submit their payroll report to ADP two (2) days before the date that payroll is made.  Based on the report furnished by the Debtors, ADP automatically withdraws funds from the Debtors' payroll account held at Silicon Valley Bank

8

(account number ending in 2925) *via* multiple draws beginning on the date the payroll report is submitted to ADP and continuing 3 – 4 business days thereafter.

22.     The Debtors pay ADP approximately $3,600 each month, in advance, for ADP's payroll administrative services as well as for use of ADP's "Workforce Now" online platform, which allows the Employees access to their paystubs, withholding information, and tax information.  The Debtors estimate that, as of the Petition Date, no amounts were owed to ADP, but out of an abundance of caution, seek to pay up to $1,000 to ADP on account of prepetition obligations and to continue to pay ADP consistent with past practice in the ordinary course of business.

23.     The Debtors also utilize the services of LKF Consulting LLC ("LKF Consulting," and together with ADP, the "Payroll Administrators"), which conducts the Debtors' payroll process with ADP, coordinates and addresses various payroll issues with the Debtors, and generally supports the Debtors' day-to-day payroll needs, subject to the Debtors' oversight and management. The Debtors typically pay LKF Consulting each month following the receipt of an invoice from LKF Consulting for the services provided during the previous month.  LKF's services are billed on an hourly basis and typically aggregate approximately $3,500 each month. The Debtors estimate that, as of the Petition Date, no amounts were owed to LKF Consulting, but out of an abundance of caution, seek authority to pay up to $3,500 to LKF Consulting on account of prepetition obligations and to continue to pay LKF Consulting consistent with past practice in the ordinary course of business.

E.     **Employee Benefits and Employee Programs**

(i)     **The Medical Plans**

24.    Seventy-five (75) of the Employees (together with their participating dependents, as applicable) receive medical, dental, vision and related benefits through the Debtors. For medical coverage, Employees are offered four medical plans (two PPO plans and two HMO plans) with different deductible and premium structures administered by Sequoia (the "Medical Plans").  Premiums are paid each month by the Debtors, in advance, on a cost-sharing basis with the Employees with respect to the Medical Plans.

25.    On average, the Debtors pay Sequoia approximately $182,000 each month for premiums under the Medical Plans (inclusive of Employees' portions of premiums that is paid by the Debtors and subsequently offset by the applicable Withholding Obligations for each participating Employee).  Participating Employees contribute up to 10%, or approximately $5,000 in the aggregate, of the monthly owed premiums based on which of the Medical Plans were selected by the Employee.

26.    The Debtors estimate that, as of the Petition Date, no amounts are owed by the Debtors on account of the Medical Plans, but out of an abundance of caution seek authority to pay up any unpaid amounts on account of any prepetition amount which may be owed by the Debtors with respect to the Medical Plans.  The Debtors further seek authority to continue to pay amounts related to the Medical Plans consistent with past practice in the ordinary course of business.

(ii)      **The Flexible Spending Account Plans**

27.      Thirty two (32) of the Employees participate in certain Flexible Spending Account and related benefit plans (the "<u>FSA Plans</u>") offered by Navia Benefit Solutions ("<u>Navia</u>").  The Debtors pay approximately $350 each month and an annual fee, paid in advance, on account of the FSA Plans.  The Employees contribute approximately $4,800 each month with respect to the FSA Plans.

28.      The Debtors estimate that, as of the Petition Date, approximately $45,000 (the "<u>FSA Plan Obligation</u>") is owed by the Debtors on account of the FSA Plans.  Accordingly, the Debtors seek authority, but not direction, to pay the FSA Plan Obligation.  The Debtors further seek authority to continue to pay amounts related to the FSA Plan consistent with past practice in the ordinary course of business.

