**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MOBITV, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-10457 (___)<br><br>Joint Administration Requested |

**DEBTORS' MOTION FOR THE ENTRY OF INTERIM AND FINAL
ORDERS (A) AUTHORIZING DEBTORS TO PAY PREPETITION
CLAIMS OF CRITICAL VENDORS AND (B) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (the "Motion") for the entry of interim and final orders (a) authorizing, but not directing, the Debtors to pay certain prepetition claims (the "Critical Vendor Claims") of certain critical vendors and service providers (the "Critical Vendors") up to $500,000 on an interim basis the ("Interim Critical Vendor Cap") and up to $1 million (the "Final Critical Vendor Cap" and, together with the Interim Critical Vendor Cap, the "Critical Vendor Caps"), and (b) granting related relief. In support of this Motion, the Debtors submit the declaration of Terri Stevens (the "First Day Declaration"), filed concurrently herewith and incorporated herein by reference. In further support of the Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: MobiTV, Inc. (2422) and MobiTV Service Corporation (8357). The Debtors' mailing address is 1900 Powell Street, 9th Floor, Emeryville, CA 94608.

*Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United State Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of Title 11 of the Bankruptcy Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## BACKGROUND

**A.  Case Background**

4. On the date hereof (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

5. The Debtors are leading providers of end-to-end internet protocol streaming television services ("IPTV") through which the Debtors provide a video platform and technology that streams content from leading television providers such as HBO, Fox, the Walt

Disney Company, NBC, CBS, and others. The Debtors offer their IPTV services and technology to cable television operators, broadband providers, and cellular device carriers via its proprietary cloud-based, fully customizable, white label application, allowing the Debtors' over 125 business customers to provide television content to over 300,000 end-user subscribers.

6.  Additional information regarding the Debtors' businesses and capital structure, as well as a description of the events precipitating the filing of these Chapter 11 Cases, is set forth in the First Day Declaration.

### B.  The Critical Vendors

7.  The Debtors' business relies on its access to and relationship with a network of vendors and suppliers, including network equipment providers, network support providers, software providers, and foreign software development providers. If the Debtors are unable to utilize these services, their ability to operate in the ordinary course of business will be compromised and require the Debtors to implement new software solutions, which will be time consuming and disruptive. The Critical Vendors generally provide services to the Debtors on an invoice, statement of work, or purchase order basis, and not pursuant to long-term contracts. The Debtors also rely on key service providers. These vendors typically supply their customers with services and products on trade terms based on their experience with and perceived risk of conducting business with such customers.

8.  It is essential to the Debtors' operations that they be able to access the services of the Critical Vendors in the ordinary course of business and maintain ordinary trade

terms. Failure to continue receiving services on commercially reasonable terms could have catastrophic consequences on the Debtors' finances.

9. The Debtors undertook a process to identify the Critical Vendors using the following criteria: (i) whether a vendor is a sole-source or primary provider of services or products; (ii) whether certain customizations, specifications, or volume requirements prevent the Debtors from obtaining a vendor's goods or services from alternative sources within a reasonable timeframe; and (iii) if a vendor is not a sole-source or primary provider of services or products, whether the Debtors can continue to operate in the ordinary course while a replacement vendor is secured. As a result of their critical review and evaluation, the Debtors have identified a narrow subset of vendors as Critical Vendors.

10. The Critical Vendors do not operate under formal long-term contracts with the Debtors. Instead, the Critical Vendors rely on prompt and full payment. Absent assurance of immediate payment either in part or in whole, the Critical Vendors could refuse to deliver goods or services to the Debtors. The Debtors believe that it would be extremely difficult, if not impossible, to replace the Critical Vendors within a reasonable time without severe disruption to the Debtors' business. Such harm would likely far outweigh the cost of payment of the Critical Vendor Claims.

11. As of the Petition Date, the Debtors will owe amounts to certain Critical Vendors (a) that have been billed and invoiced and/or (b) that have accrued immediately prior to the Petition Date for which they have not yet been invoiced or payment is not yet due. The

Debtors anticipate the total amount of Critical Vendor Claims will be approximately $4.5 million.

12. Given the importance of the goods or services provided by the Critical Vendors, it is imperative that the Debtors be granted, on an emergency basis, the flexibility and authority to satisfy the prepetition claims of the Critical Vendors up to the Interim Critical Vendor Cap, as any disruption in the Debtors' ability to provide support to their customers would cause immediate and irreparable damage to the Debtors' business.

