# EXHIBIT A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MOBITV, INC., *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 21-10457 (___)<br><br>Joint Administration Requested |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING; (II) AUTHORIZING THE USE OF CASH COLLATERAL; (III) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (B) ADEQUATE PROTECTION TO PREPETITION LENDER; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e), 503, and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), requesting, among other things, authorization for the Debtors to obtain postpetition financing and use cash collateral, consisting of:

(a) Authorization for the Debtors to obtain post-petition financing pursuant to the DIP Facility (as defined below) consisting of a junior secured multi-draw term loan facility on the terms and conditions substantially in the form of the Debtor-in-Possession

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: MobiTV, Inc. (2422) and MobiTV Service Corporation (8357). The Debtors' mailing address is 1900 Powell Street, 9th Floor, Emeryville, CA 94608.

[2] Any capitalized term not otherwise defined herein shall have the meaning ascribed to such term in the DIP Credit Agreement.

Loan and Security Agreement annexed hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "DIP Credit Agreement," together with any other related agreements, documents, security agreements, pledge agreements, or intercreditor agreements, collectively, the "DIP Documents"), by and among Debtors as Borrowers (as defined in the DIP Credit Agreement) and TVN Ventures, LLC (the "DIP Lender"), consisting of a new money multi-draw term loan facility (the "DIP Facility") in an aggregate principal amount of up to $15,500,000.00 (the commitments under the DIP Facility, and in no event more than $15,500,000.00, the "DIP Commitments," and the loans made under the DIP Facility, the "DIP Loans"), pursuant to which, (i) upon entry of this interim order (this "Interim Order") and satisfaction or waiver of the other conditions set forth herein and in the DIP Documents, the Borrowers shall be authorized to make draws of DIP Loans under the DIP Commitments in the principal amount of up to $7,500,000.00 (the "Interim Loan Amount"); and (ii) upon entry of the Final Order (as defined below) and satisfaction or waiver of the other conditions set forth therein and in the DIP Documents, the full remaining amount of the DIP Commitments shall be available to the Borrowers, subject to compliance with the terms, conditions, and covenants described in the DIP Documents; and

(b) authorization for the Debtors to execute, deliver, and enter into the DIP Documents, and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Documents;

(c) authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable to the DIP Lender pursuant to the DIP Documents, including,

without limitation, any principal, interest, fees, costs, and expenses of the DIP Lender (including the reasonable fees, expenses and other charges of the DIP Lender's attorneys, advisors, accountants, and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, in each case, to the extent constituting Borrower obligations of any kind under the DIP Documents (such obligations the "DIP Obligations");

(d) authorization for the Debtors, immediately upon entry of this Interim Order, to use proceeds of the DIP Facility (the "DIP Facility Proceeds") as expressly provided in the DIP Documents and solely in accordance with this Interim Order and the applicable Budget (as defined below) (subject to permitted variances and other exclusions set forth in the DIP Documents);

(e) the grant and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1) and 507(b) of the Bankruptcy Code, to the DIP Lender in respect of all DIP Obligations, subject only to the Carve-Out and the Prepetition Adequate Protection Claims (each as defined below);

(f) authorization to grant the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting Prepetition Collateral (as defined below), including, without limitation, any Cash Collateral (as such term is further defined below), to secure the DIP Obligations, which DIP Liens shall be subject only to the Senior Liens (as defined below) and the Carve-Out;

(g) authorization for the Debtors to use, among other things, solely in accordance with the Budget (subject to permitted variances and other exclusions set forth

in the DIP Documents) and the limitations provided herein, any Cash Collateral in which the Prepetition Lender (as defined below) may have an interest, and the granting of adequate protection solely to the extent of any postpetition diminution in the value of its interest in the Prepetition Collateral and Cash Collateral caused by the Debtors' postpetition use, sale, or disposition of Prepetition Collateral or Cash Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code ("Diminution in Value");

(h) modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Documents to the extent hereinafter set forth;

(i) the waiver of any applicable stay (including under Bankruptcy Rules 4001(a)(3) and 6004), such that this Interim Order is immediately effective;

(j) the scheduling of a final hearing on the Motion (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order"), and approving the form of notice with respect to the Final Hearing; and

(k) granting the Debtors such other and further relief as is necessary or appropriate.

The initial hearing on the Motion having been held by the Court on March [●], 2021 (the "Interim Hearing"), and upon the record made by the Debtors at the Interim Hearing, including the Motion, the *Declaration of Terri Stevens in Support of First Day Motions* [Docket No. [●]] (the "First Day Declaration"); any exhibits in connection with the foregoing, and the filings and

pleadings in these Chapter 11 Cases, the Court having found that the interim relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation and maintenance of the Debtors' businesses; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and appropriate and adequate notice of the Motion, the interim relief requested therein, and the Interim Hearing (the "Notice") having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) the creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims; (e) counsel to the DIP Lender; (f) counsel to the Prepetition Lender; (g) all parties which, to the best of the Debtors' knowledge, information, and belief, have asserted a lien in the Debtors' assets; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"); and the opportunity for an Interim Hearing on the Motion was appropriate in connection with the Motion and no other notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. Petition Date. On March 1, 2021 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors continue to operate and maintain their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in either of the Chapter 11 Cases.

B. Jurisdiction and Venue. The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, 6004, and 9014 and Local Rules 4001-2 and 9013-1.

C. Committee Formation. As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "Committee") or any other statutory committee has been appointed in the Chapter 11 Cases.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D. Notice. The Notice was given in the manner described in the Motion. Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing, and the relief granted under this Interim Order complies with Bankruptcy Rules 4001 and 9014 and the Local Rules.

