# EXHIBIT 1

## Engagement Letter



Chris LeWand
FTI Consulting, Inc.
999 17th Street, Suite 700
Denver, CO 80202
Cell: 720-253-3060
Chris.Lewand@fticonsulting.com

PRIVATE & CONFIDENTIAL

February 28, 2021

Ms. Terri Stevens
Chief Financial Officer
MobiTV, Inc.
1900 Powell Street
Emeryville, CA, 94608, USA

Re: *Engagement of FTI Consulting, Inc.*

Dear Ms. Stevens:

1. **Introduction**

   The purpose of this letter is to confirm the understanding and agreement (the "Agreement") between MobiTV, Inc. ("MobiTV" or the "Client") and FTI Consulting, Inc. ("FTI") concerning the Client's engagement of FTI as Financial Advisory to provide certain Bankruptcy Services, as well as Transaction Advisory Services as exclusive agent for the Client in seeking, arranging, negotiating and generally advising with respect to any or all of the following: (i) sale of all or part of the Company (including individual asset sales); and (ii) creation of strategic partnerships, joint ventures and/or similar transactions (each individually a "Transaction"). This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided, supersedes the previously executed agreements between FTI Consulting, Inc. and MobiTV dated July 7, 2020, and FTI Capital Advisors, LLC dated July 22, 2020, and becomes effective upon the filing of the Chapter 11 petitions (the "Effective Date").

   This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2. **Scope of Services**

   The Services, to be performed at your direction, are expected to include the following:

   <u>**Bankruptcy Services**</u>

   FTI will provide the following Bankruptcy Services:

   - Continuing to assist the Company and the Client in preparing required documents and analysis for an orderly chapter 11 filing;
   - Assisting with negotiation, evaluation, and review of strategic alternatives;
   - Assisting with the development of business plan, financial, and liquidity projections;
   - Assisting with documentation and analyses relating to strategic alternatives;
   - Assisting with cash management and preparation, updating and variance reporting of a 13-week cash flow forecast in support of cash collateral negotiations and for any required debtor-in-possession financing;

MobiTV, Inc.
February 28, 2021

- Assisting with valuation and market analysis relating to strategic alternatives;
- Assisting in implementing all first-day and second-day orders;
- Assisting in preparing required motions throughout the course of the cases;
- Responding to creditor groups and vendors throughout the cases;
- Assisting with developing and implementing external and internal communications strategies and plans;
- Assisting in preparation of plan and disclosure statement documents and supporting materials;
- Assisting in the financial analysis of potential avoidance actions;
- Assisting in the preparation of the Company's statement of financial affairs (SOFA) and schedules of assets and liabilities (SOAL);
- Assisting in claim reconciliation and objections;
- Providing testimony and other litigation support as the circumstances warrant; and,
- Other financial advisory services that you may direct us to perform.

**Transaction Advisory Services**

FTI will provide the following Transaction Advisory Services (the "Transaction Advisory Services" and together with the Bankruptcy Services, the "Services"):

- Assist in the preparation of materials, including business, financial information, and descriptive memoranda, to be provided to potentially interested Parties to a Transaction (the "Parties"), and contacting such Parties;
- Assisting Company in establishing criteria to identify interested Parties, identifying, screening and assessing the merits of Parties, and evaluating any proposals received regarding a potential Transaction;
- Assisting the Company on negotiations in connection with any proposals received;
- Directing and coordinating the due diligence process;
- Providing timely reporting to the Company on the status and progress of all of the above; and,
- Assisting the Company and its advisors on each potential Transaction through closing.

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

MobiTV, Inc.
February 28, 2021

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3. **Fees**

Upon the Effective Date, for rendered in connection with Bankruptcy Services will be billed at their respective current hourly rates. Fees are payable in advance and may be billed as frequently as weekly and will be billed not less frequently than monthly. Further, Hourly rates are revised periodically, at least annually and upon promotions of our personnel.

*Bankruptcy Services, Hourly Rates:*

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $950 – 1,295 |
| Directors / Senior Directors / Managing Directors | 715 – 935 |
| Consultants/Senior Consultants | 385 – 680 |
| Administrative / Paraprofessionals | 155 – 290 |

*Transaction Advisory Services, Monthly and Transaction Fee*

Upon the Effective Date, for services rendered in connection with the Transaction Advisory Services, the Client agrees to pay FTI a monthly, non-refundable fee of $135,000 per month, earned and due on the first day of each month.

In addition, during the Term of this Engagement regardless of whether the Party or Parties were identified by FTI, for each and every Transaction completed by FTI, the Company will pay FTI in cash at each closing a fee (the "Transaction Fee") of 3.5% of the aggregate value of each Transaction, subject to a minimum aggregate fee of $500,000.

Moreover, if at any time during a period of 12 months following the effective date of termination of the Engagement hereunder, the Company completes one or more Transactions

MobiTV, Inc.
February 28, 2021

and the Transaction(s) involve(s) a party identified during the Term, the Company will pay FTI 3.5% of the aggregate value of each Transaction, subject to a minimum aggregate fee of $500,000.

