# Exhibit 1 to Order

**Settlement Agreement**

EXECUTION COPY

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (this "Agreement") is entered into as of April 20, 2021 (the "Execution Date"), by and among (i) MobiTV, Inc., a Delaware corporation ("MobiTV"), (ii) MobiTV Service Corporation, a Delaware corporation ("MobiTV Service" and together with MobiTV, the "Debtors" or "Borrowers"), (iii) TVN Ventures, LLC, a Delaware limited liability company ("DIP Lender"), (iv) T-Mobile USA, Inc., a Delaware corporation ("T-Mobile USA"), (v) Sprint/United Management Company, a Kansas corporation ("Sprint/United" and together with DIP Lender, T-Mobile USA, and any of their direct or indirect affiliates, the "T-Mobile Parties"), and (vi) the Official Committee of Unsecured Creditors of the Debtors (the "Committee"). Each of the Debtors, T-Mobile Parties, and Committee are a "Party" and the foregoing collectively are the "Parties."

## RECITALS

A.     On March 1, 2021 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors' chapter 11 cases are being jointly administered under Case No. 21-10457 (the "Bankruptcy Cases").

B.     Prior to the Petition Date, Ally Bank and T-Mobile USA executed an *Amended and Restated Junior Participation Purchase Agreement*, dated February 12, 2021 (as amended, restated, supplemented or otherwise modified from time to time, the "Junior Participation Agreement"), pursuant to which T-Mobile USA purchased a "last-out" participation in certain "Bridge Loans" extended by Ally Bank to the Debtors under the *Loan and Security Agreement* between Debtors and Ally Bank (as amended, restated, supplemented or modified from time to time, and with all documents evidencing and securing the indebtedness thereunder, the "Prepetition Loan Documents").

C.     On the Petition Date, Borrowers and DIP Lender entered into the *Debtor-In-Possession Loan and Security Agreement* (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "DIP Credit Agreement"), consisting of a new money multi-draw term loan facility (the "DIP Facility") in an aggregate principal amount of up to $15,500,000 (the commitments under the DIP Facility, and in no event more than $15,500,000, the "DIP Commitments," and the loans made under the DIP Facility, the "DIP Loans").

D.     On March 3, 2021, the Bankruptcy Court entered its *Interim Order (I) Authorizing the Debtors to Obtain Secured Postpetition Financing; (II) Authorizing the Use of Cash Collateral; (III) Granting (A) Liens and Superpriority Administrative Expense Claims, and (B) Adequate Protection to Prepetition Lender; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 64] (the "Interim DIP Order").

E.     Pursuant to the Interim DIP Order, the Debtors were authorized to borrow up to $7,500,000 in principal (the "Interim Draw Amount"). Between March 3, 2021 and April 2, 2021, the Borrowers drew down the Interim Draw Amount.

F.    The Debtors' access to the undrawn portion of the DIP Commitments (*i.e.*, $8,000,000) (the "Remaining DIP Commitment") is subject to the Bankruptcy Court entering a final order authorizing that amount, as well as the other terms and conditions of the DIP Credit Agreement and Interim DIP Order (the "Final DIP Order"). The Parties and Ally Bank have negotiated and agreed to the form of the Final DIP Order, which is attached hereto as **Exhibit A**.

G.    On March 29, 2021, T-Mobile USA and its affiliates announced that, after April 29, 2021, T-Mobile USA and its affiliates would no longer provide "T-Vision" direct streaming products to its customers (the "March 29 Announcement"). As a result, the services of MobiTV pursuant to that certain *Master Agreement* dated as of November 6, 2019 by and between T-Mobile USA and MobiTV (as amended from time to time, and together with all related statements of work, as applicable, the "TMO Master Services Agreement"), are no longer required by T-Mobile USA (except in the limited manner set forth herein).

H.    In connection with the March 29 Announcement, the Debtors and the Committee determined that the best path forward for the Debtors would be to extend the Debtors' chapter 11 sale process in a manner that no longer met the "Chapter 11 Milestones" (and certain other terms and conditions) of the DIP Credit Agreement.

I.    The Debtors and the Committee have asserted that the Debtors may have legal claims against DIP Lender or its affiliates, including T-Mobile USA, arising from or related to their conduct during the Bankruptcy Cases (the "Asserted Claims").

J.    DIP Lender and T-Mobile USA assert that they have acted in accordance with their contractual rights under the TMO Master Services Agreement, DIP Credit Agreement, the Bankruptcy Code, and other applicable law, and assert further that the Asserted Claims have no merit.

K.    After the March 29 Announcement, T-Mobile USA and its affiliates, including, specifically, Sprint/United, have discussed with the Debtors: (i) terminating, in connection with entering into this Agreement, all contracts between such affiliates and Debtors, excepting the *Wireless Data and Application Agreement* between Sprint/United and MobiTV dated March 31, 2015 (as amended, the "Sprint Agreement"), as of April 30, 2021; and (ii) terminating the Sprint Agreement as of at 11:59 p.m. (Pacific Time) May 31, 2021, or at 11:59 p.m. (Pacific Time) on any prior date confirmed by counsel to Sprint/United in writing (including by email) to counsel for the Debtors (the "Sprint Termination Date"), and in connection with such termination, making a final payment, calculated in the manner provided by the Sprint Agreement, for services rendered under the Sprint Agreement from April 1, 2021 through and including the Sprint Termination Date (the "Final Sprint Payment").

L.    As a culmination of lengthy, arm's-length negotiations, the Parties have determined to settle their respective rights, claims, and obligations pursuant to the terms and conditions of this Agreement.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the promises, releases, agreements, and covenants contained herein, and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

1.     Incorporation of Recitals. The Parties acknowledge and agree that the Recitals set forth above are true and accurate, and incorporate the Recitals into this Agreement as if fully set forth herein.

2.     Conditions to Settlement and Effective Date. The Parties agree that the following are conditions precedent to this Agreement: (A) the Parties have duly executed and delivered this Agreement; (B) the Bankruptcy Court has entered in the Bankruptcy Cases (i) the Final DIP Order and (ii) an order approving this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 in the form attached hereto as **Exhibit B** (the "9019 Order" and with the Final DIP Order, the "Orders"); (C) the Orders have not been modified, vacated, or stayed; and (D) MobiTV shall have provided the services under the TMO Master Services Agreement at the level required by the DIP Credit Agreement through April 29, 2021 at 11:59 p.m. (Pacific Time). The date that each of the foregoing conditions is met shall be referred to as the "Settlement Effective Date". T-Mobile USA acknowledges that MobiTV's services under the TMO Master Services Agreement have been adequately provided through the Execution Date.    The Parties acknowledge that unless the Settlement Effective Date occurs, there is no binding agreement, waiver, modification, departure, or amendment regarding anything that is the subject matter of this Agreement.

3.     Settlement.

(a)     The DIP Lender shall wire the Remaining DIP Commitment to the Borrowers in the manner provided under the DIP Credit Agreement on the first business day following the Settlement Effective Date (the "Release Date").   Sprint/United shall wire the Final Sprint Payment within seven (7) calendar days following the Sprint Termination Date. On and after the Release Date, the Borrowers shall be permitted to utilize such funds as they see fit and in accordance with the Final DIP Order without any further review, input, or other rights of the DIP Lender, notwithstanding anything to the contrary contained in any applicable order entered in the Bankruptcy Cases.

(b)     The Sprint Agreement shall be deemed terminated at 11:59 p.m. (Pacific Time) on the Sprint Termination Date. All other contractual agreements between the Debtors and the T-Mobile Parties, including the TMO Master Services Agreement, shall be deemed terminated effective as of April 29, 2021 at 11:59 p.m. (Pacific Time); provided, however, and for no additional consideration, from April 29, 2021 at 11:59 p.m. (Pacific Time) through and including May 30, 2021 at 11:59 p.m. (Pacific Time), the Debtors covenant and agree to maintain a message on the customer feeds and applications hosted by the Debtors pursuant to the TMO Master Services Agreement, regarding the discontinuance of the T-Vision direct streaming product, in form and substance mutually agreed upon between MobiTV and T-Mobile USA. For

3

the avoidance of doubt, the DIP Lender and T-Mobile USA agree that the "TVision Termination" under the *Second Amended Key Employee Incentive Plan* [Docket No. 172-1] shall be deemed to occur no later than April 29, 2021 at 11:59 p.m. (Pacific Time).

        (c)     <u>Releases</u>.