(iii)      **The Health Savings Plan**

29.      Twenty-six (26) of the Employees participate in a Health Savings Plan (the "<u>HSA Plan</u>") with HSA Bank.  The Debtors pay, in advance, less than $100 per month on account of fees related to the HSA Plan and remit approximately $5,700 in Employee contributions each month to HAS Bank.   The Debtors estimate that, as of the Petition Date, no amounts are owed by the Debtors on account of the HSA Plan, but out of an abundance of caution seek authority to pay any prepetition amount which may be owed by the Debtors with respect to the HSA Plan.  The Debtors further seek authority to continue to pay amounts related to the HSA Plan consistent with past practice in the ordinary course of business.

DOCS_NY:42380.9

(iv)     **The Life & Disability Insurance**

30.     The Debtors also provide Employees with life insurance and disability insurance (the "Life & Disability Insurance") through Sequoia, for which the Debtors pay approximately $5,300 in monthly premiums, in advance, at the same time it pays the premiums for the Medical Plans.  The Debtors estimate that, as of the Petition Date, no amounts are owed by the Debtors on account of the Life & Disability Insurance, but out of an abundance of caution seek authority to pay up to $5,300 on account of any prepetition amount which may be owed by the Debtors with respect to the Life & Disability Insurance.  The Debtors further seek authority to continue to pay amounts related to the Life & Disability Insurance consistent with past practice in the ordinary course of business.

(v)     **COBRA**

31.     The Debtors seek to continue to perform any obligations under Section 4980B of the Internal Revenue Code to administer Continuation Health Coverage (26 U.S.C. § 4980B) (the "COBRA") with respect to former Employees and their covered dependents, as applicable.  Navia is the third-party COBRA administrator for the Debtors.  The Debtors pay a *di minimis* monthly fee of approximately $50 to Navia to administer COBRA, which amount is included in monthly amounts that the Debtors pay to their benefits administrator, Sequoia.  To maintain employee morale and ensure the orderly administration of the estates, the Debtors request authority to continue performing in its discretion any COBRA related obligations, if any.

(vi)     **The Workers' Compensation Program**

32.     Under the laws of various states, the Debtors are required to maintain workers compensation insurance to provide their Employees with coverage of injury claims

12

arising from or related to their employment with the Debtors.  The Debtors maintain a workers' compensation benefits program (the "WC Program") through Aon Risk Insurance Services West, Inc. ("Aon").  The WC Program provides benefits to all Employees in each of the states in which the Debtors operate for claims arising from or related to an Employee's employment with the Debtors (together with any premiums, fees, and/or other changes payable to Aon, the "WC Obligations").  Under the WC Program, Aon acts as a third party administrator and provides guaranteed insurance coverage at the statutorily-required level for the states in which the Debtors operate.  The Debtors pay Aon annually, in advance, in October of each year.  As of the Petition Date, the Debtors estimate that there are no amounts due and owing on account of any prepetition WC Obligations.  Accordingly, the Debtors seek authority to pay the WC Obligations in the ordinary course of business, consistent with past practice.

  **(vii)**  **401(k) Savings Plan**

   33.  The Debtors maintain a 401(k) plan for the benefit of their Employees (the "401(k) Plan").  The 401(k) Plan provides for automatic pre-tax and post-tax salary deductions of eligible compensation up to certain limits set by the Internal Revenue Code.  The Debtors do not pay any employer matching contributions to the 401(k) Plan.  The Debtors utilize Betterment for Business ("Betterment") as the administrator of the 401(k) Plan.  The Debtors pay Betterment an annual fee of $1,000 to administer the 401(k) Plan and $75 each quarter to send statements to the participants in the 401(k) Plan (the "401(k) Plan Obligations").  As of the Petition Date, the Debtors estimate that there are approximately $1,200 in accrued but unpaid 401(k) Plan Obligations.  Accordingly, the Debtors request authority, but not direction, to pay any 401(k)

13

Plan Obligations that were accrued but unpaid as of the Petition Date.  The Debtors also seek authority to continue to pay Betterment on a postpetition basis in the ordinary course of business consistent with past practice.