**C.    Conditions to Payment**

13. Subject to the Court's approval, the Debtors intend to pay the Critical Vendor Claims only to the extent necessary to preserve its business as a going concern. To that end, in return for paying the Critical Vendors Claims, the Debtors propose that they be authorized to require that the Critical Vendors provide favorable trade terms for the postpetition delivery of goods and services. Specifically, the Debtors propose to condition the payment of the Critical Vendor Claims upon the Critical Vendors' agreement to continue—or recommence— supplying goods and services to the Debtors in accordance with trade terms at least as favorable as those practices and programs (including credit limits, pricing, timing of payments, availability, and other terms) in place 12 months prior to the Petition Date, or such other trade terms that are acceptable to the Debtors in their discretion (the "Customary Trade Terms").

14. In addition, the Debtors request that, regardless of whether a Critical Vendor enters into a Critical Vendor Agreement (as defined below), if a Critical Vendor accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to

provide goods or services on Customary Trade Terms, then: (a) the Debtors may take any and all appropriate steps to cause such Critical Vendor to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendor; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to re-characterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## RELIEF REQUESTED

15. By this Motion, pursuant to sections 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004, the Debtors request the entry of an interim order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), and final order (a) authorizing, but not directing the Debtors, in their discretion, to pay any prepetition amounts owing to the Critical Vendors in the ordinary course of business up to the applicable Critical Vendor Cap; (b) approving of the form of agreement which may be utilized by the Debtors, substantially in the form attached to the Proposed Order as Exhibit 1 (the "Critical Vendor Agreement"); and (c) granting related relief.

**BASIS FOR RELIEF REQUESTED**

A. **The Critical Vendor Payments Are Necessary to Preserve the Estate**

16. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See*, *e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

17. Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." CoServ, 273 B.R. at 497.

18. In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See Just for Feet*, 242 B.R. at 825. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

19. Indeed, the United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

20. This flexible approach is particularly critical where, as here, prepetition creditors are crucial to the preservation of the Debtors' going concern value. In *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court recognized that "a bankruptcy court may exercise its equity powers under section 105(a) of the Bankruptcy Code to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" *Id.* (citations omitted). The court explained that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code." *Id.* at 932.

21. Allowing the Debtors to pay the Critical Vendor Claims, pursuant to all or some of the above-referenced provisions, is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999). Indeed, reflecting the recognition that payment of prepetition claims of certain essential suppliers and vendors is, in fact, both critical to a debtor's ability to preserve going-concerns and maximize creditor recovery—thereby increasing prospects for a successful restructuring—courts in this district regularly grant relief consistent with that which the Debtors are seeking in this Motion. *See*, *e.g.*, *In re True Religion Apparel, Inc.*, No. 20-10941 (CSS) (Bankr. D. Del. June 22, 2020) [Docket No. 363] (authorizing payment of up to $2.5 million on account of prepetition claims held by critical vendors); *In re Sports Authority Holdings, Inc.*, No. 16-10527 (MFW)

(Bankr. D. Del. March 3, 2016 and March 29, 2016) [Docket Nos. 136 and 876] (interim and final orders authorizing payment of up to $15 million and $30 million, respectively, on account of claims held by critical vendors); *In re BPS US Holdings Inc.*, No. 16-12373 (KJC) (Bankr. D. Del. Nov. 1, 2016 and Nov. 28, 2016) [Docket Nos. 66 and 200] (interim and final orders authorizing payment of up to $7.5 million and $21.9 million, respectively, on account of claims held by critical vendors).

22. As described above, the Debtors require the services of the Critical Vendors to avoid a catastrophic interruption to their business operations, namely the ongoing support of their critical network infrastructure and, in turn, their customers.

B. **The Relief is Necessary to Avoid Immediate and Irreparable Harm**

23. Under Bankruptcy Rule 6003, the court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the commencement of a chapter 11 case to the extent the "relief is necessary to avoid immediate and irreparable harm." Fed R. Bankr. P 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and the estate, as set forth in the First Day Declaration, and is therefore appropriate under Bankruptcy Rule 6003.

24. As discussed above, the urgency of the relief requested justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-

day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **RESERVATION OF RIGHTS**

25. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If the Court grants the relief requested in this Motion, any authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's right to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## **NOTICE**

26. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims; (iii) the Internal Revenue Service; (iv) counsel to the DIP Lender; (v) counsel to the Prepetition Lender; (vi) the Office of the United States Attorney for the District of Delaware; and (vii) all parties entitled to notice pursuant to Local Rule 9013-1(m). A copy of the Motion is also available on the Debtors' case website at https://cases.stretto.com/MobiTV. Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

27. The Debtors have not made any prior request for the relief sought herein to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: March 1, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Mary F. Caloway (No. 3059)*
Debra I. Grassgreen (*pro hac vice* application pending)
Jason H. Rosell (*pro hac vice* application pending)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone:  302-652-4100
Facsimile:   302-652-4400
Email:   dgrassgreen@pszjlaw.com
              jrosell@pszjlaw.com
              mcaloway@pszjlaw.com

[Proposed] *Counsel to the
Debtors and Debtors in Possession*