E. Parties' Acknowledgments, Agreements, and Stipulations. In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the Prepetition Lender for agreeing to consent to access to Cash Collateral, as provided herein, and as a condition to consenting to the use of Cash Collateral as set forth herein, subject to paragraph 15 of this Interim Order, the Debtors and the DIP Lender permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

i. Prepetition Term Facility. On February 3, 2017, the Debtors entered into a Loan and Security Agreement with Ally Bank (the "Prepetition Lender") (as amended, restated, supplemented or modified from time to time, the "Prepetition Loan Agreement;" the amounts owing under the Prepetition Loan Agreement, the "Prepetition Indebtedness;" all documents evidencing and securing the Prepetition Indebtedness, the "Prepetition Loan Documents"). Prior to the Petition Date, the Prepetition Lender and T-Mobile, USA (the "Prepetition Participant") executed an Amended and Restated Junior Participation Purchase Agreement, dated February 12, 2021 (as amended, restated, supplemented or otherwise modified from time to time, the "Junior Participation Agreement"), pursuant to which the Prepetition Participant purchased a "last-out" participation in certain "Bridge Loans" extended by the Prepetition Lender to the Debtors under the Prepetition Loan Documents. As of the Petition Date, the Debtors were justly and lawfully indebted and liable, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $25,442,472 in respect of loans and other extensions of credit made, plus accrued and unpaid interest and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case that are chargeable or reimbursable under the Prepetition Loan Agreement), charges, indemnities and other obligations incurred in connection therewith (in each case to the extent constituting "Obligations" under and as defined in the Prepetition Loan Agreement, collectively, the "Prepetition Obligations"). The Prepetition Loan Agreement is secured by first priority security interests in and liens on the "Collateral" (as defined in the Prepetition Loan Agreement, and which is an all-assets collateral grant including accounts receivable, inventory, equipment, deposit accounts, general intangibles, other property, subject to certain customary exceptions) (the "Prepetition Collateral," and such security interests and liens on the Prepetition Collateral the "Prepetition Liens"), including but not limited to the Cash Collateral.

ii. No Challenges/Claims. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and neither the Prepetition Liens nor the Prepetition Obligations, or any portion thereof, is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable, contractual, or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors and their Estates have no valid claim(s) (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against the Prepetition Lender or Prepetition Participant or their respective members, shareholders, affiliates, agents, attorneys, advisors, professionals, officers, directors or employees related to the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, the Junior Participation Agreement, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553 (inclusive), or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Obligations constitute allowed, secured claims to the extent of the value of the Prepetition Collateral within the meaning of sections 502 and 506 of the Bankruptcy Code.

iii. Cash Collateral. With the express exception of the DIP Facility Proceeds in the Funding Account, all of the cash of the Debtors, wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtors, whether as Prepetition Collateral, as income, proceeds, products, rents or profits of Prepetition Collateral, or otherwise, constitutes "cash collateral" of the Prepetition Lender within the meaning of section 363(a) of the Bankruptcy Code (the "***Cash Collateral***").

F. Findings Regarding the Postpetition Financing and Use of Cash Collateral.

i. Request for Postpetition Financing and Use of Cash Collateral. The Debtors have requested from the DIP Lender and the Prepetition Lender, and the DIP Lender and the Prepetition Lender are willing, subject to the terms of this Interim Order, the DIP Documents, and satisfaction of the conditions set forth in the DIP Credit Agreement, to extend the DIP Loans, in the case of the DIP Lender, and consent to the use of Cash Collateral, in the case of the Prepetition Lender, on the terms and conditions set forth in this Interim Order and the other DIP Documents.

ii. Need for Postpetition Financing and Use of Cash Collateral. The Debtors do not have sufficient liquidity, including Cash Collateral, to operate and maintain their businesses in the ordinary course of business without the financing requested in the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, pay certain fees and expenses as set forth herein, and to otherwise fund their operations and other efforts and activities is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all creditors of the Debtors. The ability of the Debtors to obtain sufficient liquidity through the proposed postpetition financing arrangements with the DIP Lender and the use of Cash Collateral as set forth in this Interim Order, the DIP Credit Agreement, and the other DIP Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor. Accordingly, the Debtors have an immediate need to obtain the postpetition financing and to use Cash Collateral as set forth in this Interim Order to, among other things, permit the

orderly continuation of the operation and maintenance of their businesses, minimize the disruption of their business operations and other efforts and activities, and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

iii. No Credit Available on More Favorable Terms. The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code. The Debtors assert in the Motion and the First Day Declaration, and as demonstrated at the Interim Hearing, the Debtors sought, but could not obtain, the necessary postpetition financing, let alone on terms more favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the DIP Documents. In light of the foregoing, and considering the lack of any other alternatives, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and is in the best interests of the Debtors, their Estates, and all of their stakeholders.

iv. Budget. The Debtors have prepared and delivered to the DIP Lender and the Prepetition Lender an initial 11-week cash flow forecast (the "Initial Budget"), a copy of which is attached hereto as **Exhibit B**. For purposes hereof: "Budget" means the Initial Budget as amended pursuant to the procedures set forth in the DIP Credit Agreement. The DIP Lender is relying upon the Debtors' agreement to comply with the terms set forth in the DIP Credit Agreement, the Budget, this Interim Order, and the other DIP Documents in determining to enter into the postpetition financing arrangements provided for therein and as set forth herein. The Prepetiton Lender is relying upon the Debtors' agreement to comply with the terms set forth in this Interim Order in determining to enter into the cash collateral arrangements as set forth herein.

v. Certain Conditions to the DIP Facility and Cash Collateral Usage. The DIP Lender's willingness to make the DIP Loans is, and the Prepetition Lender's willingness to consent to the use of Cash Collateral is, conditioned upon, among other things: (a) the Debtors obtaining Court approval to enter into the DIP Documents and to incur all of the obligations thereunder, and to confer upon the DIP Lender all applicable rights, powers, and remedies thereunder and under this Interim Order; (b) the Debtors obtaining Court approval of and compliance with the "Chapter 11 Milestones" set forth in **Exhibit C** hereto, which are hereby approved in all respects; (c) the DIP Lender being granted, as security for the prompt payment of the DIP Obligations, perfected security interests in and liens upon substantially all property and assets of the Debtors, including, without limitation, a valid and perfected security interest in and lien upon all of the following now existing or hereafter arising or acquired property and assets: (i) all property and assets comprising Prepetition Collateral, and (ii) all property and assets of the Debtors (whether existing as of the Petition Date or after-acquired, tangible or intangible, and comprising real or personal property), expressly excluding any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code other than any claim or cause of action to recover any amounts paid on a postpetition basis to any person or entity in violation of the terms of this Order, and the proceeds thereof, to the extent paid with DIP Loans and subsequently recovered from the payee pursuant to section 549 of the Bankruptcy Code or otherwise (the "Recovery Claims"). (As used in this Order: all claims or causes of action arising under or pursuant to chapter 5 of the Bankruptcy Code, except the Recovery Claims, are referred to as the

"Avoidance Actions;" the proceeds of Avoidance Actions are referred to as the "Avoidance Proceeds;" all the property referenced in the preceding sentence, excluding the Avoidance Actions and the Avoidance Proceeds, is collectively referred to as the "DIP Collateral;" and the property constituting the DIP Collateral, but excluding (i) the DIP Facility Proceeds in the Funding Account and the Carve-Out Account and (ii) the Recovery Claims, is referred to as the "Replacement Collateral.")

vi. Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender, including, without limitation, pursuant to this Interim Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

vii. Good Cause. Good cause has been shown for the entry of this Interim Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses, on-going operations and other applicable activities and efforts, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets. The extensions of credit under the DIP Facility and this Interim Order are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Facility and this Interim Order are the product of reasonable, arm's-length, good faith negotiations between the Debtors, the DIP Lender, and the Prepetition Lender.

viii. Adequate Protection. The Prepetition Lender is entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of its interests in the Prepetition Collateral (including Cash Collateral), as set forth in this Interim Order.