For purposes of this Agreement "Aggregate Value" shall mean the full transaction value of any Transaction, including, without limitation, the total value of all cash, securities, other property, payments made in installments and any contingent, earned or other consideration paid or payable, directly or indirectly, by a Party pursuant to a Transaction. In the case of a strategic partnership, joint venture or similar transaction, Aggregate Value shall mean (x) the aggregate value, as FTI and the Client mutually agree in good faith, of the proceeds, assets and other consideration all parties to such partnership, venture or transaction pay or contribute in connection therewith, including, without limitation, cash, notes, securities, installment or contingent amounts, intellectual property, licenses, distribution agreements and other property; or (y) in the event such Transaction does not involve the payment or contribution of consideration, such amount as FTI and the Client mutually agree in good faith. The value of any such securities (other than indebtedness) or other property or items of value shall be valued at the time of closing without regard to any restrictions on transferability and determined as follows: (i) if such securities are traded on a stock exchange, the value of securities in an established public market shall be the last closing market price of such securities prior to consummation of the sale; (ii) if such securities have no established public market, or if the consideration utilized consists of property other than securities, the value of such securities or other property shall be the fair market value thereof as determined by FTI and the Client in good faith. "Aggregate Value" shall also include the face value of any indebtedness (including any trade credit) assumed, refinanced, or forgiven as part of a Transaction. If any consideration to be paid is computed in a foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. Dollars at the prevailing exchange rate on the date or dates on which such consideration is paid. The Client will pay any portion of the Transaction Fee attributable to contingent payments constituting Aggregate Value upon receipt of such payments based on the present value of such amounts, using a discount rate and probability of payment that FTI and the Client mutually agree.

If the Transaction Fees are not fully paid when due, the Client agrees to pay all costs of collection or other enforcement of FTI's rights hereunder, including but not limited to attorneys' fees and expenses, whether collected or enforced by suit or otherwise.

In addition to the fees outlined above, FTI will bill for reasonable allocated and direct expenses which are likely to be incurred on your behalf during this Engagement. Allocated expenses include the cost of items which are not billed directly to the engagement but are incurred centrally, including out-of-pocket costs for data services and research materials which FTI subscribes to that we expect to use on your engagement, copying, phone charges, and other overhead expenses that are not billed through as direct reimbursable expenses and are calculated at 2.0% of FTI's fees as described above. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement. Further, if FTI and/or any of its emloyees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

MobiTV, Inc.
February 28, 2021

*Other Fee and Payment Terms*

Any unapplied cash on account held under this Engagement Contract, and prior Engagement Contracts, as of the petition date will, subject to any requirement for Bankruptcy Court approval, first, be applied to any unpaid fees owing to FTI and FTICA as of the petition date, and, second, the remaining balance to be held and applied to any unpaid fees at the end of the case.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

As any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded

MobiTV, Inc.
February 28, 2021

administrative priority under 11 U.S.C. § 503(b)(1). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

4. **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

5. **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company. From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

6. **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Chris LeWand at (720) 253-3060.

Yours faithfully,

FTI CONSULTING, INC.
FTI CAPITAL ADVISORS, LLC.

By: _____
Christopher R. LeWand
Senior Managing Director

Attachment – As stated

MobiTV, Inc.
February 28, 2021

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

MobiTV, Inc.

By: _____
Ms. Terri Stevens
Chief Financial Officer

Date: ____2/27/2021_____

## FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with MobiTV, Inc. dated February 28, 2021. The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1. Reports and Advice**

1.1 **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2. Information and Assistance**

2.1 **Provision of information and assistance** – Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2 **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3 **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4 **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

3. **Additional Services**

3.1 **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

4. **Confidentiality**

4.1 **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

    4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.2    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

    4.1.3    is or has been independently developed by the recipient.

4.2 **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3 **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4 **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5 **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

5. **Termination**

5.1 **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by us through the date termination notice is received. Termination shall not affect FTI's right to receive the Transaction Fee, if any, earned under section 3 of the Engagement Contract.

5.2 **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6. **Indemnification, Liability Limitation, and Other Matters**

6.1 **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted (an "Adverse Determination"). The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance. FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2 **Limitation of liability** - You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.3 In addition to the above indemnification and provision regarding advancement of fees/expenese, FTI employees serving as directors or officers of the Company or its affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by the Company to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise. The Company shall specifically include and cover employees and agents serving as directors and officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees. Prior to FTI accepting any director or officer position, the Company shall, at the request of FTI, provide FTI a copy of its current D&O policy, a certificate of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other document that FTI may reasonably request evidencing the appointment and coverage of the indemnitees. The Company shall maintain such D&O insurance for the period through which claims can be made against such persons. In the event the Company is unable to include FTI employees and agents under the Company's policy or does not have first dollar coverage acceptable to FTI in effect for at least $10 million, FTI may, subject to the prior written consent of the Company, attempt to purchase a separate D&O insurance policy that will cover the FTI employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. Notwithstanding anything to the contrary, the Company's indemnification obligations in this Section 6 shall be primary to (and without allocation against) any similar indemnification and advancement obligations of FTI, its affiliates and insurers to the indemnitees (which shall be secondary), and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by FTI or otherwise).

**Governing Law** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof.

7.2   Jurisdiction. - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3   **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

FTI CONSULTING, INC

*Confirmation of Standard Terms and Conditions*

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

MobiTV, Inc.

By: _____
      Ms. Terri Stevens
      Chief Financial Officer

Date:   2/27/2021