        i.  *Releases in Favor of T-Mobile Parties.*

        1.    As of the Release Date, each of the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in either of the Bankruptcy Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of either of these Bankruptcy Cases, and any creditors and other parties-in-interest, including the Committee, claiming by or through them (collectively, the "<u>Debtor Releasors</u>"), hereby fully, forever, and irrevocably release, relinquish, remise, discharge, satisfy, and acquit each T-Mobile Party and any of its respective past, present, and future predecessors, heirs, successors, subsidiaries, parent entities, assigns, participants, shareholders, partners, members, owners, other principals, affiliates, managers, employees, officers, directors, attorneys, agents, other representatives, insurers, and any other individuals and/or entities claiming or acting by, through, under, or in concert with each such entity or individual (the "<u>Debtor Releasees</u>"), of and from and against any and all claims, demands, obligations, duties, liabilities, damages, expenses, claims of offset, indebtedness, debts, bonds, breaches of contract, duty or relationship, acts, omissions, misfeasance, malfeasance, causes of action of any nature whatsoever, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and remedies therefor, choses in action, rights of indemnity or liability of any type, kind, nature, description, or character whatsoever, arising directly or indirectly, either now accrued or hereafter maturing and whether known or unknown (each of the foregoing, a "<u>Claim</u>"), which any of the Debtor Releasors now has or hereafter can, shall, or may have by reason of any matter, cause or thing, including specifically, but without limitation and to the fullest extent applicable to the Debtor Releasees, matters arising out of, in connection with or relating to (i) the DIP Credit Agreement, (ii) the March 29 Announcement, (iii) the TMO Master Services Agreement; (iv) the Asserted Claims; (v) the Bankruptcy Cases; (vi) the Interim DIP Order or Final DIP Order; (vii) any other relationship, agreement, or transaction between the Debtor Releasors and Debtor Releasees, and (viii) any fact, matter, contract, transaction, or event relating thereto, whether known or unknown, suspected or unsuspected, whether now existing or hereafter arising, which could, might, or may be claimed to exist, whether liquidated or unliquidated, each as though fully set forth herein at length (collectively, the "<u>Debtor Released Claims</u>"); <u>provided</u> <u>however</u>, notwithstanding the foregoing, (i) the Debtor Released Claims shall not include claims for a breach of this Agreement, and (ii) the foregoing release shall not release Sprint/United from making the Final Sprint Payment; <u>provided further</u>, <u>however</u>, on the date that Sprint/United makes the Final Sprint Payment (the "<u>Sprint Release Date</u>"), the Debtor Releasors shall be deemed to fully, forever, and irrevocably release, relinquish, remise, discharge, satisfy, and acquit the Debtor Releasees of and from and against any and all Claims through and including the Sprint Release Date, which any of the Debtor Releasors then has or thereafter can, shall, or may have by reason of any matter, cause or thing, including specifically, but without limitation and to the fullest extent applicable to the Debtor Releasees, matters arising out of, in connection with or relating to the Sprint Agreement and the termination thereof on the Sprint Termination Date, with the sole exclusion of claims for a breach of this Agreement.

2.    The Debtor Releasors hereby waive the provisions of any applicable laws restricting the release of Claims that the Debtor Releasors do not know or suspect to exist at the time of release, which, if known, would have materially affected the decision to agree to these releases.  In this regard, the Debtor Releasors hereby agree, represent, and warrant to Debtor Releasees that the Debtor Releasors realize and acknowledge that factual matters unknown as of the date of this Agreement may have given rise to Claims which are presently unknown, unanticipated, and unsuspected.

3.    The Debtor Releasors hereby acknowledge that they have not relied upon any representation of any kind made by the Debtor Releasees in making the foregoing release, except as specifically set forth in this Agreement.

4.    The Debtor Releasors represent and warrant to the Debtor Releasees that the Debtor Releasors have not heretofore assigned or transferred, or purported to assign or to transfer, to any person or entity any Debtor Released Claim or any portion thereof or interest therein, and each of the Debtor Releasors agrees to indemnify, protect, defend, and hold each of the Debtor Releasees harmless from and against any and all claims based on or arising out of any such assignment or transfer or purported assignment or transfer by such party.

ii.    *Releases in Favor of Debtor Parties.*

1.    On the Release Date, each of the T-Mobile Parties on behalf of itself and each of its past, present, and future predecessors, successors, heirs, assigns, and any other individuals and entities claiming or acting by, through, under, or in concert with either of them (collectively, the "T-Mobile Releasors"), hereby fully, forever, and irrevocably release, relinquish, remise, discharge, satisfy, and acquit each of the Debtors and their estates, and any successors thereto, including, without limitation, any trustee appointed in either of the Bankruptcy Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of either of the Bankruptcy Cases, and any creditors and other parties-in-interest, including the Committee, claiming by or through them (the "T-Mobile Releasees"), of and from and against any and all Claims, which any of the T-Mobile Releasors now has or hereafter can, shall, or may have by reason of any matter, cause or thing, including specifically, but without limitation and to the fullest extent applicable to the T-Mobile Releasees, matters arising out of, in connection with or relating to (i) the DIP Credit Agreement, (ii) the March 29 Announcement, (iii) the TMO Master Services Agreement; (iv) the Asserted Claims; (v) the Bankruptcy Cases; (vi) any other relationship, agreement, or transaction between the T-Mobile Releasors and T-Mobile Releasees, (vii) the Interim DIP Order or Final DIP Order; and (viii) any fact, matter, contract, transaction, or event relating thereto, whether known or unknown, suspected or unsuspected, whether now existing or hereafter arising, which could, might, or may be claimed to exist, whether liquidated or unliquidated, each as though fully set forth herein at length (collectively, the "T-Mobile Released Claims"); provided however, notwithstanding the foregoing, the T-Mobile Released Claims shall not include claims for a breach of this Agreement or any rights with respect to T-Mobile USA's Junior Participation Agreement with Ally Bank, and (ii) the foregoing release shall not release the Debtors from performing under the Sprint Agreement; provided further, however, on the Sprint Release Date, the T-Mobile Releasors shall be deemed to fully, forever, and irrevocably release, relinquish, remise, discharge, satisfy, and acquit the T-Mobile Releasees of and from and against any and all Claims through and including the Sprint Release Date, which any of the T-Mobile Releasors then has or thereafter can, shall, or may have by reason of any

5

matter, cause or thing, including specifically, but without limitation and to the fullest extent applicable to the T-Mobile Releases, matters arising out of, in connection with or relating to the Sprint Agreement and the termination thereof on the Sprint Termination Date, with the sole exclusion of claims for a breach of this Agreement or any rights with respect to T-Mobile USA's Junior Participation Agreement with Ally Bank.

2.    The T-Mobile Releasors hereby waive the provisions of any applicable laws restricting the release of Claims that the T-Mobile Releasors do not know or suspect to exist at the time of release, which, if known, would have materially affected the decision to agree to these releases.  In this regard, the T-Mobile Releasors hereby agree, represent, and warrant to T-Mobile Releasees that the T-Mobile Releasors realize and acknowledge that factual matters unknown as of the date of this Agreement may have given rise to Claims which are presently unknown, unanticipated, and unsuspected.

3.    The T-Mobile Releasors hereby acknowledge that they have not relied upon any representation of any kind made by the T-Mobile Releasees in making the foregoing release, except as specifically set forth in this Agreement.

4.    The T-Mobile Releasors represent and warrant to the Debtors that the T-Mobile Releasors have not heretofore assigned or transferred, or purported to assign or to transfer, to any person or entity any T-Mobile Released Claim or any portion thereof or interest therein, and each of the T-Mobile Parties agrees to indemnify, protect, defend, and hold each of the Debtors harmless from and against any and all claims based on or arising out of any such assignment or transfer or purported assignment or transfer by such party.

4.    <u>Certain Representations and Warranties</u>.  Each Party represents and warrants to the other Parties, as an inducement for the others to enter into this Agreement:

(a)    such Party has read and understands all of the terms and conditions set forth in this Agreement;

(b)    such Party has had the benefit of legal counsel of its own choosing and has relied upon the advice of such counsel in deciding to execute this Agreement;

(c)    such Party, without promise of benefit other than as set forth herein, is freely and voluntarily entering into this Agreement;

(d)    such Party has the authority to enter into this Agreement;

(e)    there is good and valid consideration to support such Party's entering into this Agreement and to bind such party by the terms and conditions of this Agreement; and

(f)    such Party was not coerced, threatened, or otherwise forced to sign this Agreement, and its signature appearing hereinafter is voluntary and genuine and was duly and validly authorized and given.

5.    <u>Miscellaneous</u>.

(a)    *Time of Essence*.  Time is of the essence of this Agreement and each of the

provisions hereof.

(b)    *Costs and Expenses*.  Each Party shall pay its own attorneys' fees and other fees and expenses incurred in connection with the drafting and negotiation of this Agreement.

(c)    *Entire Agreement; No Reliance*.  This Agreement sets forth all of the covenants, promises, agreements, conditions, and understandings of the Parties relating to the subject matter of this Agreement, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them relating to the subject matter of this Agreement other than as are herein set forth.

(d)    *Successors*.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective permitted successors, assigns, and legal representatives.

(e)    *Severability*.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. Otherwise, if any provision of this Agreement shall be prohibited by or invalid under applicable law, then such provision shall be ineffective only to the extent of such prohibition, invalidity, or lack of approval, without invalidating the remainder of such provision or the remaining provisions of this Agreement, all of which shall remain fully binding and enforceable unless a Party declares in writing delivered to all other Parties that such affected provision is of the essence of this Agreement (and the Parties hereby stipulate and agree that all of the provisions of Section 3(a), and (c)(i) and (c)(ii) of the Agreement are of the essence).  In the event of such declaration by a Party, such Party shall be entitled to seek from the Bankruptcy Court appropriate equitable relief to rescind or reform this Agreement.

(f)    *Survival*.  The provisions of this Agreement shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby.

(g)    *Amendments, Changes, and Modifications*.  The terms of this Agreement shall not be altered, amended, modified, or otherwise changed in any respect except by a writing duly executed by all of the Parties hereto and approved by the Bankruptcy Court.  Failure of a Party to require strict performance of any of the conditions in this Agreement shall not imply a waiver of such conditions, nor a waiver of any other right, power, privilege, claim or remedy in any other instance or at any time thereafter.

(h)    *Construction*.

i.    The words "hereof," "herein," and "hereunder," and other words of a similar import refer to this Agreement as a whole and not to the individual Sections in which such terms are used.

ii.    The term "including" shall not be construed to be exclusive but shall rather be construed to have the same meaning as: "including, without limitation," "including, by way of example and not limitation," "including, but not limited to," and words of similar import.

iii.        References to Sections and other subdivisions of this Agreement are to the designated Sections and other subdivisions of this Agreement.

iv.        The headings of this Agreement are for convenience only and shall not define or limit the provisions hereof.

v.        Where the context so requires, words used in singular shall include the plural and vice versa, and words of one gender shall include all other genders.

vi.        The Parties hereto acknowledge and agree that this Agreement or the other documents executed pursuant hereto or in connection herewith shall not be construed more favorably in favor of one than the other based upon which Party drafted the same, it being acknowledged that all Parties hereto contributed substantially to the negotiation and preparation of this Agreement and the other documents executed pursuant hereto or in connection herewith.