**F.      Employee Bonus Programs**

34.      The Debtors have historically offered Employees certain annual bonuses, retention bonuses, performance bonuses, and executive bonuses (collectively, the "Bonus Programs").  The Debtors do not seek authority at this time and in this motion to continue, honor, or replace any such programs, but anticipate seeking authority with respect thereto by separate motion at a later date.  For the avoidance of doubt, the Debtors will not pay any prepetition amounts with respect to the Bonus Programs without further order of the Court.

**G.      Vacation and Other Paid Leave**

35.      The Debtors seek authorization to honor eligible Employees' accrued vacation, time, sick, paid holiday and other leave policies and practices in the ordinary course of business (collectively, "Paid Time Off").

36.      Generally, vacation time ("Vacation Time") is provided to Employees and accrual rates vary based on years of service.  More specifically, Employees with less than four years' service get 15 days, or 120 hours, of Vacation Time per year, and Employees with four or more years' of service get 20 days, or 160 hours, of Vacation Time per year.  Vacation Time accrues monthly and can be rolled-over year-to-year, subject to a cap of 150% of the allotted Vacation Time for the applicable Employee (the "Vacation Time Maximum Balance") pursuant to state law.

37.     Employees also receive paid sick leave ("Sick Leave"), capped at 9 days per year per Employee (together with the Vacation Time Maximum Balance, the "PTO Maximum Balance").  An Employee who reaches their applicable PTO Maximum Balance will not accrue additional Vacation Time or Sick Leave until the Employee's applicable Paid Time Off balance drops below the applicable PTO Maximum Balance, and Employees are not given any retroactive credit for any period of time in which Paid Time Off stops accruing.  Employees may not "cash out" their accrued but unused Sick Leave when their employment with the Debtors terminates, regardless of circumstances. However, departing employees are paid for accrued but unused Vacation Time, subject to the Vacation Time Maximum Balance.

38.     The Debtors also provide paid time off to all Employees in the form of absence due to illness or injury, holidays, bereavement, jury duty, and time off to vote. Additionally, the Debtors provide eligible Employees with military leave and leave pursuant to the Family and Medical Leave Act. The Debtors also provide such additional leave as required by applicable state laws.

39.     The Debtors seek authorization, in their discretion to honor eligible Employees' accrued Vacation Time, Sick Leave, paid holidays as well as other Paid Time Off policies and practices in the ordinary course of business and consistent with applicable state law.

**H.     The Supplemental Workforce**

40.     In addition to their Employees, the Debtors rely on services from a supplemental workforce ("Supplemental Workforce") comprised of (a) eight independent contractors (the "Contractors") and (b) employees provided by four third party staffing firms (the

"Staffing Firms" and, such employees, the "Staffing Firm Employees"). Specifically, the Supplemental Workforce, and in particular the Contractors, provides crucial research and development, engineering, and information technology support and services.

41.    The Debtors remit fees for the services provided by the Contractors to the Contractors on a monthly basis, in arrears. The Debtors pay the Contractors approximately $47,000 per month, in the aggregate through accounts payable.

42.    The Debtors typically remit fees for the services provided by the Staffing Firm Employees to the Staffing Firms on a monthly basis, in advance, through accounts payable. The Debtors pay the Staffing Firms approximately $204,000 per month.

43.    As of the Petition Date, the Debtors estimate that they owe the Contractors approximately $55,000 (the "Contractor Obligations") and owe certain of the Staffing Firms approximately $230,000 (the "Staffing Firm Obligation," and together with the Contractor Obligation, the "Supplemental Workforce Obligations") on account of prepetition services that they seek to pay in the ordinary course of business.[3] The Debtors believe that if the Supplemental Workforce Obligations go unpaid, the applicable Contractors and Staffing Firms may stop providing crucial services to the Debtors. Accordingly, the Debtors request authority to pay, in their sole discretion, the Supplemental Workforce Obligations in the ordinary course of business and to continue to utilize the services of the Contractors and the Staffing Firms, in the ordinary course of business and consistent with past practice.