G. Immediate Entry. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(a)(3) and 6004. Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.

Based upon the foregoing findings and conclusions, and upon the record made before this Court by the Debtors at the Interim Hearing, and good and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED**:

I. ***Authorization and Conditions to Financing and Use of Cash Collateral***.

1. Motion Granted. The Motion is granted to the extent provided in this Interim Order. Any objections to the entry of this Interim Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2. Authorization to Use Cash Collateral. The Debtors are hereby authorized to use Cash Collateral solely in accordance with, and for the purposes permitted by, this Interim Order, the DIP Documents, and the Budget, subject to the permitted variances in the DIP Credit Agreement. The Prepetition Lender shall have the right to prompt notice of, and consultation with, the Debtors and the DIP Lender respect to any variances from or amendments to the Budget and copies of all reporting with respect thereto, including daily cash reporting.

3. Authorization of DIP Financing.

(a) The Debtors are hereby empowered to (i) execute and deliver the DIP Documents and to immediately borrow, incur, and obtain the DIP Loans, under the DIP Credit Agreement pursuant to the terms and conditions of the DIP Documents, this Interim Order, and the Budget, in an aggregate principal amount of up to Interim Loan Amount, with draws to be made upon entry of this Interim Order and satisfaction or waiver of the other conditions set forth herein, in the DIP Credit Agreement, and in accordance with the Budget, and (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Credit Agreement and the other DIP Documents, all pursuant to the terms and conditions of this Interim Order, the Budget, the DIP Credit Agreement, and the other DIP Documents.

(b) This Interim Order and all the terms, conditions, and covenants set forth in the DIP Documents (including, without limitation, the DIP Credit Agreement) shall be sufficient and

conclusive evidence of (i) the borrowing arrangements by and among the Debtors and the DIP Lender, and (ii) each Debtor's assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of the DIP Credit Agreement and the other DIP Documents for all purposes, including, without limitation, to the extent applicable, the payment of the DIP Obligations. Upon effectiveness thereof, the DIP Documents shall evidence the DIP Obligations, which DIP Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in either of these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of either of these Chapter 11 Cases (collectively, the "Successor Cases"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Interim Order and the other DIP Documents.

(c) Any and all fees and expenses payable pursuant to the DIP Documents, including all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Lender incurred at any time, such as reasonable and documented fees and disbursements of counsel and financial advisors in connection with the negotiation, execution, or implementation of the DIP Documents or this Interim Order or the enforcement or preservation of any rights under the DIP Documents or this Interim Order (collectively, any and all such fees and expenses, the "DIP Fees") are hereby approved and the Debtors are hereby authorized and directed to pay, in cash and on a current basis, such DIP Fees. The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever. The DIP Fees need not be subject to allowance by the Court; however, any time that professionals of the DIP Lender seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall contain reasonably

sufficient detail but shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) to the U.S. Trustee and counsel to the Committee (if appointed), contemporaneously with the delivery of such fee and expense statements to the Debtors. After delivery of a fee and expense statement or invoice, the Debtors, the U.S. Trustee, and the Committee (if appointed) shall have ten (10) business days to file an objection thereto with the Court. If an objection is timely filed, such objection (regardless of the basis thereof, including any alleged lack of specificity) shall be subject to resolution by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such fee and expense statement or invoice shall be paid promptly by the Debtors. No attorney or advisor to the DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

4. Subject to the terms and conditions of the applicable DIP Documents, the Debtors and the DIP Lender may make amendments, modifications, or supplements to any DIP Document, and the DIP Lender may waive any provisions in the DIP Documents or this Interim Order, without further approval of the Court; *provided*, that, without further order of the Court, the DIP Documents may not be amended in any manner that is adverse to the interests of the Prepetition Lender without the Prepetition Lender's prior written consent, and any amendments, modifications, or supplements to any DIP Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder, or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as

currently provided in the DIP Documents, or that operate to change the definition of DIP Collateral (collectively, the "Material DIP Amendments"), shall be filed with the Court, and the Debtors shall provide prior written notice of the Material DIP Amendment to (i) counsel to the DIP Lender, (iii) counsel to Prepetition Lender; (iv) counsel to the Committee, or, in the event no such Committee is appointed at the time of such Material DIP Amendment, the 30 largest unsecured creditors, and (v) the U.S. Trustee; *provided*, *further*, that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP Amendment that is subject to an objection filed within three (3) business days following receipt of notice of such Material DIP Amendment must be approved by the Court.

5. Prohibition Against Avoidance. No obligation, payment, transfer, or grant of security hereunder or under the DIP Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, or similar statute or foreign law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity; *provided*, that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 15 hereof, with respect to the Prepetition Obligations.

6. Funding Mechanics.

(a) The proceeds of the DIP Loans when made shall be funded to a segregated debtor-in-possession account to be created in the name of MobiTV, Inc., subject to the liens and

security interests solely of the DIP Lender and which shall be used for the sole purpose of holding and disbursing the proceeds of the DIP Loans (the "Funding Account"). The Borrower may, subject to conditions precedent specified in the DIP Credit Agreement, withdraw funds from the Funding Account solely to pay (x) one or more disbursements set forth as a line item in the then-effective Budget in an amount not to exceed the amount for such line item set forth in the then-effective Budget, subject to variances permitted by the DIP Agreement, (y) any amounts due and payable to the DIP Lender, or (z) to pay such other amounts that are due and payable under the DIP Documents; *provided, however,* for the avoidance of doubt, with the exception of the funds transferred into the Carve-Out Account as contemplated in paragraph 11, the Debtors (a) shall only transfer money out of the Funding Account and into its general disbursement account on a daily basis as needed to pay amounts set forth in the Budget (which shall not include funding of any minimum cash balance as set forth on the Budget) and (b) shall not be authorized to transfer funds out of the Funding Account to the extent that Cash Collateral or other funds are then available to pay such amount set forth in the Budget.

(b) Notwithstanding anything herein or in any other order of the Court to the contrary, the Debtors may only withdraw funds from the Funding Account or make a cash payment to a terminated or resigning employee or former employee of the Debtors (an "Employee") on account of such Employee's accrued vacation, paid time off, sick, paid holiday and other leave under the Debtors' policies and practices, upon the express written consent of the DIP Lender, *provided that* DIP Lender shall provide its response to the Debtors within one (1) business day after notice to the DIP Lender.