(i)        *Execution of Counterparts.*  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.  Any party hereto may execute and deliver a counterpart of this Agreement by delivering by electronic transmission a copy of the signature page of this Agreement signed by such party, and any such signature page shall be treated in all respects as having the same effect as the original signature.

(j)        *No Third-Party Beneficiaries.*  This Agreement is solely for the benefit of the Parties hereto. No other person or entity shall be a third-party beneficiary hereof, other than successors and assigns of any Party.

(k)        *No Admission.*  This Agreement is entered into by the Parties for the purposes of settling the disputes between the Parties as specified herein.  It is not an admission of any kind whatsoever by the Parties, and except to the degree expressly stated herein, does not impair or waive any rights of the Parties.  The Parties specifically acknowledge and agree that this Agreement cannot be introduced into evidence in any action or proceeding filed in any court, or in any arbitration or other administrative proceeding, except to enforce the terms of this Agreement.

(l)        *Further Assurances.*  Each Party hereby agrees to execute such documents and take such other actions as may be reasonably necessary or appropriate to comply with the terms or intent of this Agreement.

(m)        *Choice of Law.*  This Agreement shall be construed in accordance with and be governed by the procedural and substantive law (without giving effect to the conflict of law principles thereof that would result in the application of any law other than the law of the State of Delaware) of the State of Delaware and any claims, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of, or relating to this Agreement shall be governed by the procedural and substantive law (without giving effect to the conflict of law principles thereof that would result in the application of any law other than the law of the State of Delaware) of the State of Delaware.

(n)    *Jurisdiction.*  The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the interpretation, enforcement, and implementation of this Agreement.

(o)    *WAIVER OF JURY TRIAL.*  EACH PARTY HERETO IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT, OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY).  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT, OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the date first above written.

## DEBTORS

MobiTV, Inc., a Delaware corporation

By: _____
      Name: Terri Stevens
      Title:   Chief Financial Officer

MobiTV Service Corporation,
a Delaware corporation

By: _____
      Name: Terri Stevens
      Title:   Chief Financial Officer

**T-MOBILE PARTIES**

TVN Ventures, LLC,
a Delaware limited liability company

By: _____
     Name: Dow Draper
     Title: EVP, Emerging Products

T-Mobile USA, Inc., a Delaware corporation

By: _____
     Name: Dow Draper
     Title: EVP, Emerging Products

Sprint/United Management Company,
a Kansas corporation

By: _____
     Name: Dow Draper
     Title: EVP, Emerging Products

**COMMITTEE**

The Official Committee of Unsecured
Creditors for the Debtors

By: _____
Name: MARK McGOURTY
Title: CHAIRMAN

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>MOBITV, INC., *et al.*<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 21-10457 (LSS)<br><br>Jointly Administered<br><br>**Relating to Docket Nos. 13, 64** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING; (II) AUTHORIZING THE USE OF CASH COLLATERAL; (III) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (B) ADEQUATE PROTECTION TO PREPETITION LENDER; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e), 503, and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), requesting, among other things, authorization for the Debtors to obtain postpetition financing and use cash collateral, consisting of:

        (a)      Authorization for the Debtors to obtain post-petition financing pursuant to the DIP Facility (as defined below), subject in all events to the terms of this Final Order, consisting of a junior secured multi-draw term loan facility on the terms and conditions

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: MobiTV, Inc. (2422) and MobiTV Service Corporation (8357). The Debtors' mailing address is 1900 Powell Street, 9th Floor, Emeryville, CA 94608.

[2]    Any capitalized term not otherwise defined herein shall have the meaning ascribed to such term in the DIP Credit Agreement.

substantially in the form of the Debtor-in-Possession Loan and Security Agreement annexed hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "DIP Credit Agreement," together with any other related agreements, documents, security agreements, pledge agreements, or intercreditor agreements, collectively, the "DIP Documents"), by and among Debtors as Borrowers (as defined in the DIP Credit Agreement) and TVN Ventures, LLC (the "DIP Lender"), consisting of a new money multi-draw term loan facility (the "DIP Facility") in an aggregate principal amount of up to $15,500,000.00 (the commitments under the DIP Facility, and in no event more than $15,500,000.00, the "DIP Commitments," and the loans made under the DIP Facility, the "DIP Loans"), pursuant to which, upon entry of this final order (the "Final Order") and satisfaction or waiver of the other conditions set forth therein and in the DIP Documents, the full remaining amount of the DIP Commitments shall be available to the Borrowers, subject to compliance with the terms, conditions, and covenants described in the DIP Documents, except as set forth in this Final Order; and

(b)      authorization for the Debtors to execute, deliver, and enter into the DIP Documents, and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Documents, subject in all events to the terms of this Final Order;

(c)      authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable to the DIP Lender pursuant to the DIP Documents, including, without limitation, any principal, interest, fees, costs, and expenses of the DIP Lender (including the reasonable fees, expenses and other charges of the DIP Lender's attorneys,

2

advisors, accountants, and other consultants, subject in all events to the terms of this Final Order), any obligations in respect of indemnity claims, whether contingent or absolute, in each case, to the extent constituting Borrower obligations of any kind under the DIP Documents (such obligations the "DIP Obligations");

(d)    authorization for the Debtors, immediately upon entry of this Final Order, to use proceeds of the DIP Facility (the "DIP Facility Proceeds") as expressly provided in the DIP Documents and solely in accordance with this Final Order and the applicable Budget (as defined below) (subject to permitted variances and other exclusions set forth in the DIP Documents), except as set forth in this Final Order;

(e)    the grant and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1) and 507(b) of the Bankruptcy Code, to the DIP Lender in respect of all DIP Obligations, subject only to the Carve-Out and the Prepetition Adequate Protection Claims (each as defined below), except as set forth in this Final Order;

(f)    authorization to grant the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting Prepetition Collateral (as defined below), including, without limitation, any Cash Collateral (as such term is further defined below), to secure the DIP Obligations, which DIP Liens shall be subject only to the Senior Liens (as defined below) and the Carve-Out, subject in all events to the terms of this Final Order;

(g)    authorization for the Debtors to use, among other things, solely in accordance with the Budget (subject to permitted variances and other exclusions set forth in the DIP Documents) and the limitations provided herein, any Cash Collateral in which

3

the Prepetition Lender (as defined below) may have an interest, and the granting of adequate protection solely to the extent of any postpetition diminution in the value of its interest in the Prepetition Collateral and Cash Collateral caused by the Debtors' postpetition use, sale, or disposition of Prepetition Collateral or Cash Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code ("Diminution in Value");

(h)     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the other DIP Documents to the extent hereinafter set forth;

(i)     the waiver of any applicable stay (including under Bankruptcy Rules 4001(a)(3) and 6004), such that this Final Order is immediately effective;

(j)     the scheduling of a final hearing on the Motion (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis (this "Final Order"), and approving the form of notice with respect to the Final Hearing; and

(k)     granting the Debtors such other and further relief as is necessary or appropriate.

**Notwithstanding anything else in the DIP Documents, this Final Order, or the Interim DIP Order to the contrary: (1) the DIP Lender shall have no obligation to fund any amount to the Debtors under the DIP Documents, this Final Order, or the Interim DIP Order and shall have all of the rights and protections to which the DIP Lender is entitled under the Interim DIP Order unless and until both (x) the Court has entered an order in the form**

attached to the Settlement Agreement dated April 20, 2021 (the "Settlement Agreement"), by and among the Debtors, the DIP Lender, T-Mobile USA, Inc., Sprint/United Management Company, and the Committee (as defined below) pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "9019 Order"), and (y) the "Settlement Effective Date" under the Settlement Agreement has occurred; and (2) if the 9019 Order has been entered and the "Settlement Effective Date" under the Settlement Agreement has occurred, then the DIP Lender's sole remaining obligation in connection with the DIP Documents, this Final Order, or the Interim DIP Order shall be to fund the Remaining DIP Commitment as required by the Settlement Agreement, thereby triggering the occurrence of the "Release Date" under the Settlement Agreement.

Upon the occurrence of the "Release Date" under the Settlement Agreement, the DIP Lender forfeits, releases, waives, and relinquishes the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims (each term as defined herein) against the Debtors and their estates as part of the mutual releases contemplated by the Settlement Agreement.

The initial hearing on the Motion having been held by the Court on March 2, 2021 (the "Interim Hearing"), the interim order being entered on March 3, 2021 (D.E. 64, the "Interim Order"), and the final hearing having been held on April 27, 2021 (the "Final Hearing" and with the "Interim Hearing," the "Hearings"), and upon the record made by the Debtors at the Hearings, including the Motion, the *Declaration of Terri Stevens in Support of First Day Motions* [Docket No. 4] (the "First Day Declaration"); any exhibits in connection with the foregoing, and the filings and pleadings in these Chapter 11 Cases, the Court having found that the relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders

and other parties in interest, and represents a sound exercise of the Debtors' business judgment
and is essential for the continued operation and maintenance of the Debtors' businesses; and
appropriate and adequate notice of the Motion, the relief requested therein, and the Final Hearing
(the "Notice") having been served by the Debtors in accordance with Bankruptcy Rules 4001 and
9014 and the Local Rules on: (a) the Office of the United States Trustee for the District of Delaware
(the "U.S. Trustee"); (b) the United States Attorney for the District of Delaware; (c) the Internal
Revenue Service; (d) the creditors listed on the Debtors' consolidated list of thirty creditors
holding the largest unsecured claims; (e) counsel to the DIP Lender; (f) counsel to the Prepetition
Lender; (g) counsel to the Committee; (h) all parties which, to the best of the Debtors' knowledge,
information, and belief, have asserted a lien in the Debtors' assets; and (i) any party that has
requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"); and the
opportunity for a Final Hearing on the Motion was appropriate in connection with the Motion and
no other notice need be provided; and all objections, if any, to the relief requested in the Motion
having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient
cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND
CONCLUSIONS OF LAW:**[3]

A.    Petition Date.  On March 1, 2021 (the "Petition Date"), each Debtor filed a
voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter
11 Cases").  The Debtors continue to operate and maintain their businesses and manage their

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the
extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the
extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in either of the Chapter 11 Cases.