---

[3]    The Debtors owe certain other Staffing Firms in excess of $1 million in the aggregate as of the Petition Date; however, the Debtors do not seek authority to pay such amounts by this Motion.

16

**RELIEF REQUESTED**[4]

44.     By this Motion, pursuant to sections 105(a), and 363(b)(1) and (c)(1) of the Bankruptcy Code and the "necessity of payment doctrine," the Debtors request the entry of the Interim Order and Final Order, authorizing, but not directing, the Debtors to pay, remit, and/or honor, in their sole and independent discretion: (a) the Unpaid Wages, including any associated payroll processing related obligations; (b) all Withholding Obligations; (c) the Expense Reimbursement Obligations; (d) all prepetition obligations relating to Medical Plans, Life & Disability Insurance, the Navia Plans, the HSA, and COBRA; (e) all WC Obligations, including those obligations incurred in or relating to the prepetition period and liquidated postpetition, if any; (f) prepetition Paid Time Off; (g) the Supplemental Workforce Obligations; and (h) any other prepetition claims or obligations described in this Motion for which such authority is specifically requested herein.

45.     To enable to the Debtors to accomplish the foregoing, the Debtors request that the Court authorize the Debtors' banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing.

**BASIS FOR RELIEF REQUESTED**

A.     **Payment of the Amounts Requested Herein Is Warranted Under
       Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity**

46.     Statutory support for the requested relief exists pursuant to sections 105(a), 362(d), 363(b)(1) and (c)(1), and 507(a) of the Bankruptcy Code and the "necessity of

---

[4] Nothing in this Motion or any Interim Order or Final Order with respect thereto, is intended, nor shall it construed to, be a conversion of any prepetition claim into an administrative claim.

DOCS_NY:42380.9

payment" doctrine (discussed *infra*).  Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing.  Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to enter into transactions in the ordinary course of business without notice and a hearing.  Section 105(a) of the Bankruptcy Code further provides, in pertinent part, that the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

47.    The relief requested in this Motion is supported by the well-established "necessity of payment" doctrine.[5]  The "necessity of payment" doctrine, which has been embraced by the United States Court of Appeals for the Third Circuit, "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus." *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).  *See also In re Sharon Steel Corp.*, 159 B.R. 730, 737 (Bankr. W.D. Pa. 1993) (embracing "necessity of payment" doctrine and citing *Lehigh & New England Ry. Co.* with approval).  Similarly, the court in *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989), stated that the "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *Id.* at 176.  In that case, the court permitted Eastern Air

---

[5] The doctrine was first articulated by the Supreme Court in railroad reorganization cases, *see Miltenberger v. Logansport Ry.*, 106 U.S. 286 (1882), and it has been held to be equally applicable to non-railroad debtor cases. *See, e.g., Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (hotel); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (airline).

Lines, Inc. to pay its current employees' prepetition wages, salaries, medical benefits, and business expense claims. Judge Lifland relied on his equitable powers under section 105(a) of the Bankruptcy Code and, in particular, the "necessity of payment" doctrine to authorize such payments, recognizing that the debtor had to make the payments in order to retain its current employees and maintain positive employee morale—two factors that he deemed critical to the rehabilitation of an operating debtor. *Id.* at 176-77 (*citing* H.R. Rep. No. 595 95th Cong. 1st Sess. 16 (1977)). Other courts also have found that the "necessity of payment" doctrine applies to the payment of prepetition employee compensation and benefits. *See In re Chateaugay Corp.*, 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (under the "necessity of payment" doctrine, bankruptcy court should defer to the Debtors' business judgment in permitting payment of certain workers' compensation claims).