(c) Notwithstanding anything herein or in any other order of the Court to the contrary, the Debtors may only withdraw funds from the Funding Account or make a cash

payment pursuant to any critical vendor order, upon the express written consent of the DIP Lender, *provided that* DIP Lender shall provide its response to the Debtors within one (1) business day after notice to the DIP Lender.

7. Indemnification. The Debtors are authorized to indemnify and hold harmless the DIP Lender and, solely in its capacity as such, its respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in accordance with, and subject to, the DIP Documents.

II. ***Postpetition Liens; Superpriority Administrative Claim Status***.

8. Prepetition Lender Adequate Protection.

(a) *Adequate Protection Claims and Liens*. The Prepetition Lender is entitled, pursuant to sections 361, 363(e), 503(b), 507(a), and 507(b) of the Bankruptcy Code and effective as of the Petition Date, to adequate protection of its interests in the Prepetition Collateral, including any Cash Collateral, in an amount equal to any Diminution in Value of the Prepetition Lender's interests in the Prepetition Collateral from and after the Petition Date. On account of such adequate protection, the Prepetition Lender is hereby granted the following, in each case subject to the Carve-Out and paragraph 15 of this Interim Order (collectively, the "Adequate Protection Obligations"):

(i) Prepetition Adequate Protection Liens. To the extent of any Diminution in Value, the Prepetition Lender is hereby granted (effective and perfected upon the date of this Interim Order and without any further act and without regard to other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of property, or other act to validate or perfect such security interest or lien, including, with respect to any

deposit accounts, control agreements with any financial institution(s) party to a control agreement or other depository account agreement, or requirement to register liens on any certificates of title (each a "Perfection Act")) valid and perfected postpetition replacement security interests in and liens upon the Replacement Collateral (the "Prepetition Adequate Protection Liens"), which liens shall be, with respect to the Replacement Collateral (whether in existence on the Petition Date or hereafter arising), subject and subordinate solely to the Carve-Out.

(ii) Adequate Protection Superpriority Claims. To the extent of any Diminution in Value, the Prepetition Lender is hereby granted allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "Prepetition Adequate Protection Claims"), which shall be allowed claims against each of the Debtors (jointly and severally), with priority over (with the express exception of the claims provided for under the Carve-Out) any and all administrative expenses and all other claims against the Debtors (including the DIP Superpriority Claims) now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 365, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code. The Prepetition Adequate Protection Claims shall be payable from all prepetition and postpetition property of the Debtors, including, upon entry of the Final Order, Avoidance Actions and Avoidance Proceeds, subject to the Carve-Out.

(iii) DIP Facility Junior Priority. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or the DIP Documents, no payment of principal, interest or other amount due with respect to the DIP Loans shall be made

or received in respect of the DIP Obligations until the Prepetition Indebtedness has been indefeasibly paid in full, other than (A) as provided in paragraph 3(c) hereof (DIP fees and expenses), (B) any amounts paid or payable to DIP Lender as provided in paragraph 11 hereof (Carve-Out), (C) any amounts in the Funding Account, and (D) any amounts in respect of any Recovery Claims.

(iv) Sale Process. In connection with any sale process authorized by the Court, the Borrowers shall promptly provide information and documentation, access to sale professionals retained by the Borrowers, and answer questions and regularly consult as reasonably requested by the Prepetition Lender or the DIP Lender.

(v) Prepetition Lender Fees and Expenses. Subject to the Initial Budget as may be amended with the consent of the Prepetition Lender, any and all fees and expenses payable pursuant to the Prepetition Loan Documents, including all reasonable and documented out-of-pocket costs, disbursements, and expenses of the Prepetition Lender incurred at any time, such as reasonable and documented fees and disbursements of counsel and financial advisors in connection with the negotiation, execution, or implementation of the Prepetition Loan Documents or this Interim Order or the enforcement or preservation of any rights under the Prepetition Loan Documents or this Interim Order (collectively, any and all such fees and expenses, the "Prepetition Lender Fees") are hereby approved and the Debtors are hereby authorized and directed to pay, in cash and on a current basis, such Prepetition Lender Fees. The Prepetition Lender Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever. The Prepetition Lender Fees need not be subject to allowance by the Court; however, any time that professionals of the Prepetition Lender seek payment of fees and expenses from the Debtors, each professional shall provide summary

copies of its fee and expense statements or invoices (which shall contain reasonably sufficient detail but shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) to the U.S. Trustee and counsel to the Committee (if appointed), contemporaneously with the delivery of such fee and expense statements to the Debtors. After delivery of a fee and expense statement or invoice, the Debtors, the U.S. Trustee, and the Committee (if appointed) shall have ten (10) business days to file an objection thereto with the Court. If an objection is timely filed, such objection (regardless of the basis thereof, including any alleged lack of specificity) shall be subject to resolution by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such fee and expense statement or invoice shall be paid promptly by the Debtors, provided, for the avoidance of doubt, that such amounts are within the amount permitted by the Initial Budget. No attorney or advisor to the Prepetition Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court

(b) *Reservation of Rights Regarding Adequate Protection*. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Lender; *provided*, that the Prepetition Lender may request further or different adequate protection by separate motion, and the Debtors, DIP Lender, or any other party in interest with standing may contest any such request.

9. DIP Facility Superpriority Administrative Expenses. Subject only to the Carve-Out and the Prepetition Adequate Protection Claims, on account of all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Documents, or otherwise, the DIP Lender is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors (expressly excepting the Prepetition Adequate Protection Claims and claims provided for under the Carve-Out), whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(b), 506, 507(a), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof (the "DIP Superpriority Claims"), including, upon entry of the Final Order, Avoidance Actions and Avoidance Proceeds.

10. Postpetition Liens.

(a) *Postpetition DIP Liens*. To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Lender of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens in and upon all DIP Collateral (the "DIP Liens"), subject only to (i) the Prepetition Liens with respect to the Prepetition

Collateral (except to the extent that the Prepetition Liens are subsequently disallowed, subordinated or avoided pursuant to a final non-appealable order in favor of the plaintiff or movant in any Challenge Proceeding as described in paragraph 15 hereof), (ii) the Prepetition Adequate Protection Liens with respect to the Replacement Collateral, and (iii) to any other liens that were, as of the Petition Date, valid, properly perfected, and non-avoidable (all such lines described in the foregoing clauses (i)-(iii), the "Senior Liens").