B.    Jurisdiction and Venue. The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, 6004, and 9014 and Local Rules 4001-2 and 9013-1.

C.    Committee Formation. On March 15, 2021, the official committee of unsecured creditors was formed pursuant to section 1102 of the Bankruptcy Code (the "Committee"). No other statutory committee has been appointed in the Chapter 11 Cases.

D.    Notice. The Notice was given in the manner described in the Motion. Under the circumstances, the Notice given by the Debtors of the Motion, the Final Hearing, and the relief granted under this Final Order complies with Bankruptcy Rules 4001 and 9014 and the Local Rules.

E.    Parties' Acknowledgments, Agreements, and Stipulations. In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the Prepetition Lender for agreeing to consent to access to Cash Collateral, as provided herein, and as a condition to consenting to the use of Cash Collateral as set forth herein, subject to paragraph 15 of this Final

7

Order, the Debtors and the DIP Lender permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

      i.      <u>Prepetition Term Facility</u>. On February 3, 2017, the Debtors entered into a Loan and Security Agreement with Ally Bank (the "<u>Prepetition Lender</u>") (as amended, restated, supplemented or modified from time to time, the "<u>Prepetition Loan Agreement</u>;" the amounts owing under the Prepetition Loan Agreement, the "<u>Prepetition Indebtedness</u>;" all documents evidencing and securing the Prepetition Indebtedness, the "<u>Prepetition Loan Documents</u>"). Prior to the Petition Date, the Prepetition Lender and T-Mobile USA, Inc. (the "<u>Prepetition Participant</u>") executed an Amended and Restated Junior Participation Purchase Agreement, dated February 12, 2021 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Junior Participation Agreement</u>"), pursuant to which the Prepetition Participant purchased a "last-out" participation in certain "Bridge Loans" extended by the Prepetition Lender to the Debtors under the Prepetition Loan Documents. As of the Petition Date, the Debtors were justly and lawfully indebted and liable, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $25,442,472 in respect of loans and other extensions of credit made, plus accrued and unpaid interest and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case that are chargeable or reimbursable under the Prepetition Loan Agreement), charges, indemnities and other obligations incurred in connection therewith (in each case to the extent constituting "Obligations" under and as defined in the Prepetition Loan Agreement, collectively, the "<u>Prepetition Obligations</u>"). The Prepetition Loan Agreement is secured by first priority security interests in and liens on the "Collateral" (as defined in the Prepetition Loan Agreement, and which is an all-assets collateral grant including accounts receivable, inventory, equipment, deposit accounts, general intangibles, other property, subject to certain customary exceptions) (the "<u>Prepetition Collateral</u>," and such security interests and liens on the Prepetition Collateral the "<u>Prepetition Liens</u>"), including but not limited to the Cash Collateral.

      ii.      <u>No Challenges/Claims</u>. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and neither the Prepetition Liens nor the Prepetition Obligations, or any portion thereof, is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable, contractual, or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors and their Estates have no valid claim(s) (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against the Prepetition Lender or Prepetition Participant or their respective members, shareholders, affiliates, agents, attorneys, advisors, professionals, officers, directors or employees related to the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, the Junior Participation Agreement, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553 (inclusive), or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Obligations constitute allowed, secured claims to the extent of the value of the Prepetition Collateral within the meaning of sections 502 and 506 of the Bankruptcy Code.

iii.        Cash Collateral.  With the express exception of the DIP Facility Proceeds in the Funding Account, all of the cash of the Debtors, wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtors, whether as Prepetition Collateral, as income, proceeds, products, rents or profits of Prepetition Collateral, or otherwise, constitutes "cash collateral" of the Prepetition Lender within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

F.        Findings Regarding the Postpetition Financing and Use of Cash Collateral.

i.        Request for Postpetition Financing and Use of Cash Collateral.  The Debtors have requested from the DIP Lender and the Prepetition Lender, and the DIP Lender and the Prepetition Lender are willing, subject to the terms of this Final Order, the DIP Documents, and satisfaction of the conditions set forth in the DIP Credit Agreement, to extend the DIP Loans, in the case of the DIP Lender, and consent to the use of Cash Collateral, in the case of the Prepetition Lender, on the terms and conditions set forth in this Final Order and the other DIP Documents.

ii.        Need for Postpetition Financing and Use of Cash Collateral.  The Debtors do not have sufficient liquidity, including Cash Collateral, to operate and maintain their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, pay certain fees and expenses as set forth herein, and to otherwise fund their operations and other efforts and activities is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient liquidity through the proposed postpetition financing arrangements with the DIP Lender and the use of Cash Collateral as set forth in this Final Order, the DIP Credit Agreement, and the other DIP Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing and to use Cash Collateral as set forth in this Final Order to, among other things, permit the orderly continuation of the operation and maintenance of their businesses, minimize the disruption of their business operations and other efforts and activities, and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

iii.        No Credit Available on More Favorable Terms.  The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code.  The Debtors assert in the Motion and the First Day Declaration, and as demonstrated at the Final Hearing, the Debtors sought, but could not obtain, the necessary postpetition financing, let alone on terms more favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the DIP Documents.  In light of the foregoing, and considering the lack of any other alternatives, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and is in the best interests of the Debtors, their Estates, and all of their stakeholders.

iv.        Budget.  The Debtors have prepared and delivered to the DIP Lender and the Prepetition Lender a cash flow forecast, a copy of which is attached hereto as **Exhibit B**.  For purposes hereof: "Budget" means the attached Budget as it is amended pursuant to the procedures

set forth herein. The DIP Lender is relying upon the Debtors' agreement to comply with the terms set forth in the DIP Credit Agreement, the Budget, this Final Order, and the other DIP Documents in determining to enter into the postpetition financing arrangements provided for therein and as set forth herein. The Prepetiton Lender is relying upon the Debtors' agreement to comply with the terms set forth in this Final Order in determining to enter into the cash collateral arrangements as set forth herein.

v.      Certain Conditions to the DIP Facility and Cash Collateral Usage. Subject in all events to the terms of this Final Order, the DIP Lender's willingness to make the DIP Loans is, and the Prepetition Lender's willingness to consent to the use of Cash Collateral is, conditioned upon, among other things: (a) the Debtors obtaining Court approval to enter into the DIP Documents and to incur all of the obligations thereunder (as modified by this Final Order), and to confer upon the DIP Lender all applicable rights, powers, and remedies thereunder and under this Final Order; (b) [reserved]; (c) the DIP Lender being granted, as security for the prompt payment of the DIP Obligations, perfected security interests in and liens upon substantially all property and assets of the Debtors, including, without limitation, a valid and perfected security interest in and lien upon all of the following now existing or hereafter arising or acquired property and assets: (i) all property and assets comprising Prepetition Collateral, and (ii) all property and assets of the Debtors (whether existing as of the Petition Date or after-acquired, tangible or intangible, and comprising real or personal property), expressly excluding any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code other than any claim or cause of action to recover any amounts paid on a postpetition basis to any person or entity in violation of the terms of this Order, and the proceeds thereof, to the extent paid with DIP Loans and subsequently recovered from the payee pursuant to section 549 of the Bankruptcy Code or otherwise (the "Recovery Claims"). (As used in this Order: all claims or causes of action arising under or pursuant to chapter 5 of the Bankruptcy Code, except the Recovery Claims, are referred to as the "Avoidance Actions;" the proceeds of Avoidance Actions are referred to as the "Avoidance Proceeds;" all the property referenced in the preceding sentence, excluding the Avoidance Actions and the Avoidance Proceeds, is collectively referred to as the "DIP Collateral;" and the property constituting the DIP Collateral, but excluding (i) the DIP Facility Proceeds in the Funding Account and the Carve-Out Account and (ii) the Recovery Claims, is referred to as the "Replacement Collateral.")

vi.      Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender, including, without limitation, pursuant to this Final Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal.

vii.      Good Cause. Good cause has been shown for the entry of this Final Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses, on-going operations and other applicable activities and efforts and (b)

preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors. The extensions of credit under the DIP Facility and this Final Order are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Facility and this Final Order are the product of reasonable, arm's-length, good faith negotiations between the Debtors, the DIP Lender, and the Prepetition Lender.

> viii.    Adequate Protection.    The Prepetition Lender is entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of its interests in the Prepetition Collateral (including Cash Collateral), as set forth in this Final Order.

> G.    [Reserved].

Based upon the foregoing findings and conclusions, and upon the record made before this Court by the Debtors at the Final Hearing, and good and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED**:

I.    *Authorization and Conditions to Financing and Use of Cash Collateral.*

1.    Motion Granted.    The Motion is granted to the extent provided in this Final Order. Any objections to the entry of this Final Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.    Authorization to Use Cash Collateral. The Debtors are hereby authorized to use Cash Collateral solely in accordance with, and for the purposes permitted by, this Final Order and the Budget, subject to the permitted variances in the DIP Credit Agreement (determined as of the effective date of the Interim Order) (which Budget and variances, for purposes of the Cash Collateral authority hereunder, shall not be amended without the consent of the Prepetition Lender and the Committee). The Prepetition Lender and the Committee shall have the right to receive copies of weekly variance reporting (within three (3) business days after the end of each calendar week), and to receive promptly such additional cash flow reporting as is reasonably requested by the Prepetition Lender or the Committee. **Notwithstanding anything to the contrary in the DIP**

**Documents, from and after the Release Date, the DIP Lender shall have no reporting or review rights with the respect to the Debtors' use of Cash Collateral or the proceeds of the DIP Financing.**

3.    <u>Authorization of DIP Financing</u>.