48.    This Court similarly has approved the payment of prepetition claims of employees for wages, salaries, expenses, and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization or liquidation. *See*, *e.g.*, *In re In re TZEW Holdco LLC, et al.*, Case No. 20-10910 (CSS) (Bankr. D. Del. May 5, 2020); *In re Highland Capital Management, L.P.*, Case No. 19-12239 (CSS) (Bankr D. Del. December 4, 2019); *In re iPic-Gold Class Entertainment LLC*, Case No. 19-11739 (LSS) (Bankr. D. Del. Aug. 6, 2019); *In re Fuse, LLC*, Case No. 19-10872 (KG) (Bankr. D. Del June 5, 2019); *In re J & M Sales, Inc., et al.*, Case No. 18-11801 (LSS) (Bankr. D. Del Aug. 27, 2018).

49.    The "necessity of payment" doctrine authorizes the Debtors to pay the amounts they seek authority to pay pursuant to this Motion because the Employees are critical

19

assets necessary to the successful administration of these Chapter 11 Cases.  Pursuant to section 507(a)(4) of the Bankruptcy Code, claims of Employees for "wages, salaries, or commissions, including vacation and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status to the extent of $13,650 per Employee.  The Debtors believe that all of the Wages relating to the period prior to the Petition Date (to the extent not already paid) would constitute priority claims under sections 507(a)(4) of the Bankruptcy Code.  As priority claims, the Wages must be paid in full before any general unsecured obligations of the Debtors may be satisfied.  Accordingly, the relief requested may affect only the timing of the payment of these priority obligations, and will not prejudice the rights of general unsecured creditors or other parties in interest.

50.    As explained earlier in the Motion, the Debtors pay one week in arrears.  Thus, to the extent any prepetition Wages must be paid postpetition for any reason, the Debtors request authority only to pay up to the $13,650 statutory cap under section 507(a)(4) of the Bankruptcy Code to each Employee on account of any unpaid prepetition Wages owing to such Employee.[6]

51.    Many Employees may live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses.  These Employees may be exposed to significant financial and healthcare-related problems if the Debtors are not permitted to pay and/or honor the Wages and Benefits, and the expenses associated therewith, in the ordinary course of the

---

[6]  In the event any unpaid amounts owing to any Employee on account of unpaid Wages exceed the $13,650 statutory cap, the Debtors reserve the right to petition the Court for authority to pay such excess amounts.

Debtors' business.  Moreover, the Debtors believe that if they are unable to honor accrued Wages and the Benefits described above, including honoring prepetition Paid Time Off by allowing Employees to use accrued prepetition Paid Time Off on a postpetition basis, Employee morale and loyalty will be jeopardized at a time when Employee support is critical.  The Debtors believe that any uncertainty with regard to continuation of Wages and Benefits will cause significant anxiety at precisely the time the Debtors need their Employees to perform their jobs at peak efficiency.

52.    Additionally, the Debtors submit that the Withholding Obligations (including, for example, any 401(k) Plan contributions held by the Debtors) do not constitute property of the Debtors' estates and principally represent employee earnings that governments (in the case of taxes), Employees (in the case of voluntary deductions), and judicial authorities (in the case of involuntary deductions), have designated for deduction from Employee paychecks.  The failure to transfer these withheld funds could result in hardship to certain Employees.  Moreover, if the Debtors cannot remit these amounts, the Employees may face legal action due to the Debtors' failure to submit these payments.

53.    The Debtors submit that with respect to the wage-related taxes that constitute "trust fund" taxes, the payment of such taxes will not prejudice other creditors of the Debtors' estates given that the relevant taxing authorities would have a priority claim under section 507(a)(8) of the Bankruptcy Code in respect of such obligations.  Moreover, the monies payable for trust fund taxes, as well as the other funds that are held in trust for the benefit of third parties, such as withheld funds with respect to the 401(k) Plan, are not property of the Debtors'

estates. *See*, *e.g.*, *Begier v. IRS*, 496 U.S. 53 (1990) (withholding taxes are property held by a debtor in trust for another and, as such, are not property of the Debtors' estates).