(b) *DIP Lien Priority in DIP Collateral*. The DIP Liens on the DIP Collateral securing the DIP Obligations shall be junior only to the Senior Liens, and shall otherwise be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; *provided, however,* that the DIP Liens shall be subject to the Carve-Out.

(c) *Postpetition Lien Perfection*. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Prepetition Adequate Protection Liens, subject to paragraph 15 of this Interim Order, and the other security interests granted herein, effective as of the Petition Date, without any Perfection Act. Notwithstanding the foregoing, if the DIP Lender or Prepetition Lender, as applicable, shall, in either of its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act with respect to its liens and security interests granted and confirmed by this Interim Order, then DIP Lender or Prepetition Lender, as applicable, is authorized to perform such act to the extent of the liens granted herein, and the Debtors are authorized and directed to perform such act to the extent necessary or required by this Interim Order, the DIP Documents,

or the Prepetition Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Lender or Prepetition Lender, as applicable, may choose to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law. Should the DIP Lender or Prepetition Lender, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d) To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by this Interim Order (including, particularly, the DIP Liens in the Funding Account) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby deemed to be satisfied; *provided, however,* that nothing herein shall excuse the Debtors from payment of any local or recording fees or taxes, if any, required in connection with such liens. By virtue of the terms of this Interim Order, to the extent that the DIP Lender or Prepetition Lender, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such filings shall be deemed to properly perfect its liens and

security interests granted and confirmed by this Interim Order without further action by the DIP Lender or Prepetition Lender, as applicable.

(e) Except as to the Carve-Out, subject to paragraph 15 of this Interim Order, and as otherwise provided in this Interim Order, the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in either of these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

11. Carve-Out.

(a) *Carve-Out*. As used in this Interim Order, the "Carve-Out" means the sum of the following:

i. all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in clause (iv) below and without being subject to any budget (the amounts set forth in this paragraph (i), the "Statutory Fee Carve-Out");

ii. all reasonable and documented fees and out-of-pocket expenses incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by the Court in an amount not to exceed $25,000 (without regard to the notice set forth in clause (iv) below) (the "Chapter 7 Trustee Carve-Out");

iii. to the extent allowed by the Court at any time (i.e., prior to or after the Carve-Out Trigger Date), whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, costs, and out-of-pocket expenses, incurred by persons or firms retained by the Debtors pursuant to section

327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and any committee pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons" and such fees, costs, and out-of-pocket expenses of the Professional Persons as and when allowed, the "Allowed Professional Fees"), capped at the amounts provided for such Professional Person in the Budget through the Carve-Out Trigger Date (on an aggregate basis for each such Professional Person as of such date), *plus* transaction fees earned by or payable to a Professional Person including any party acting in the capacity of a broker or investment banker (such transaction fee, the "Transaction Fees" and the amounts set forth in this clause (iii), the "Pre-Notice Professional Fee Carve-Out");

iv. Allowed Professional Fees in an aggregate amount not to exceed $300,000 incurred on and after the Carve-Out Trigger Date (the amounts set forth in this clause (iv), the "Post-Notice Professional Fee Carve-Out"); and

v. Subject to approval by the Court of a key employee retention plan and / or key employee incentive plan, which plan(s) shall be on substantially similar terms as agreed to between the DIP Lender and Debtors prior to the Petition Date (collectively, the "KEIP/KERP Plan"), all amounts in the Budget for the KEIP/KERP Plan (the "KEIP/KERP Carve-Out").

(b) *Carve-Out Trigger Notice*. "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtors, their counsel in the Chapter 11 Cases, counsel to the Prepetition Lender, the U.S. Trustee, and counsel to the Committee, which notice (x) may be delivered only following the occurrence and during the continuation of an Event of Default under and as defined in the DIP Documents, and (y) shall state that the Post-Notice Professional Fee Carve-Out has been invoked (the day on which a Carve-Out Trigger Notice is received by the parties above, which shall be presumed to be the date which such notice is sent, the "Carve-Out Trigger Date").

(c) *Fee Estimates*. Not later than the Wednesday after the second Friday after the Petition Date, and every other Wednesday thereafter (i.e., on a biweekly basis), each Professional Person shall make a good faith estimate of their fees incurred during the Chapter 11 Cases through the end of the preceding week; and if the amount of such estimate exceeds the amount

budgeted in the Budget through the end of such period for such Professional Person by more than 10%, such Professional Person shall deliver to the Debtors, the DIP Lender, and the Prepetition Lender a statement setting forth a good faith estimate of the amount of fees and expenses incurred by such Professional Person during the Chapter 11 Cases through the end of the preceding week.

(d) *Professional Fees Deposits*. During each week after the Petition Date until Carve-Out Trigger Date occurs, the Debtors are authorized to transfer from the Funding Account into a trust account of the Debtor's restructuring counsel not subject to the control of the DIP Lender or the Prepetition Lender (the "Carve-Out Account"), an amount equal to the total fees and expenses budgeted in the Budget for all Professional Persons for such week, exclusive of any Transaction Fees included in such Budget (the "Professional Fees Deposits"). The Professional Fees Deposits shall be held in the Carve-Out Account in trust by the Debtors through their restructuring counsel for the exclusive purpose of paying amounts owed by the Debtors to such Professional Person incurred through the Carve-Out Trigger Date and allowed by the Court, and with respect to any residual amounts, the DIP Lender, in accordance with subparagraphs (f) and (g), below. The Debtors shall cause Professional Fees Deposits to be used to pay Allowed Professional Fees as they become allowed and payable pursuant to any interim or final orders of the Court. For the avoidance of doubt, distributions of funds from the Funding Account into the Professional Fees Account shall be reported by the Debtors in their monthly operating reports.

(e) *Final Draw for Carve-Out Purposes*.

(i) On the Carve-Out Trigger Date, the Carve-Out Trigger Notice shall be deemed a draw request and notice of borrowing by the Debtors for loans to be made under the DIP Facility (the "Final Draw") in an amount equal to: the Statutory Fee Carve-Out

*plus* the Chapter 7 Trustee Carve-Out *plus* the Post-Notice Professional Fee Carve-Out *plus* the Pre-Notice Professional Fee Carve-Out (excluding Transaction Fees) incurred through the Carve-Out Trigger Date not yet funded to the Carve-Out Account (i.e., the amounts included in the Budget for Professional Fees during the period beginning on the Petition Date and ending on the Carve-Out Trigger Date *less* the Professional Fees Deposits *less* any Transaction Fees) *plus* the KEIP/KERP Carve Out. Notwithstanding anything herein to the contrary, the Final Draw shall be funded directly into the Carve-Out Account and into no other account and shall constitute DIP Obligations.