(a)    All terms, conditions, and covenants set forth in the DIP Documents (including, without limitation, the DIP Credit Agreement) are approved, subject in all events to the terms of this Final Order. The Debtors are hereby empowered to immediately borrow, incur, and obtain the DIP Loans, under the DIP Credit Agreement pursuant to the terms and conditions of the DIP Documents, this Final Order, and the Budget, in an aggregate principal amount of up to Final Loan Amount, with draws to be made upon entry of this Final Order and satisfaction or waiver of the other conditions set forth herein, in the DIP Credit Agreement, and in accordance with the Budget, subject in all events to the terms of this Final Order.

(b)    This Final Order and all the terms, conditions, and covenants set forth in the DIP Documents (including, without limitation, the DIP Credit Agreement) shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors and the DIP Lender, and (ii) each Debtor's agreement to comply with, all the terms, conditions, and covenants of the DIP Credit Agreement and the other DIP Documents, subject in all events to the terms of this Final Order. Upon effectiveness thereof, the DIP Documents shall evidence the DIP Obligations, which DIP Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in either of these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of either of these Chapter 11 Cases (collectively, the "<u>Successor Cases</u>"), and their creditors and other parties-in-interest, in each case, in accordance with the terms

12

of this Final Order and the other DIP Documents, subject in all events to the terms of this Final Order.

(c)    Any and all fees and expenses payable pursuant to the DIP Documents, including all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Lender incurred at any time, such as reasonable and documented fees and disbursements of counsel and financial advisors in connection with the negotiation, execution, or implementation of the DIP Documents or this Final Order or the enforcement or preservation of any rights under the DIP Documents or this Final Order (collectively, any and all such fees and expenses, the "DIP Fees") are hereby authorized; *provided however*, that the Debtors shall have no obligation and shall not be authorized or empowered to pay the DIP Fees, and all such DIP Fees shall be borne entirely by the DIP Lender.

(d)    **Notwithstanding anything to the contrary herein, upon the occurrence of the "Release Date" under the Settlement Agreement, the DIP Lender forfeits, releases, waives, and relinquishes the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims (each term as defined herein) against the Debtors and their estates as part of the mutual releases contemplated by the Settlement Agreement.**

4.    [Reserved].

5.    Prohibition Against Avoidance.  No obligation, payment, transfer, or grant of security hereunder or under the DIP Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, or similar statute or foreign law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset,

13

recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity; *provided*, that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 15 hereof, with respect to the Prepetition Obligations and any rights granted to the Prepetition Lender or limit the effect of any stay pending appeal or outcome of any appeal affecting the matters addressed herein.

6.    <u>Funding Mechanics</u>.

(a)    The proceeds of the DIP Loans when made shall be funded to a segregated debtor-in-possession account to be created in the name of MobiTV, Inc., subject to the liens and security interests solely of the DIP Lender and which shall be used for the sole purpose of holding and disbursing the proceeds of the DIP Loans (the "<u>Funding Account</u>"). The Borrower may freely withdraw funds from the Funding Account to pay the amounts set forth in the Budget, subject to variances permitted by the DIP Agreement; *provided, however,* for the avoidance of doubt, with the exception of the funds transferred into the Carve-Out Account as contemplated in paragraph 11, the Debtors (a) shall only transfer money out of the Funding Account and into its general disbursement account on a daily basis as needed to pay amounts set forth in the Budget and (b) shall not be authorized to transfer funds out of the Funding Account to the extent that Cash Collateral or other funds are then available to pay such amounts set forth in the Budget.

(b)    [Reserved].

(c)    [Reserved].

7.    <u>[Reserved]</u>.

14

II.    ***Postpetition Liens; Superpriority Administrative Claim Status.***

    8.    <u>Prepetition Lender Adequate Protection</u>.

    (a)    *Adequate Protection Claims and Liens*.  The Prepetition Lender is entitled, pursuant to sections 361, 363(e), 503(b), 507(a), and 507(b) of the Bankruptcy Code and effective as of the Petition Date, to adequate protection of its interests in the Prepetition Collateral, including any Cash Collateral, in an amount equal to any Diminution in Value of the Prepetition Lender's interests in the Prepetition Collateral from and after the Petition Date.  On account of such adequate protection, the Prepetition Lender is hereby granted the following, in each case subject to the Carve-Out and paragraph 15 of this Final Order (collectively, the "<u>Adequate Protection Obligations</u>"):

    (i)    <u>Prepetition Adequate Protection Liens</u>.  To the extent of any Diminution in Value, the Prepetition Lender is hereby granted (effective and perfected upon the date of the entry of the Interim Order and without any further act and without regard to other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of property, or other act to validate or perfect such security interest or lien, including, with respect to any deposit accounts, control agreements with any financial institution(s) party to a control agreement or other depository account agreement, or requirement to register liens on any certificates of title (each a "<u>Perfection Act</u>")) valid and perfected postpetition replacement security interests in and liens upon the Replacement Collateral (the "<u>Prepetition Adequate Protection Liens</u>"), which liens shall be, with respect to the Replacement Collateral (whether in existence on the Petition Date or hereafter arising), subject and subordinate solely to the Carve-Out and the Senior Liens.

    (ii)    <u>Adequate Protection Superpriority Claims</u>.  To the extent of any Diminution in Value, the Prepetition Lender is hereby granted allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "<u>Prepetition</u>

Adequate Protection Claims"), which shall be allowed claims against each of the Debtors (jointly and severally), with priority over (with the express exception of the claims provided for under the Carve-Out) any and all administrative expenses and all other claims against the Debtors (including the DIP Superpriority Claims) now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 365, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code. The Prepetition Adequate Protection Claims shall be payable from all prepetition and postpetition property of the Debtors, including Avoidance Actions and Avoidance Proceeds, subject to the Carve-Out.

(iii) <u>DIP Facility Junior Priority</u>. For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or the DIP Documents, no payment of principal, interest or other amount due with respect to the DIP Loans shall be made or received in respect of the DIP Obligations until the Prepetition Indebtedness has been indefeasibly paid in full.

(iv) <u>Sale Process</u>. In connection with any sale process authorized by the Court, the Borrowers shall promptly provide information and documentation, access to sale professionals retained by the Borrowers, and answer questions and regularly consult as reasonably requested by the Prepetition Lender or the Committee.

(v) <u>Prepetition Lender Fees and Expenses.</u> Subject to the Budget as may be amended with the consent of the Prepetition Lender, any and all fees and expenses payable pursuant to the Prepetition Loan Documents, including all reasonable and documented out-of-pocket costs, disbursements, and expenses of the Prepetition Lender incurred at any time, such as

DOCS_SF:105405.5 57391/003

reasonable and documented fees and disbursements of counsel and financial advisors in connection with the negotiation, execution, or implementation of the Prepetition Loan Documents or this Final Order or the enforcement or preservation of any rights under the Prepetition Loan Documents or this Final Order (collectively, any and all such fees and expenses, the "Prepetition Lender Fees") are hereby authorized and the Debtors are hereby authorized to pay, in cash and on a current basis, such Prepetition Lender Fees.  The Prepetition Lender Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever, *provided*, that any payments by the Debtors on account thereof are subject to the provisions of paragraph 15 hereof.  The Prepetition Lender Fees need not be subject to allowance by the Court; however, any time that professionals of the Prepetition Lender seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall contain reasonably sufficient detail but shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) to the U.S. Trustee and counsel to the Committee, contemporaneously with the delivery of such fee and expense statements to the Debtors.  After delivery of a fee and expense statement or invoice, the Debtors, the U.S. Trustee, and the Committee shall have ten (10) business days to file an objection thereto with the Court.  If an objection is timely filed, such objection (regardless of the basis thereof, including any alleged lack of specificity) shall be subject to resolution by the Court (absent prior consensual resolution thereof).  Pending such resolution, the undisputed portion of any such fee and expense statement or invoice shall be paid promptly by the Debtors, provided, for the

17

avoidance of doubt, that such amounts are within the amount permitted by the Budget. No attorney or advisor to the Prepetition Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court

(b)    *Reservation of Rights Regarding Adequate Protection.*  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Lender; *provided*, that the Prepetition Lender may request further or different adequate protection by separate motion, and the Debtors, the Committee, or any other party in interest with standing may contest any such request.  For the avoidance of doubt, nothing contained in the Settlement Agreement or this Final Order (other than with respect to the Carve-Out) shall be deemed to release, waive or limit any claims, including any secured claims, adequate protection claims or deficiency claims, that the Prepetition Lender may have with respect to any Cash Collateral or other funds remaining after the payment of amounts authorized pursuant to the Budget, and all rights of the Debtors and the Committee with respect to any such claims, except as expressly set forth herein, are preserved.

9.    DIP Facility Superpriority Administrative Expenses.  Subject only to the Carve-Out and the Prepetition Adequate Protection Claims, on account of all DIP Obligations now existing or hereafter arising pursuant to this Final Order, the DIP Documents, or otherwise, the DIP Lender is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors (expressly excepting the Prepetition Adequate Protection Claims and claims provided for under the Carve-Out), whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or

priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(b), 506, 507(a), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof (the "DIP Superpriority Claims"), including Avoidance Actions and Avoidance Proceeds.

10.    Postpetition Liens.

(a)    *Postpetition DIP Liens.*  To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Lender of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens in and upon all DIP Collateral (the "DIP Liens"), subject only to (i) the Prepetition Liens with respect to the Prepetition Collateral (except to the extent that the Prepetition Liens are subsequently disallowed, subordinated or avoided pursuant to a final non-appealable order in favor of the plaintiff or movant in any Challenge Proceeding as described in paragraph 15 hereof), (ii) the Prepetition Adequate Protection Liens with respect to the Replacement Collateral, and (iii) to any other liens that were, as of the Petition Date, valid, properly perfected, and non-avoidable, and any rights of setoff preserved by section 553(a) of the Bankruptcy Code (all such liens and rights described in the foregoing clauses (i)-(iii), the "Senior Liens").