54.     Courts have also authorized debtors to pay employee-related taxes under section 363(b)(1) of the Bankruptcy Code, which provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under such section, a court may authorize a debtor to pay certain prepetition claims. *See In re FV Steel & Wire Co.*, Case No. 04-22421 (Bankr. E.D. Wis. Feb. 26, 2004) (authorizing the continuation of customer programs and the payment of prepetition claims under section 363 of the Bankruptcy Code); *In re UAL Corp.*, Case No. 02-48191 (Bankr. N.D. Ill. Dec. 9, 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code).

55.     To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Ionosphere Clubs*, 98 B.R. at 175. As discussed herein, the Debtors' failure to pay employee-related taxes could have a material adverse impact on their ability to operate in the ordinary course of business.

56.     Indeed, in numerous chapter 11 cases, this Court has exercised its equitable powers under section 105 of the Bankruptcy Code to authorize debtors to pay a variety of prepetition claims of creditors, including claims similar to the prepetition taxes. *See*, *e.g.*, *In re Aquion Energy Inc.,* Case No. 17-10500 (KJC) (Bankr. D. Del March 10, 2017); *In re Basic*

*Energy Services, Inc., et al.*, Case No. 16-12320 (KJC) (Bankr. D. Del. October 26, 2016); *In re*

*Key Energy Services, Inc., et al.*, Case 16-12306 (BLS) (Bankr. D. Del. October 25, 2016); *In re*

*Malibu Lighting Corporation, et al.*, Case No. 15-12082 (KG) (Bankr. D Del. October 9, 2015).

The Debtors submit that the present circumstances warrant similar relief in these chapter 11

cases to preserve the Debtors' assets and avoid business interruption.

57.    Finally, the Employees and Supplemental Workforce have an intimate

knowledge of the operation of the Debtors' business and are critical components to the

successful reorganization of the Debtors' business.  Deterioration in the morale and welfare of

the Employees and Supplemental Workforce at this critical time undoubtedly would adversely

impact the Debtors and their ability to sustain their operations.  Satisfaction of the Wages and

Benefits, as described herein, is necessary to maintain the Employees' morale during the cases

and to insure continued, efficient operation in order to maximize value for all creditors.

**B.    The Relief Is Necessary to Avoid Immediate and Irreparable Harm**

58.    Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . .

property of the estate, including a motion to pay all or part of a claim that arose before the filing

of the petition" within 21 days after the commencement of a chapter 11 case to the extent the

"relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Here, the

relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their

estates, as set forth in the First Day Declaration, and is therefore appropriate under Bankruptcy

Rule 6003.

23

59.     As discussed above, the urgency of the relief requested justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

60.     Nothing contained in this Motion is an admission of the validity of any claim against the Debtor, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If the Court grants the relief requested in this Motion, any authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's right to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## NOTICE

61.     The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims; (iii) the Internal Revenue Service; (iv) counsel to the DIP Lender; (v) counsel to the Prepetition Lender; (vi) the Office of the United States Attorney for the District of Delaware; and (vii) all parties entitled to notice pursuant to Local Rule 9013-1(m). A copy of the Motion is also available on the Debtors' case website at https://cases.stretto.com/MobiTV. Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

**NO PRIOR REQUEST**

62.     The Debtors have not made any prior request for the relief sought herein

to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request the entry of the proposed Interim

Order and Final Order granting the relief requested herein and such other and further relief as the

Court may deem just and proper.

Dated:   March 1, 2021          PACHULSKI STANG ZIEHL & JONES LLP
         Wilmington, Delaware

                                */s/ Mary F. Caloway*
                                Debra I. Grassgreen (*pro hac vice* application pending)
                                Jason H. Rosell (*pro hac vice* application pending)
                                Mary F. Caloway (DE Bar No. 3059)
                                919 North Market Street, 17th Floor
                                Wilmington, DE 19899-8705
                                Telephone:    302-652-4100
                                Facsimile:    302-652-4400
                                Email:        dgrassgreen@pszjlaw.com
                                              jrosell@pszjlaw.com
                                              mcaloway@pszjlaw.com

                                [Proposed] *Counsel to the*
                                *Debtor and Debtor in Possession*