(ii) On the third (3rd) Business Day following the Carve-Out Trigger Date, notwithstanding anything herein or in the DIP Credit Agreement or the other DIP Documents to the contrary, including, without limitation, with respect to (1) the existence of an Event of Default under the DIP Credit Agreement; (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the making of any DIP Loans under the DIP Credit Agreement, respectively; (3) any termination to fund under the DIP Facility following an Event of Default under the DIP Credit Agreement; or (4) the occurrence of the maturity date under the DIP Credit Agreement, the DIP Lender shall fund the Final Draw; *provided, however,* notwithstanding anything herein to the contrary, in no event shall the DIP Lender be required to fund any amount in excess of the DIP Commitments.

(f) *Payment of Carve-Out.* The Debtors and any chapter 7 trustee appointed in any Successor Case may use Carve-Out funds (including the funds in the Carve-Out Account) solely for the purpose and person(s) or entity(ies) for which such funds were carved out as set forth in the definition of Carve-Out—which, for the avoidance of doubt, in the case of the Pre-Notice Professional Fee Carve-Out shall be on a per-Professional-Person-basis—(the "Carve-Out

Purpose") and for no other purpose except to be distributed to the DIP Lender on account of the DIP Loans and DIP Liens (unless the DIP Obligations are already fully satisfied, in which case the funds shall be then be distributed to the Prepetition Lender on account of the Prepetition Obligations until fully satisfied, with any remaining balance being returned to the Debtors' accounts) and neither the Prepetition Lender nor DIP Lender may sweep or foreclose on such funds.

(g) *Residual Interest in Carve-Out Funds.* If any amount in the Carve-Out Account is in excess of the Carve-Out Purpose for which such amount was budgeted and transferred into Carve-Out Account, the residual of any such amount shall be distributed to the DIP Lender on account of the DIP Loans and DIP Liens (unless the DIP Obligations are already fully satisfied, in which case the funds shall be then be distributed to the Prepetition Lender on account of the Prepetition Obligations until fully satisfied, with any remaining balance being returned to the Debtors' accounts).

(h) *Other Priority Matters*. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Documents, or the Prepetition Loan Documents, the Carve-Out shall be senior to the DIP Obligations, the Prepetition Obligations, and any other claims arising under or in connection with the DIP Documents or the Prepetition Loan Documents (and any and all security interests and liens securing such claims), the DIP Superpriority Claims, the liens and claims securing the DIP Facility, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the foregoing; *provided*, that any lien priorities or superpriority claims granted pursuant to this Interim Order to secure payment of the Carve-Out

shall be limited to any shortfall in funding of the Carve-Out and in no event shall any Transaction Fees be paid from the Carve-Out Account.

(i) *No Direct Obligation To Pay Beneficiaries of Carve-Out*. Without limiting the scope of the Carve-Out, neither the DIP Lender nor Prepetition Lender shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Person or other potential beneficiary of the Carve-Out. Without limiting the scope of the Carve-Out, nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or Prepetition Lender, in any way, to directly pay compensation to, or to reimburse expenses of, any Professional Person or other potential beneficiary of the Carve-Out or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(j) *Reservation of Rights*. Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement or other compensation described with respect to these Carve-Out provisions. Further, nothing herein shall limit the amount of fees and expenses that may be incurred by a Professional Person and allowed by this Court in these cases, without regard to the Carve-Out.

III. ***Default; Waivers; Rights and Remedies; Relief from Stay***.

12. DIP Termination Events. The occurrence of an "Event of Default" or the "Maturity Date" under and as defined in the DIP Credit Agreement (except (x) an Event of Default which has been waived in writing by the DIP Lender or (y) an Event of Default or an occurrence of the Maturity Date with respect to which the DIP Lender has agreed, pursuant to a written agreement (a "Forbearance Agreement"), to forbear from exercising its enforcement rights and remedies, as long as such agreement to forebear is in effect) shall constitute a "DIP Termination Event" In no event shall the DIP Lender's entry into any Forbearance Agreement

constitute or be deemed to constitute any waiver of any kind, and the DIP Lender may at any time cease any such forbearance pursuant to the terms of such Forbearance Agreement upon written notice to that effect to the Prepetition Lender and the Debtors, at which time a DIP Termination Event shall occur.

13. Rights and Remedies upon a DIP Termination Event. Immediately upon the occurrence and during the continuation of a DIP Termination Event, (a) the DIP Lender shall be permitted to, and any automatic stay whether arising under section 362 of the Bankruptcy Code or otherwise is hereby modified without further notice to hearing of or order from the Court, to the extent necessary to permit the DIP Lender to, upon the delivery of written notice (which may include electronic mail) to the Lender Remedies Notice Parties (as defined below): (i) declare all DIP Obligations owing under the DIP Documents to be immediately due and payable; (ii) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains; (iii) terminate the DIP Credit Agreement and any DIP Documents as to any future liability or obligation of DIP Lender thereunder, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) invoke the right to charge interest at the default rate under the DIP Documents; (v) freeze monies or balances in the Funding Account (except as funds are necessary to fund the Carve-Out); (vi) notwithstanding section 553 of the Bankruptcy Code or otherwise, set off any amounts owed to the Debtors by it or any of its Affiliates (as such term is defined in section 101(2) of the Bankruptcy Code) against the DIP Obligations; and (vii) exercise any other right or remedy permitted to the DIP Lender under the DIP Credit Agreement, this Interim Order or by operation of law and (b) the Prepetition Lender shall be permitted to terminate and/or revoke the Debtors' rights, if any, under this Interim Order to use any Cash Collateral; *provided, however,* the DIP

Lender or the Prepetition Lender, as applicable, may take the actions described in clauses (a) (iv) and (vii) above, with respect to the DIP Lender, or clause (b) above, with respect to the Prepetition Lender, above only after providing five (5) business days' prior written notice to counsel to the Debtors, counsel to the Prepetition Lender, counsel to any Committee, and the U.S. Trustee (the "Lender Remedies Notice Parties") of the DIP Lender's intent to exercise its rights and remedies (the "Lender Remedies Notice Period") and, during such Lender Remedies Notice Period, the Court does not order otherwise.

14. Modification of Automatic Stay. The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary for (i) DIP Lender to implement the postpetition financing arrangements authorized by this Interim Order, and (ii) DIP Lender or Prepetition Lender to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral or Postpetition Collateral as authorized by this Interim Order.