(b)    *DIP Lien Priority in DIP Collateral.*  The DIP Liens on the DIP Collateral securing the DIP Obligations shall be junior only to the Senior Liens, and shall otherwise be first and senior

19

in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; *provided, however,* that the DIP Liens shall be subject to the Carve-Out.

(c)    *Postpetition Lien Perfection.*  This Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Prepetition Adequate Protection Liens (subject to paragraph 15 of this Final Order), and the other security interests granted herein, effective as of the Petition Date, without any Perfection Act.  Notwithstanding the foregoing, if the Prepetition Lender shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act with respect to its liens and security interests granted and confirmed by this Final Order, then the Prepetition Lender is authorized to perform such act to the extent of the liens granted herein, and the Debtors are authorized and directed to perform such act to the extent necessary or required by this Final Order or the Prepetition Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of the Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  The Prepetition Lender may choose to file, record, or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Final Order in accordance with applicable law.  Should the Prepetition Lender so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive,

20

or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Final Order.

(d)    To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by this Final Order (including, particularly, the DIP Liens in the Funding Account) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby deemed to be satisfied; *provided, however,* that nothing herein shall excuse the Debtors from payment of any local or recording fees or taxes, if any, required in connection with such liens. By virtue of the terms of this Final Order, to the extent that the DIP Lender or Prepetition Lender, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Final Order without further action by the DIP Lender or Prepetition Lender, as applicable.

(e)    Except as to the Carve-Out, subject to paragraph 15 of this Final Order, and as otherwise provided in this Final Order, the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in either of these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or

21

otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

11.    Carve-Out.

(a)    *Carve-Out.* As used in this Final Order, the "Carve-Out" means the sum of the following:

i.  all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in clause (iv) below and without being subject to any budget (the amounts set forth in this paragraph (i), the "Statutory Fee Carve-Out"));

ii.  all reasonable and documented fees and out-of-pocket expenses incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by the Court in an amount not to exceed $25,000 (without regard to the notice set forth in clause (iv) below (the "Chapter 7 Trustee Carve-Out"));

iii.  to the extent allowed by the Court at any time (i.e., prior to or after the Carve-Out Trigger Date), whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, costs, and out-of-pocket expenses, incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons" and such fees, costs, and out-of-pocket expenses of the Professional Persons as and when allowed, the "Allowed Professional Fees"), capped at the amounts provided for such Professional Person in the Budget through the Carve-Out Trigger Date (on an aggregate basis for each such Professional Person as of such date), *plus* transaction fees earned by or payable to a Professional Person including any party acting in the capacity of a broker or investment banker (such transaction fee, the "Transaction Fees" and the amounts set forth in this clause (iii), the "Pre-Notice Professional Fee Carve-Out");

iv.  Allowed Professional Fees in an aggregate amount not to exceed $300,000 incurred on and after the Carve-Out Trigger Date (the amounts set forth in this clause (iv), the "Post-Notice Professional Fee Carve-Out"); and

v.  All obligations and payments to employees authorized under the *Order Approving Key Employee Retention Plan for Non-Insider Employees*, D.E. 162 (the "KEIP/KERP Motion") and the *Order Approving Key Employee Incentive Plan for Senior Leadership Employees*, D.E. 178 (together, the "DIP-Funded KEIP/KERP Carve-Out").

22

(b)    *Carve-Out Trigger Notice.* "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Lender to the Debtors, their counsel in the Chapter 11 Cases, the U.S. Trustee, and counsel to the Committee, which notice (x) may be delivered only following the occurrence and during the continuation of a material breach by the Debtors under this Final Order, and (y) shall state that the Post-Notice Professional Fee Carve-Out has been invoked (the day on which a Carve-Out Trigger Notice is received by the parties above, which shall be presumed to be the date which such notice is sent, the "Carve-Out Trigger Date").

(c)    *[Reserved].*

(d)    *Professional Fees Deposits.*    During each week after the Petition Date until the Carve-Out Trigger Date occurs, the Debtors are authorized to transfer from the Funding Account into a trust account of the Debtor's restructuring counsel not subject to the control of the DIP Lender or the Prepetition Lender (the "Carve-Out Account"), an amount equal to the total fees and expenses budgeted in the Budget for all Professional Persons for such week, exclusive of any Transaction Fees included in such Budget (the "Professional Fees Deposits").    The Professional Fees Deposits shall be held in the Carve-Out Account in trust by the Debtors through their restructuring counsel for the exclusive purpose of paying amounts owed by the Debtors to such Professional Person incurred through the Carve-Out Trigger Date and allowed by the Court, and with respect to any residual amounts, the DIP Lender, in accordance with subparagraphs (f) and (g), below. The Debtors shall cause Professional Fees Deposits to be used to pay Allowed Professional Fees as they become allowed and payable pursuant to any interim or final orders of the Court.    For the avoidance of doubt, distributions of funds from the Funding Account into the Carve-Out Account shall be reported by the Debtors in their monthly operating reports.

23

(e)  *[Reserved]*.

(f)  *Payment of Carve-Out*.  The Debtors and any chapter 7 trustee appointed in any Successor Case may use Carve-Out funds (including the funds in the Carve-Out Account) solely for the purpose and person(s) or entity(ies) for which such funds were carved out as set forth in the definition of Carve-Out—which, for the avoidance of doubt, in the case of the Pre-Notice Professional Fee Carve-Out shall be on a per-Professional-Person-basis—(the "Carve-Out Purpose") and for no other purpose and neither the Prepetition Lender nor DIP Lender may sweep or foreclose on such funds.

(g)  *Residual Interest in Carve-Out Funds*.  If any amount in the Carve-Out Account is in excess of the Carve-Out Purpose for which such amount was budgeted and transferred into Carve-Out Account, the residual of any such amount shall be distributed to the Debtors as unencumbered funds.

(h)  *Other Priority Matters*.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the DIP Documents, or the Prepetition Loan Documents, the Carve-Out shall be senior to the DIP Obligations, the Prepetition Obligations, and any other claims arising under or in connection with the DIP Documents or the Prepetition Loan Documents (and any and all security interests and liens securing such claims), the DIP Superpriority Claims, the liens and claims securing the DIP Facility, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the foregoing; *provided*, that in no event shall any Transaction Fees be paid from the Carve-Out Account.

(i)  *No Direct Obligation To Pay Beneficiaries of Carve-Out*.  Without limiting the scope of the Carve-Out, neither the DIP Lender nor Prepetition Lender shall be responsible for the

24

direct payment or reimbursement of any fees or disbursements of any Professional Person or other potential beneficiary of the Carve-Out.  Without limiting the scope of the Carve-Out, nothing in this Final Order or otherwise shall be construed to obligate the DIP Lender or Prepetition Lender, in any way, to directly pay compensation to, or to reimburse expenses of, any Professional Person or other potential beneficiary of the Carve-Out or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(j)     *Reservation of Rights*.  Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement or other compensation described with respect to these Carve-Out provisions.  Further, nothing herein shall limit the amount of fees and expenses that may be incurred by a Professional Person and allowed by this Court in these cases, without regard to the Carve-Out.

III.    ***Default; Waivers; Rights and Remedies; Relief from Stay***.

12.    Termination Events.  The occurrence of a material breach by the Debtors of the terms of this Final Order shall constitute a "Termination Event".

13.    Rights and Remedies upon a Termination Event.  Immediately upon the occurrence and during the continuation of a Termination Event, the Prepetition Lender shall be permitted to terminate and/or revoke the Debtors' rights, if any, under this Final Order to use any Cash Collateral; *provided, however,* the Prepetition Lender may take such action only after providing five (5) business days' prior written notice to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee (the "Lender Remedies Notice Parties") of the Prepetition Lender's intent to terminate and/or revoke the Debtors' rights to use any Cash Collateral (the "Lender Remedies Notice Period") and, during such Lender Remedies Notice Period, the Court does not order otherwise.

DOCS_SF:105405.5 57391/003

14.    <u>Modification of Automatic Stay</u>. The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary for (i) DIP Lender to implement the postpetition financing arrangements authorized by this Final Order, and (ii) the Prepetition Lender to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Replacement Collateral as authorized by this Final Order.

15.    <u>Effect of Stipulations</u>.

(a)    *Binding on the Parties*. The stipulations, admissions, agreements, and releases contained in this Final Order, including, without limitation, in paragraph E hereof (collectively, the "Parties' Stipulations"), shall be binding upon on the Debtors, the DIP Lender, and all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless each of the following three criteria are satisfied:

(i)    Challenge Period. Such committee, trustee, or any other party in interest (if acting on its own behalf, subject to in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with standing and requisite authority granted by the Court, has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 15) by no later than the date that is the earlier of (y) for the Committee, May 14, 2021; and (z) for all other parties in interest, May 17, 2021 (such time period established by the foregoing clauses (y) and (z), the "Challenge Period"). The Challenge Period may be extended with the written consent of the Prepetition Lender.

(ii)    Challenge Proceeding.    Such adversary proceeding or other appropriate contested matter (A) objects to or challenges the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or

26

causes of action, objections, contests or defenses (collectively, a "Challenge Proceeding") against the either the Prepetition Lender or the Prepetition Participant, or their subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "Representative," and, collectively, the "Representatives") in connection with matters related to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens, the Prepetition Collateral, and the Junior Participation Agreement.

(iii)    Final Non-Appealable Order. There is a final non-appealable order in favor of the plaintiff or movant in any such Challenge Proceeding; *provided*, that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred.