15. Effect of Stipulations.

(a) *Binding on the Parties*. The stipulations, admissions, agreements, and releases contained in this Interim Order, including, without limitation, in paragraph E hereof (collectively, the "Parties' Stipulations"), shall be binding upon on the Debtors, the DIP Lender, and all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless each of the following three criteria are satisfied:

(i) Challenge Period. Such committee or any other party in interest, including a chapter 7 trustee (subject to in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with standing and requisite authority granted by the Court, has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 15) by no later than the date that is the earlier of (y) for the Committee (so long as the Committee is appointed prior to the Final Hearing), sixty (60) days after entry of the appointment of the Committee; and (z) for all other parties in interest, seventy-five (75) days from the entry of this Interim Order (such time period established by the foregoing clauses (y) and (z), the "Challenge Period"). The Challenge Period may be extended with the written consent of the Prepetition Lender.

(ii) Challenge Proceeding. Such adversary proceeding or other appropriate contested matter (A) objects to or challenges the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "Challenge Proceeding") against the Prepetition Lender or its subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "Representative," and, collectively, the "Representatives") in connection with matters related to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral.

(iii) Final Non-Appealable Order. There is a final non-appealable order in favor of the plaintiff or movant in any such Challenge Proceeding; *provided*, that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred.

(b) *Failure to File Challenge Proceeding*. For the avoidance of doubt, a party in interest's commencement of a timely Challenge Proceeding shall preserve the Challenge Period only with respect to such party in interest commencing the Challenge Proceeding and only to the extent of the express content of such Challenge Proceeding. If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff or movant in any such proceeding then: (i) the Parties' Stipulations shall be binding on all parties in interest, including, without limitation, the Committee and any trustee; (ii) the obligations of the Debtors under the Prepetition Loan Documents, including the Prepetition Loan

Obligations, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, reduction, defense, setoff or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases; (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, counterclaim, recharacterization, subordination, or avoidance; (iv) the Prepetition Loan Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Debtors, the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' Estates; and (v) any defenses, claims, causes of action, counterclaims, and offsets by the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' Estates, whether arising under the Bankruptcy Code or otherwise, against Prepetition Lender arising out of or relating to the Prepetition Loan Documents shall be deemed forever waived, released and barred. If any such Challenge Proceeding is timely filed during the Challenge Period, the Parties' Stipulations shall nonetheless remain binding and preclusive (as provided in this paragraph 15) on the Debtors, the Committee, and on any other person or entity, except to the extent that such Parties' Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any person or entity, including the Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their Estates, including, without limitation, Challenge Proceedings with respect to the Prepetition Loan Documents, the Prepetition Obligations, or the Prepetition Liens. Any motion seeking standing shall attach a

draft complaint or other pleading that sets forth such claim or cause of action or other Challenge Proceeding, and any claim or cause of action or other Challenge Proceeding not included therein shall be deemed forever waived, released, and barred.

IV. ***Other Rights and DIP Obligations***.

16. No Modification or Stay of this Interim Order. The DIP Lender has acted in good faith in connection with the DIP Facility and this Interim Order, its reliance on this Interim Order is in good faith, and DIP Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

17. Rights of Access and Information. The Debtors shall comply with the rights of access and information afforded to DIP Lender under the DIP Documents and the Prepetition Lender under the Prepetition Loan Documents.

18. No Waiver. Any waiver by the DIP Lender or the Prepetition Lender, as applicable, of any rights under the DIP Documents, the Prepetition Loan Documents, or this Interim Order shall not be, nor shall it constitute, a continuing waiver unless otherwise expressly provided therein. The failure of the DIP Lender or the Prepetition Lender, as applicable, to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the DIP Facility, or the Prepetition Loan Documents, as applicable, shall not constitute a waiver of any of the DIP Lender's or Prepetition Lender's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lender or the Prepetition Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Lender or the Prepetition Lender to: (a) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b)

propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Prepetition Lender.

19. No Unauthorized Disposition of Collateral; Use of Cash Collateral. The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and Cash Collateral), other than pursuant to the terms of this Interim Order or as permitted by the other DIP Documents, and the Debtors are authorized to use Cash Collateral solely in a manner consistent with this Interim Order, the Budget, and the other DIP Documents. Cash Collateral and the DIP Facility Proceeds shall not be used (i) to finance or otherwise fund any investigation (including discovery proceedings), initiation or prosecution of any adversary action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the DIP Lender or Prepetition Lender, or either of their respective rights and remedies under or in respect of the DIP Facility, the Prepetition Loan Documents, or any interim or final order with respect to the DIP Facility and the Prepetition Adequate Protection Obligations, (ii) in connection with challenging, invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating (other than to the Carve-Out), in whole or in part, or taking or attempting to take any other action to render unenforceable, the liens, claims, interests and adequate protection of the DIP Lender or the Prepetition Lender, including for the avoidance of doubt, (a) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the DIP Obligations or the DIP Liens, or (b) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the Prepetition Obligations or the Prepetition Liens under the Prepetition Loan Documents, (iii) for any purpose that is prohibited under the Bankruptcy Code, this Interim Order, or the Final Order, and (iv) to make

any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, which payment is not provided for in the Budget. Notwithstanding the foregoing, no more than $50,000 of the proceeds of the DIP Facility, DIP Collateral, or Cash Collateral may be used by any Committee in connection with the investigation of, but not litigation, or any objection or challenge to, the Prepetition Liens or the Prepetition Obligations within the Challenge Period.

20. Maintenance of Collateral. Unless the DIP Lender otherwise consents in writing, until (i) the payment in full or otherwise acceptable satisfaction of all DIP Obligations, and (ii) the termination of the DIP Lender's obligations to extend credit under the DIP Facility, the Debtors shall comply with the covenants contained in the DIP Documents regarding the maintenance and insurance of the DIP Collateral.

21. Reservation of Rights. The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of the DIP Lender and the Prepetition Lender, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Documents, the Prepetition Loan Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral, Postpetition Collateral, or the Prepetition Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

22. Binding Effect.

(a) All of the provisions of this Interim Order and the other DIP Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of each of DIP Lender and the Prepetition Lender, and any and all rights, remedies, privileges, immunities and benefits in favor of DIP Lender and the Prepetition Lender set forth herein, including, without limitation, the Parties' Stipulations, subject to paragraph 15 hereof (without each of which the DIP Lender would not have entered into or provided funds under the DIP Documents and the Prepetition Lender would not have consented to the use of Cash Collateral provided for hereunder), provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this Interim Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or both of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing one or both of the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Interim Order or any provision hereof; *provided*, that in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order

(b) Except as set forth in this Interim Order, in the event the Court modifies, reverses, vacates, or stays any of the provisions of this Interim Order or any of the other DIP Documents,

such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender or the Prepetition Lender, as applicable, of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Claims, or (iii) rights or priorities of the DIP Lender or Prepetition Lender pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Interim Order, and DIP Lender and the Prepetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted pursuant hereto, including the liens and priorities granted herein.