Notwithstanding anything to the contrary herein, if, before the end of the Challenge Period, these cases convert to cases under chapter 7 or a chapter 11 trustee is appointed, the Challenge Period shall be extended to the longer of (1) the remaining investigation period and (2) thirty (30) days after the appointment of such chapter 11 trustee or the conversion to chapter 7. For the avoidance of doubt, any chapter 7 or 11 trustee appointed or elected in these cases during the Challenge Period shall, until the expiration of the Challenge Period and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to the Challenge Period (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, stipulations, releases and waivers of the Debtors in this Final Order.

(b)    *Failure to File Challenge Proceeding.* For the avoidance of doubt, a party in interest's commencement of a timely Challenge Proceeding shall preserve the Challenge Period only with respect to such party in interest commencing the Challenge Proceeding and only to the extent of the express content of such Challenge Proceeding. If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the

27

plaintiff or movant in any such proceeding then: (i) the Parties' Stipulations shall be binding on all parties in interest, including, without limitation, the Committee and any trustee; (ii) the obligations of the Debtors under the Prepetition Loan Documents, including the Prepetition Loan Obligations, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, reduction, defense, setoff or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases; (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, counterclaim, recharacterization, subordination, or avoidance; (iv) the Prepetition Loan Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Debtors, the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' Estates; and (v) any defenses, claims, causes of action, counterclaims, and offsets by the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' Estates, whether arising under the Bankruptcy Code or otherwise, against Prepetition Lender or Prepetition Participant arising out of or relating to the Prepetition Loan Documents or Junior Participation Agreement shall be deemed forever waived, released and barred.  If any such Challenge Proceeding is timely filed during the Challenge Period, the Parties' Stipulations shall nonetheless remain binding and preclusive (as provided in this paragraph 15) on the Debtors, the Committee, and on any other person or entity, except to the extent that such Parties' Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Final Order vests or confers on any person or entity, including the Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases,

28

standing or authority to pursue any claim or cause of action belonging to the Debtors or their Estates, including, without limitation, Challenge Proceedings with respect to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens, or the Junior Participation Agreement. Any motion seeking standing shall attach a draft complaint or other pleading that sets forth such claim or cause of action or other Challenge Proceeding, and any claim or cause of action or other Challenge Proceeding not included therein shall be deemed forever waived, released, and barred.

IV.    ***Other Rights and DIP Obligations***.

16.    <u>No Modification or Stay of this Final Order</u>.  The DIP Lender has acted in good faith in connection with the DIP Facility and this Final Order, its reliance on this Final Order is in good faith, and DIP Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

17.    <u>Rights of Access and Information</u>.  The Debtors shall comply with the rights of access and information afforded to the Prepetition Lender under the Prepetition Loan Documents, with copies to be provided to the Committee.

18.    <u>No Waiver</u>. Any waiver by the DIP Lender or the Prepetition Lender, as applicable, of any rights under the DIP Documents, the Prepetition Loan Documents, or this Final Order shall not be, nor shall it constitute, a continuing waiver unless otherwise expressly provided therein. The failure of the DIP Lender or the Prepetition Lender, as applicable, to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, the DIP Facility, or the Prepetition Loan Documents, as applicable, shall not constitute a waiver of any of the DIP Lender's or Prepetition Lender's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the Prepetition Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation,

29

the rights of the Prepetition Lender to: (a) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Lender.

19.    <u>No Unauthorized Disposition of Collateral; Use of Cash Collateral</u>. The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and Cash Collateral), other than pursuant to the terms of this Final Order or as permitted by the other DIP Documents, and the Debtors are authorized to use Cash Collateral solely in a manner consistent with this Final Order, the Budget, and the other DIP Documents.  Cash Collateral shall not be used (i) to finance or otherwise fund any investigation (including discovery proceedings), initiation or prosecution of any adversary action, suit, arbitration, proceeding, application, motion or other litigation that constitutes a Challenge Proceeding, (ii) in connection with challenging, invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating (other than to the Carve-Out), in whole or in part, or taking or attempting to take any other action to render unenforceable, the liens, claims, interests and adequate protection of the Prepetition Lender, including for the avoidance of doubt, objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the Prepetition Obligations or the Prepetition Liens under the Prepetition Loan Documents, (iii) for any purpose that is prohibited under this Final Order or the Interim Order, and (iv) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, which payment is not provided for in the Budget.  Notwithstanding the foregoing, no more than $75,000 of Cash Collateral may be used by the Committee in connection with the

30

investigation of, but not litigation, or any objection or challenge to, the Prepetition Liens or the Prepetition Obligations within the Challenge Period.

20.    [Reserved].

21.    Reservation of Rights.  The terms, conditions, and provisions of this Final Order are in addition to and without prejudice to the rights of the Prepetition Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Prepetition Loan Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the Prepetition Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

22.    Binding Effect.

(a)    All of the provisions of this Final Order and the other DIP Documents (subject to the terms hereof), the DIP Obligations, all liens, and claims granted hereunder in favor of each of DIP Lender and the Prepetition Lender, and any and all rights, remedies, privileges, immunities and benefits in favor of DIP Lender and the Prepetition Lender set forth herein, including, without limitation, the Parties' Stipulations, subject to paragraph 15 hereof (without each of which the DIP Lender would not have entered into or provided funds under the DIP Documents and the Prepetition Lender would not have consented to the use of Cash Collateral provided for hereunder), provided or acknowledged in this Final Order, and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this Final Order and not subject to any stay of execution or effectiveness (all of which are hereby waived),

31

notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or both of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing one or both of the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Final Order or any provision hereof. The terms and conditions of this Final Order shall control over the Interim Order.

(b)    To the maximum extent set forth in section 364(e) of the Bankruptcy Code, in the event the Court modifies, reverses, vacates, or stays any of the provisions of this Final Order or any of the other DIP Documents (subject to the terms hereof), such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender or the Prepetition Lender, as applicable, of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Claims, or (iii) rights or priorities of the DIP Lender or Prepetition Lender pursuant to this Final Order with respect to the DIP Collateral or any portion of the DIP Obligations.  All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Final Order, and DIP Lender and the Prepetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted pursuant hereto, including the liens and priorities granted herein.

DOCS_SF:105405.5 57391/003

(c)    This Final Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases, and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law.  This Final Order shall also inure to the benefit of the Debtors, the DIP Lender, the Prepetition Lender, and each of their respective successors and assigns.

23.    <u>Discharge</u>.  The obligations of the Debtors with respect to adequate protection hereunder, including granting the Prepetition Adequate Protection Liens and the Prepetition Adequate Protection Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or he Prepetition Lender has otherwise agreed in writing.

24.    <u>Section 506(c) Waiver for Prepetition Lender.</u>

(a)    [Reserved].

(b)    No costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the Prepetition Lender upon the Prepetition Collateral) shall be charged against the Prepetition Lender or any of the Prepetition Obligations the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the Prepetition Lender, in its sole discretion, and no such consent shall be implied, directly or indirectly, from any other

33

action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any Budget hereunder).

25.    <u>Limits on Lender Liability</u>.

(a)    In determining to make or not make any loan under the DIP Credit Agreement or authorizing the use of Cash Collateral as and when permitted pursuant to this Final Order or the DIP Documents, DIP Lender and the Prepetition Lender, as applicable, shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors, or (ii) owe any fiduciary duty to any of the Debtors.  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of DIP Lender or the Prepetition Lender of any liability for any claims arising from the prepetition or postpetition activities of either of the Debtors and their respective Affiliates (as such term is defined in section 101(2) of the Bankruptcy Code).

(b)    Nothing in this Final Order or the other DIP Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)    As to the United States, its agencies, departments, or agents, nothing in this Final Order or the other DIP Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

26.    <u>Release</u>.  Subject to paragraph 15 of this Final Order, each of the Debtors, and their Estates, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit the DIP Lender and the Prepetition Lender, and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners,

34

controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Released Parties") of and from any and all existing claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the Prepetition Obligations and the DIP Obligations, or (ii) the DIP Documents and the Prepetition Loan Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code) and any and all causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, setoff rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Obligations and the DIP Obligations, the Prepetition Loan Documents and the DIP Documents, or the Prepetition Liens and the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or

35

related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Final Order.

27.    <u>Survival</u>.  Except as expressly set forth herein, the provisions of this Final Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in either of these Chapter 11 Cases, (b) converting either or both of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing either or both of these Chapter 11 Cases, (d) terminating the joint administration of these Chapter 11 Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases.  Except as expressly set forth herein, the terms and provisions of this Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to DIP Lender and the Prepetition Lender (subject to paragraph 15 of this Final Order) pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in any of these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until, in respect of the Prepetition Obligations, all of the Prepetition Adequate Protection Obligations owed to the Prepetition Lender provided for in this Final Order and under the Prepetition Loan Documents have been indefeasibly paid in full in cash.

36

28.    <u>No Third Party Rights</u>.  Except as specifically provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

29.    <u>No Avoidance</u>.  No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility shall be avoidable or recoverable from DIP Lender under any section of the Bankruptcy Code, or any other federal, state, or other applicable law; *provided*, that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 15 hereof, with respect to the Prepetition Obligations.

30.    <u>Reliance on Order</u>.  All postpetition advances under the DIP Documents made during the period covered by this Final Order are made in reliance on this Final Order.

31.    <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the Prepetition Lender, pursuant to the provisions of this Final Order or any subsequent order of the Court shall, subject to the terms of this paragraph 31, be irrevocable, received free and clear of any claims, charge, assessment, or other liability; *provided*, that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 15 hereof, with respect to the Prepetition Obligations.

32.    <u>Limited Effect</u>.  In the event of a conflict between the terms and provisions of any of the DIP Documents or the Interim Order and this Final Order, the terms and provisions of this Final Order shall govern.

33.    <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

34.    <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

37

35.    <u>General Authorization</u>.  The Debtors, the DIP Lender, and the Prepetition Lender are authorized to take any and all actions necessary to effectuate the relief granted in this Final Order.