(c) This Interim Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases, and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law. This Interim Order shall also inure to the benefit of the Debtors, the DIP Lender, the Prepetition Lender, and each of their respective successors and assigns.

23. Discharge. The DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder, including granting the Prepetition Adequate Protection Liens and the Prepetition Adequate Protection Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been

indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of DIP Lender or the Prepetition Lender, as applicable, has otherwise agreed in writing.

24. Section 506(c) Waiver for DIP Lender and for Prepetition Lender.

(a) Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by DIP Lender upon the DIP Collateral) shall be charged against DIP Lender, or any of the DIP Obligations, or the DIP Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the DIP Lender, in its sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any Budget hereunder).

(b) Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the Prepetition Lender upon the Prepetition Collateral) shall be charged against the Prepetition Lender or any of the Prepetition Obligations the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the Prepetition Lender, in its sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any Budget hereunder).

25. Limits on Lender Liability.

(a) In determining to make any loan under the DIP Credit Agreement, authorizing the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, DIP Lender and the Prepetition Lender, as applicable, shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors, or (ii) owe any fiduciary duty to any of the Debtors. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of DIP Lender or the Prepetition Lender of any liability for any claims arising from the prepetition or postpetition activities of either of the Debtors and their respective Affiliates (as such term is defined in section 101(2) of the Bankruptcy Code).

(b) Nothing in this Interim Order or the other DIP Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c) As to the United States, its agencies, departments, or agents, nothing in this Interim Order or the other DIP Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

26. Release. Subject to paragraph 15 of this Interim Order, each of the Debtors, and their Estates, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit the DIP Lender and the Prepetition Lender, and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and

employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Released Parties") of and from any and all existing claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the Prepetition Obligations and the DIP Obligations, or (ii) the DIP Documents and the Prepetition Loan Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code) and any and all causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, setoff rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Obligations and the DIP Obligations, the Prepetition Loan Documents and the DIP Documents, or the Prepetition Liens and the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order. The Debtors are authorized

in any payoff letter or similar agreement into which they enter upon payment in full of the DIP Obligations to provide a waiver and release substantially similar to the waiver and release set forth in this paragraph 26 of the DIP Lender and its related parties.

27. Survival. The provisions of this Interim Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in either of these Chapter 11 Cases, (b) converting either or both of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing either or both of these Chapter 11 Cases, (d) terminating the joint administration of these Chapter 11 Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to DIP Lender and the Prepetition Lender (subject to paragraph 15 of this Interim Order) pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to this Interim Order and the other DIP Documents, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated, and (ii) in respect of the

Prepetition Obligations, all of the Prepetition Adequate Protection Obligations owed to the Prepetition Lender provided for in this Interim Order and under the Prepetition Loan Documents have been indefeasibly paid in full in cash.

28. No Third Party Rights. Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

29. No Avoidance. No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility shall be avoidable or recoverable from DIP Lender under any section of the Bankruptcy Code, or any other federal, state, or other applicable law; *provided*, that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 15 hereof, with respect to the Prepetition Obligations.

30. Reliance on Order. All postpetition advances under the DIP Documents are made in reliance on this Interim Order.

31. Payments Free and Clear. Any and all payments or proceeds remitted to the DIP Lender or the Prepetition Lender, pursuant to the provisions of this Interim Order, any subsequent order of the Court or the DIP Documents, shall, subject to the terms of this paragraph 31, be irrevocable, received free and clear of any claims, charge, assessment, or other liability; *provided*, that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 15 hereof, with respect to the Prepetition Obligations.

32. Limited Effect. In the event of a conflict between the terms and provisions of any of the DIP Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

33. Headings. Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

34. Bankruptcy Rules. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

35. General Authorization. The Debtors, the DIP Lender, and the Prepetition Lender are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

36. Retention of Exclusive Jurisdiction. The Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the DIP Credit Agreement, and the other DIP Documents.

37. Final Hearing. The final hearing (the "Final Hearing") on the Motion shall be held on _________, 2021, at__:__ _.m. (Eastern Time). Within three (3) business days after entry of this Interim Order, the Debtors shall serve by United States mail, first-class postage prepaid (such service constituting adequate notice of the Final Hearing) (a) notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice") and (b) a copy of this Interim Order, on the Notice Parties. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections no later than _________, 2021 at 4:00 p.m. (Eastern Time) and shall be served on (i) proposed counsel to the Debtor, Pachulski Stang Ziehl & Jones, LLP, Attn: Mary F. Caloway, Maxim B. Litvak, Jason H. Rosell, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (email: mcaloway@pszjlaw.com; mlitvak@pszjlaw.com and jrosell@pszjlaw.com), (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel to any official committee appointed in the Chapter 11 Case; (iv) counsel to the DIP Lender (email:

will.sugden@alston.com and jacobjohnson@alston.com); (iv) counsel to the Prepetition Lender, McGuireWoods LLP, Attn: Kenneth Noble, 1251 Avenue of the Americas, 20th Floor, New York, NY 10020 (email: knoble@mcguirewoods.com); (v) the Office of the United States Attorney for the District of Delaware; (vi) all parties entitled to notice pursuant to Local Rule 9013-1(m). In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

# <u>Exhibit A</u>

**DIP Credit Agreement**

# Exhibit B

## Initial Budget

# Exhibit C

## Chapter 11 Milestones

Milestone # 1. No later than 7 days after the Petition Date, Debtors shall file the Sale Motion with the Bankruptcy Court.

Milestone # 2. No later than 30 days after the Petition Date Debtors shall obtain the Final Order of the Bankruptcy Court and an order of the Bankruptcy Court approving bidding procedures relating to a sale motion each in form and substance satisfactory to the DIP Lender and the Prepetition Lender.

Milestone # 3. No later than 60 days after the Petition Date, Debtors shall execute an asset purchase agreement (or agreements) which will provide sufficient estimated proceeds to repay all DIP Obligations and Prepetition Obligations in full, or such lesser amount as may be determined by the DIP Lender and the Prepetition Lender each in their sole discretion (a "Qualifying Sale Agreement").

Milestone # 4. No later than 74 days after the Petition Date, Debtors shall obtain entry of a sale order approving the Qualifying Sale Agreement.

Milestone # 5. No later than 81 days after the Petition Date, Debtors shall close on Qualifying Sale Agreement.