36.    <u>Retention of Exclusive Jurisdiction</u>.  The Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Order, the DIP Credit Agreement, and the other DIP Documents.

37.    <u>Buckeye Reservation of Rights</u>.  Debtor MobiTV, Inc. ("<u>MobiTV</u>") entered into a Managed Services Agreement with Buckeye Cablevision, Inc. ("<u>Buckeye</u>") on January 17, 2020 ("<u>Services Agreement</u>") for MobiTV to provide to Buckeye multiscreen video content services and related services in connection with Buckeye's PayTV Service (as defined in the Services Agreement). The Services Agreement was later amended by Amendment No. 1 to Managed Services Agreement dated August 10, 2020 ("<u>Amendment</u>").  In accordance with, and pursuant to, the Amendment, MobiTV and Buckeye entered into a Three-Party Escrow Services Agreement with Iron Mountain Intellectual Property Management, Inc. with an effective date of September 30, 2020 ("<u>Escrow Agreement</u>"). Under the Amendment and the Escrow Agreement, MobiTV granted a non-exclusive license to Buckeye for the use of certain intellectual property in the form of source code which is used by MobiTV to provide the services to Buckeye. Notwithstanding any provision of this Final Order to the contrary, nothing in the Interim Order or this Final Order grants the DIP Lender or anyone else any interest in, or the right to interfere with, the non-exclusive license granted by MobiTV to Buckeye, nor does any provision of the Interim Order or this Final Order grant the DIP Lender or anyone else any right to prohibit or interfere with Buckeye's rights to, or use of, the Debtors' intellectual property in accordance with the terms of the Amendment and Escrow Agreement.

DOCS_SF:105405.5 57391/003

## Exhibit A

**DIP Credit Agreement**


[Filed Previously with Interim Order]

**Exhibit B**

**Budget**

# MobiTV
## DIP Cash Flow Forecast
04/16/21
*(in thousands of US$)*

Filed BK on 3/1 — Est. Sale Closing Date

| Actual / Forecast Week Beginning: | Actual 3/1/2021 | Actual 3/8/2021 | Actual 3/15/2021 | Actual 3/22/2021 | Actual 3/29/2021 | Actual 4/5/2021 | Forecast 4/12/2021 | Forecast 4/19/2021 | Forecast 4/26/2021 | Forecast 5/3/2021 | Forecast 5/10/2021 | Forecast 5/17/2021 | Forecast 5/24/2021 | Total DIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Cash Flow** | | | | | | | | | | | | | | |
| Operating Cash Receipts | 136 | - | 615 | 741 | 26 | 86 | 164 | 337 | 207 | 54 | 267 | 541 | 250 | 3,463 |
| Employee Costs | (665) | (0) | (94) | (151) | (767) | (1) | (794) | (15) | (859) | (24) | (671) | (15) | (802) | (4,617) |
| Telecom, Platform, & Circuit | (80) | (60) | - | - | - | (3) | (517) | - | (7) | (418) | - | - | (8) | (1,278) |
| Contractors | (15) | (19) | (34) | - | (84) | (25) | (68) | (120) | (120) | (45) | - | (120) | (120) | (491) |
| Data Center | (107) | (107) | - | (107) | (78) | - | (201) | (110) | (110) | - | (110) | (110) | (110) | (770) |
| Rent | (90) | - | - | - | - | - | - | (150) | (150) | - | - | - | - | (318) |
| Other | (15) | (19) | (2) | (3) | (41) | (6) | (280) | (4) | (104) | (45) | (4) | (4) | (104) | (630) |
| **Subtotal - Operations** | **120** | **(940)** | **484** | **478** | **(945)** | **52** | **(1,697)** | **318** | **(1,143)** | **(479)** | **(518)** | **522** | **(893)** | **(4,642)** |
| **Restructuring Disbursements** | | | | | | | | | | | | | | |
| Professional Fees | (359) | (560) | (292) | (856) | (355) | (351) | (48) | (383) | (649) | (388) | (391) | (341) | (156) | (5,130) |
| D&O Insurance | - | - | - | - | - | - | (500) | - | - | - | - | - | - | (500) |
| KERP / KEIP Payments | - | - | - | - | - | - | - | - | - | (1,445) | - | - | (1,445) | (1,445) |
| Accrued PTO | - | - | - | - | - | - | - | - | - | (1,535) | - | - | (1,535) | (1,535) |
| Critical Vendor Payments | - | - | (3) | (28) | - | - | - | - | - | - | - | - | - | (50) |
| DIP Fees / Interest Payment | - | - | - | - | - | - | (970) | - | - | - | - | - | 950 | - |
| **Total Restructuring Disbursements** | **(359)** | **(560)** | **(295)** | **(884)** | **(355)** | **(351)** | **(1,518)** | **(383)** | **(649)** | **(388)** | **(391)** | **(341)** | **(2,185)** | **(8,659)** |
| **Net Cash Flow Prior to DIP Funding** | **(239)** | **(1,500)** | **189** | **(406)** | **(1,300)** | **(299)** | **(3,215)** | **(65)** | **(1,792)** | **(868)** | **(909)** | **181** | **(3,078)** | **(13,301)** |
| **DIP Funding** | | | | | | | | | | | | | | |
| Starting DIP Balance | - | 3,768 | 3,768 | 5,367 | 5,367 | 7,500 | 7,500 | 7,500 | 7,500 | 15,500 | 15,500 | 15,500 | 15,500 | - |
| Cash Balance Prior to DIP | (239) | 2,070 | 2,259 | 2,152 | 3,451 | 3,985 | 500 | 705 | (1,087) | 6,046 | 5,137 | 5,318 | 2,240 | - |
| Minimum Cash | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | - | - | - | - | - |
| DIP Funding | 3,768 | - | 1,599 | 2,133 | - | - | - | - | 8,000 | - | - | - | - | 15,500 |
| **Ending DIP Balance** | **3,768** | **3,768** | **5,367** | **5,367** | **7,500** | **7,500** | **7,500** | **7,500** | **15,500** | **15,500** | **15,500** | **15,500** | **15,500** | **15,500** |
| **Cash Balance** | | | | | | | | | | | | | | |
| Beginning Cash | 41 | 3,570 | 2,070 | 3,858 | 4,285 | 3,985 | 771 | 705 | 6,208 | 6,913 | 6,046 | 5,137 | 5,318 | 41 |
| Cash Flow incl. DIP Activity | 3,529 | (1,500) | 1,788 | (406) | (299) | - | (65) | - | (909) | 181 | - | 2,199 | 2,199 | 2,199 |
| **Ending Cash Balance** | **3,570** | **2,070** | **3,858** | **4,285** | **3,985** | **771** | **705** | **6,913** | **6,046** | **5,137** | **5,318** | **2,240** | **2,240** | **2,240** |

| Illustrative Allocation of Ending Cash Balance* | | | | | | | | | | | | | | Total DIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GUC Recovery | - | - | - | - | - | - | - | - | - | - | - | - | (1,750) | (1,750) |
| Funding of Liquidating Trust | - | - | - | - | - | - | - | - | - | - | - | - | (310) | (310) |
| Funding of Wind Down | - | - | - | - | - | - | - | - | - | - | - | - | (100) | (100) |
| UST Sales Process Fee | - | - | - | - | - | - | - | - | - | - | - | - | (80) | (80) |
| **Total Illustrative Allocations of Ending Cash Balance** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(2,240)** | **(2,240)** |

\* These line items are for illustrative purposes only. The ending cash balance of the estates shall remain subject to allowed secured and priority claims under the Bankruptcy Code without prejudice to the rights of any parties in interest.

# MobiTV

DIP - Professional Fees Forecast
04/16/21
*(in thousands of USD)*

| Actual / Forecast Week Beginning | Actual 3/1/2021 | Actual 3/8/2021 | Actual 3/15/2021 | Actual 3/22/2021 | Actual 3/29/2021 | Actual 4/5/2021 | Forecast 4/12/2021 | Forecast 4/19/2021 | Forecast 4/26/2021 | Forecast 5/3/2021 | Forecast 5/10/2021 | Forecast 5/17/2021 | Forecast 5/24/2021 | Bankruptcy Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Professional Fees** | | | | | | | | | | | | | | |
| Pachulski, Stang, Ziehl & Jones | $ (150) | $ (150) | $ (150) | $ (150) | $ (150) | $ (150) | $ (150) | $ (150) | $ (150) | $ (150) | $ (150) | $ (150) | $ (35) | $ (1,835) |
| FTI | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (85) | | (1,185) |
| Fenwick & West | (27) | (27) | (27) | (27) | (27) | (27) | (27) | (27) | (27) | (27) | (27) | | | (300) |
| Alston & Bird | | | | (200) | | | (200) | | | | | | | |
| MERU | | | | (100) | | | (100) | | | | | | | |
| T-Mobile Local Counsel | (40) | | | | | | (40) | | | | | | | |
| McGuire Woods | | (150) | | (150) | | | | | (150) | | | | | (450) |
| Carl Marks | | (100) | | (100) | | | | | (100) | | | | | (300) |
| Richards, Layton & Finger | (20) | | | | | | | | | | | | | (20) |
| PwC | | | | | (15) | (15) | (46) | (46) | (46) | (46) | (46) | (46) | (46) | (350) |
| Fox Rothschild | | | | | (40) | (40) | (46) | (46) | (46) | (46) | (46) | (46) | (46) | (400) |
| Stretto | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (9) | (9) | (11) | (11) | (138) |
| US Trustee | (12) | (22) | (4) | (18) | (12) | (8) | (9) | (4) | (20) | (9) | (12) | (4) | (19) | (152) |
| **Total Professional Fees** | $ (359) | $ (560) | $ (292) | $ (856) | $ (355) | $ (351) | $ (648) | $ (383) | $ (649) | $ (388) | $ (391) | $ (441) | $ (156) | $ (5,130) |