# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MOBITV, INC., *et al.*,<br><br>                                    Debtors.[1] | Chapter 11<br><br>Case No. 21-10457 (LSS)<br><br>Jointly Administered<br><br>**Related Docket Nos. 374, 401, 438, 482, 486, and 491** |

## ORDER (I) GRANTING FINAL
## APPROVAL OF DISCLOSURE STATEMENT
## AND (II) CONFIRMING CHAPTER 11 PLAN OF LIQUIDATION

This matter having come before the United States Bankruptcy Court for the District of Delaware (the "Court") upon the request of the above-captioned debtors and debtors-in-possession (together, the "Debtors") and the Official Committee of Unsecured Creditors of the Debtors (the "Committee" and together with the Debtors, the "Plan Proponents") for: (a) final approval of the disclosures contained in the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* dated July 20, 2021 [Docket No. 401] (as modified, amended, or supplemented, the "Plan");[2] and (b) confirmation of the Plan; and the Court having held a hearing on September 22, 2021 (the "Confirmation Hearing") to consider confirmation of the Plan; and the Court having found that due, adequate, and sufficient notice of the Plan, Confirmation Hearing, and all deadlines for voting on or filing objections to the Plan was provided in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: MobiTV, Inc. (2422) and MobiTV Service Corporation (8357). The Debtors' mailing address is 350 S. Grand Avenue, Suite 3000, Los Angeles, CA 90071.

[2]    A true and correct copy of the Plan, as modified, is attached hereto as **Exhibit A**.

Delaware (the "<u>Local Rules</u>"), and the Court's order governing the solicitation of the Plan [Docket No. 438] (the "<u>Solicitation Procedures Order</u>"); and that no other or further notice is or shall be required; and the Court having reviewed (a) the declaration of Aileen Daversa [Docket No. 482] (the "<u>Voting Declaration</u>"); (b) the declaration of Chris Tennenbaum [Docket No. 486] (the "<u>Tennenbaum Declaration</u>" and together with the Voting Declaration, the "<u>Declarations</u>"); and (c) any pleadings submitted in support of confirmation of the Plan, including the *Memorandum of Law in Support of Confirmation of First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 491] (the "<u>Confirmation Brief</u>"); and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND THAT:**

**<u>Introduction</u>**

A.    <u>Findings and Conclusions</u>.  The determinations, findings, judgments, decrees, and orders set forth and incorporated in this order (this "<u>Order</u>") constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Court may enter a final

order consistent with Article III of the United States Constitution. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and should be confirmed.

C.    Eligibility for Relief.    The Debtors are proper debtors under section 109 of the Bankruptcy Code and the Debtors and the Committee (defined below) are proper joint proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D.    Official Committee of Unsecured Creditors.    On March 15, 2021, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee.

E.    Solicitation and Notice.    As evidenced by the affidavits of service, mailing, and/or publication filed in these Chapter 11 Cases prior to the Confirmation Hearing (collectively, the "Notice Affidavits"),[3] the Plan, Solicitation Procedures Order, notice of the Confirmation Hearing, and an appropriate ballot (collectively, the "Ballots") for voting on the Plan with a return envelope or a notice of non-voting status (in substantially the forms approved pursuant to the Solicitation Procedures Order) (collectively, the "Solicitation Materials") were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order. The solicitation of votes on the Plan complied with the solicitation procedures in the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. As evidenced by the Notice Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to (a) final approval of the disclosures set forth in the Plan and (b) confirmation

---

[3]    The Notice Affidavits are located at Docket Nos. 446, 454, 458, 471, 474, 478, and 479.

of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

F.    <u>Disclosures</u>.  The disclosures set forth in the Plan (the "<u>Disclosures</u>") provide holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125 of the Bankruptcy Code.

G.    <u>Voting</u>.  All procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.  As evidenced by the Voting Declaration, Class 3 voted to accept the Plan.

H.    <u>Burden of Proof</u>.  The Debtors have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

I.    <u>Bankruptcy Rule 3016</u>.  The Plan is dated and identifies its proponents in accordance with Bankruptcy Rule 3016(a).

**Compliance with Section 1129 of the Bankruptcy Code**

J.    <u>Compliance with the Bankruptcy Code | 11 U.S.C. § 1129(a)(1)</u>.  The evidentiary record at the Confirmation Hearing, the Declarations, the contents of the Plan, the Notice Affidavits, and the Confirmation Brief support the findings of fact and conclusions of law set forth herein.

K.    <u>Proper Classification | 11 U.S.C. §§ 1122 and 1123(a)(1)</u>.  Article IV of the Plan designates Classes of Claims, other than Administrative Claims and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims contains only Claims that are substantially similar to the other Claims within that Class.  Valid reasons exist for separately

classifying the various Classes of Claims created under the Plan.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

L.    <u>Unimpaired and Impaired Classes | 11 U.S.C. §§ 1123(a)(2)-(3)</u>.  Article IV of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired.  Article IV of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 3, 4, and 5.  The Plan, therefore, satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

M.    <u>No Discrimination | 11 U.S.C. § 1123(a)(4)</u>.  Article IV of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

N.    <u>Implementation of the Plan | 11 U.S.C. § 1123(a)(5)</u>.  The Plan and Liquidation Trust Agreement, attached as <u>Exhibit C</u> to the Plan, provide adequate and proper means for the Plan's implementation, including, among other provisions, Article VII of the Plan (Means for Implementation of the Plan).  The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

O.    <u>Non-Voting Equity Securities | 11 U.S.C. § 1123(a)(6)</u>.  The Plan does not provide for the issuance of nonvoting equity securities.

P.    <u>Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  Article VI of the Plan describes the manner of selection and powers of the Liquidation Trustee and the Post-Confirmation Committee.  E. Lynn Schoenmann, the current independent and sole director of the Debtors, will be appointed as the Liquidation Trustee for the Liquidation Trust and the Plan and Liquidation Trust Agreement disclose her identity, affiliations, and compensation.  Ms. Schoenmann's engagement as Liquidation Trustee is consistent with the interests of Holders of Claims and with

public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

Q.    <u>Rejection of Executory Contracts | 11 U.S.C. § 1123(b)(2)</u>.  Consistent with section 1123(b)(2) of the Bankruptcy Code, Article VIII of the Plan provides for the rejection of all of the executory contracts and unexpired leases of the Debtors that have not already been assumed or rejected in these Chapter 11 Cases.

R.    <u>Plan Proponents' Compliance with the Bankruptcy Code | 11 U.S.C. § 1129(a)(2)</u>. The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code. Specifically:  (a) the Debtors are proper debtors under section 109 of the Bankruptcy Code; (b) the Plan Proponents have complied with all applicable provisions of the Bankruptcy Code, including section 1125, except as otherwise provided or permitted by order of the Court; and (c) the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Solicitation Materials and in tabulating the votes with respect to the Plan.

S.    <u>Plan Proposed in Good Faith | 11 U.S.C. § 1129(a)(3)</u>.  The Plan has been proposed by the Plan Proponents in good faith and in the belief that the proposed liquidation and establishment of the Liquidation Trust will maximize value for the Debtors' creditors.  The Plan accomplishes the goals promoted by section 1129(a)(3) of the Bankruptcy Code by enabling the Liquidation Trustee to make distributions to creditors on a fair and equitable basis, in accordance with the priorities established by the Bankruptcy Code.  The Plan has been proposed with the legitimate and honest purpose and is in the best interests of the Debtors' creditors.  In so finding, the Court has considered the totality of the circumstances in these Chapter 11 Cases.  The strong support for the Plan by holders of Claims in Class 3 further demonstrates that the Plan was

proposed in good faith.  Finally, as described in greater detail below, the Plan's indemnification, exculpation, non-third party releases, and injunction provisions are warranted, necessary, and appropriate, and are supported by sufficient consideration under the circumstances of these Chapter 11 Cases as a whole and are consistent with sections 105, 1123(b)(6), and 1129 of the Bankruptcy Code and applicable law in this Circuit.  Additionally, the Plan's third party releases are hereby found to be consensual, as they are limited to third parties that voted to accept the Plan and did not opt-out of such releases.

T.    <u>Payment for Services or Costs and Expenses | 11 U.S.C. § 1129(a)(4)</u>.  No payment for services or for costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be made by the Plan Proponents other than payments that have been authorized by the Plan or an order of the Court, including, without limitation, this Confirmation Order.  The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

U.    <u>Disclosure of Liquidation Trustee | 11 U.S.C. § 1129(a)(5)</u>.  The Plan Proponents have complied with section 1129(a)(5) by providing such disclosures in the Plan and Liquidation Trust Agreement.

V.    <u>No Rate Changes | 11 U.S.C. § 1129(a)(6)</u>.  The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

W.    <u>Best Interests of Creditors | 11 U.S.C. § 1129(a)(7)</u>.  Each holder of an Impaired Claim or Impaired Interest has either accepted the Plan or will receive or retain on account of such Claim or Interest, property of a value on the Effective Date of the Plan that is not less than the

amount that such holder receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

X.     Acceptance by Certain Classes | 11 U.S.C. § 1129(a)(8). Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. Classes 1 and 2 are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 3 is the Impaired Class entitled to vote on the Plan. Class 3 has voted to accept the Plan. Class 4 and Class 5 are conclusively presumed to reject the Plan because no distribution is anticipated to the holders of such Claims or Interests, in accordance with section 1126(g) of the Bankruptcy Code. The Plan, therefore, does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code because at least one Impaired Class has not voted to accept the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

Y.     Treatment of Claims Entitled to Priority | 11 U.S.C. § 1129(a)(9). The treatment of Administrative Claims and Priority Tax Claims as set forth in Article IV of the Plan is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code. The Plan, therefore, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

Z.     Acceptance by at Least One Impaired Class of Claims | 11 U.S.C. § 1129(a)(10). As set forth in the Voting Declaration, Class 3 is an impaired class of Claims under the Plan and voted to accept the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

AA.     <u>Confirmation Not Likely to be Followed by Liquidation | 11 U.S.C. § 1129(a)(11).</u>
The Plan provides for the liquidation of the Debtors' assets and, accordingly, no further
reorganization or liquidation of the Debtors is contemplated or likely.    Based on the evidence
proffered or adduced at or prior to the Confirmation Hearing and in the Confirmation Brief and
the Plan, the Debtors have sufficient funds available as of the Effective Date to pay all claims and
expenses that are required to be paid on the Effective Date under the Plan (including
Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims), and to fund the
Liquidation Trust to pay these claims as appropriate pursuant to the Liquidation Trust Agreement.
Accordingly, the Plan is feasible and satisfies the requirements of section 1129(a)(11) of the
Bankruptcy Code.

BB.     <u>Payment of Bankruptcy Fees | 11 U.S.C. § 1129(a)(12)</u>.  The Plan provides for the
payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a) and, therefore, satisfies the
requirements of section 1129(a)(12) of the Bankruptcy Code.

CC.     <u>Non-applicability of Certain Sections of the Bankruptcy Code</u>.  The Debtors do not
owe any retiree benefits, domestic support obligations, are not individuals, and are not non-profit
corporations.  Accordingly, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of
the Bankruptcy Code do not apply to these Chapter 11 Cases.

DD.     <u>Cram Down Requirements | 11 U.S.C. § 1129(b)</u>. The Plan satisfies the
requirements of section 1129(b) of the Bankruptcy Code.  Notwithstanding the fact that Class 4
and Class 5 are deemed to reject the Plan (the "<u>Rejecting Classes</u>"), the Plan may be confirmed
pursuant to section 1129(b)(1) of the Bankruptcy Code given that Class 3 voted to accept the Plan.
*First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section
1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to the Rejecting

Classes.  The Plan has been proposed in good faith, is reasonable, and meets the requirements that no Holder of any Claim that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim and no Holder of a Claim in a Class equal to such Classes is receiving more favorable treatment than the Rejecting Classes.  Accordingly, the Plan is fair and equitable towards all Holders of Claims in the Rejecting Classes. *Third*, the Plan does not discriminate unfairly with respect to the Rejecting Classes because similarly situated creditors will receive substantially similar treatment on account of their Claims irrespective of Class.   The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan because the Plan does not discriminate unfairly, and is fair and equitable with respect to the Rejecting Classes.

EE.    Only One Plan | 11 U.S.C. § 1129(c).  The Plan Proponents seek confirmation of the Plan.  No party other than the Plan Proponents have proposed a plan.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

FF.    Principal Purpose of the Plan | 11 U.S.C. § 1129(d).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

GG.    Good Faith Solicitation | 11 U.S.C. § 1125(e).  Based on the record in the Chapter 11 Cases, the Plan Proponents and each of their respective officers, directors, managers, employees, members, agents, advisors, accountants, attorneys, and representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, but not limited to, any action or inaction

in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in the Plan.

HH.    Implementation.  The various means for implementation of the Plan set forth in the Plan (collectively, the "Implementation Activities") have been designed and proposed in good faith.  The Implementation Activities are adequate and will promote the maximization of the value of the ultimate recoveries under the Plan in a fair and equitable manner in accordance with the priorities established by the Bankruptcy Code.  The Implementation Activities are not intended to hinder, delay, or defraud any entity to which the Debtors are indebted on the Effective Date.

II.    Satisfaction of Confirmation Requirements.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1.    Confirmation.  The Plan, as attached hereto as **Exhibit A**, is **APPROVED** in its entirety and **CONFIRMED** in its entirety under section 1129 of the Bankruptcy Code.  The terms of the Plan and all documents, exhibits, and agreements thereto are incorporated by reference into and are an integral part of the Plan, and such terms and their implementation are hereby approved and authorized.  The Plan Proponents and/or the Liquidation Trust (as applicable) are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan.

2.    Final Approval of Disclosures. The Disclosures are hereby **APPROVED** on a final basis, pursuant to section 1125 of the Bankruptcy Code.

3.    Objections.  The Debtors received informal comments from the U.S. Trustee.  To the extent that these informal comments have not been withdrawn or resolved prior to the entry of this Confirmation Order, all informal comments or objections are overruled in all respects for the

reasons set forth in the record of the Confirmation Hearing, which record is incorporated herein, and all withdrawn informal comments, if any, are deemed withdrawn with prejudice.

4.    <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

5.    <u>Implementation</u>.  The Plan Proponents, the Liquidation Trust, and the Liquidation Trustee are authorized to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, leases, agreements, or other documents created or executed in connection with the Plan.  Without further order or authorization of this Court, the Debtors, the Liquidation Trust, the Liquidation Trustee, and their successors are authorized and empowered to make all modifications to all Plan Documents that are consistent with the Plan.  Execution versions of the Plan and all related documents, where applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

6.    <u>Classifications</u>.  The classification of Claims for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan and this Confirmation Order.

7.    <u>Effective Date</u>.  The Effective Date of the Plan shall occur on the date determined by the Plan Proponents when the requisite conditions set forth the Plan have been satisfied or, if applicable, waived in accordance with the Plan.

8.    <u>Modifications or Alterations to Plan</u>.  To the extent the Plan has been modified, supplemented, or altered subsequent to solicitation, such modifications, supplements, and alterations constitute clarifications or technical changes, and do not materially adversely affect or

change the treatment of any Claims or Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, such modifications or alterations, if any, do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

9.     <u>Resolution of Claims</u>.  As discussed in detail in the Plan, and as otherwise provided herein, in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.

10.     <u>Post-Confirmation Governance</u>.  On and after the Effective Date, the Liquidation Trustee and the Post-Confirmation Committee shall begin acting for the Liquidation Trust in the same fiduciary capacity as applicable to a board of directors, subject to the provisions hereof and the Liquidation Trust Agreement.  The Liquidation Trustee and the Post-Confirmation Committee shall serve in such capacity through the earlier of the date the Liquidation Trust is dissolved in accordance with the Plan or the Liquidation Trust Agreement and the date such Liquidation Trustee or Post-Confirmation Committee member resigns, is terminated, or otherwise unable to serve; <u>provided</u>, <u>however</u>, that, any successor Liquidation Trustee or member of the Post-Confirmation Committee appointed pursuant to the Plan and the Liquidation Trust Agreement, shall serve in such capacities after the effective date of such person's appointment as the Liquidation Trustee or member of the Post-Confirmation Committee.

11.     <u>Causes of Action</u>.  Unless any Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan or any final order entered by this Court (including, without limitation, this Confirmation Order, a "<u>Final Order</u>"), the Debtors and the Liquidation

Trust expressly reserve all such Causes of Action for later adjudication, including any Causes of Action not specifically identified in the Plan, or of which the Plan Proponents may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Plan Proponents at this time or facts or circumstances that may change or be different from those the Plan Proponents now believe to exist.  Following the Effective Date, the Liquidation Trust may assert, compromise, or dispose of the Causes of Action without further notice to Holders of Claims of Interests or authorization of the Court, except as otherwise expressly provided herein or in the Liquidation Trust Agreement in relation to the Liquidation Trust.

12.    <u>Liquidation Trust and Liquidation Trustee</u>.  On the Effective Date, the Liquidation Trust shall be established and shall be authorized to implement and adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan or Liquidation Trust Agreement as necessary or desirable to consummate the Plan or to carry out the Liquidation Trust functions.  On and after the Effective Date, the Liquidation Trustee shall carry out the Liquidation Trust functions on behalf of the Liquidation Trust, in consultation with the Post-Confirmation Committee as expressly required by the Liquidation Trust Agreement.  The Liquidation Trustee, in her discretion, may execute and file documents and take all other actions as she deems appropriate relating to the dissolution of the Debtors under applicable state laws.

13.    <u>Sources of Consideration for Plan Distributions</u>.  The Debtors shall fund distributions under the Plan with Cash or such other assets as may be held or asserted to be held by the Debtors or the Liquidation Trust, as the case may be, and the proceeds thereof, including, without limitation, each Debtors' Cash on hand and proceeds from the sale or other disposition of the remaining property of the Debtors.

14. <u>Effectuating Documents; Further Transactions</u>.  On and after the Effective Date, the Liquidation Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Liquidation Trust, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan and the Liquidation Trust Agreement

15. <u>Section 1146 Exemption</u>.  Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax.

16. <u>Rejection of Executory Contracts and Unexpired Leases</u>.  On the Effective Date, except for any executory contracts or unexpired leases of the Debtors (i) that previously were assumed or rejected by an order of the Court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to the date hereof; or (iii) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  The Confirmation Order shall constitute an order of the Court approving such rejection, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.  For the avoidance of doubt, any insurance policy acquired for the benefit of the Debtors (or any representatives thereof or successors thereto) before or after the Petition Date shall remain in full force and effect after the Effective Date according to its terms.

17.    <u>Claims Based on Rejection of Executory Contracts or Unexpired Leases</u>.  Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be filed with the Court and served on the Liquidation Trustee within thirty (30) calendar days after the earlier of (a) the Effective Date or (b) service of a notice that the executory contract or unexpired lease has been rejected.

18.    <u>Reservation of Rights</u>.  Nothing contained in the Plan shall constitute an admission by the Debtors that any executory contract or unexpired lease is in fact an executory contract or unexpired lease or that the Liquidation Trust has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidation Trust, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

19.    <u>Distributions Under the Plan</u>.  On and after the Effective Date, the Distributions on account of Allowed Claims and the resolution and treatment of Disputed Claims pursuant to Article IX of the Plan are authorized to occur and, without limitation on the other provisions of the Plan and this Confirmation Order concerning the powers, duties, and authority of the Liquidation Trustee, the Liquidation Trustee shall be authorized to effectuate such Distributions, resolution, and treatment in consultation with the Post-Confirmation Committee as expressly required by the Liquidation Trust Agreement.

20.    <u>Procedures for Resolving Contingent, Unliquidated, and Disputed Claims</u>.  The procedures and authority to file objections, settle, compromise, withdraw, or litigate to judgment Claims, adjudicate or resolve Tax issues or liabilities, and estimate, adjudicate, and resolve any

contingent or unliquidated Disputed Claim, contained in Article IX of the Plan shall be, and hereby are, approved in their entirety.

21.    <u>Releases by the Debtors</u>.  The releases contained in Section 10.01 of the Plan are approved in all respects and incorporated herein by reference.

22.    <u>Releases by Holders of Claims</u>.  The third party releases contained in Section 10.02 of the Plan are approved in all respects and incorporated herein by reference.

23.    <u>Exculpation</u>.  The exculpation provisions contained in Section 10.03 of the Plan are approved in all respects and incorporated herein by reference.

24.    <u>Injunction</u>.  The injunctions contained in Section 10.04 of the Plan are approved in all respects and incorporated herein by reference.

25.    <u>Final Administrative Claims Bar Date</u>.  Unless previously filed or as otherwise governed by a bar date order or in another order of the Court, requests for payment of Administrative Claims arising on or after June 1, 2021, must be filed with the Court and served on the Liquidation Trustee by the Final Administrative Claims Bar Date, which shall be thirty (30) calendar days after the Effective Date.  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the Final Administrative Claims Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Estates, the Liquidation Trust, or their respective property.

26.    <u>Cancellation of Notes, Instruments, Certificates, and Other Documents</u>.  On the Effective Date, except as otherwise provided herein or in the Plan, all notes, instruments, certificates, and other instruments or documents, directly or indirectly, evidencing any Claim or Interest shall be deemed cancelled and the obligations of the Debtors or the Liquidation Trust shall

be limited to those distributions proposed under the Plan, if any, with respect to such Claim or Interest.

27.    <u>Preservation and Assignment of Subordination Rights</u>.  Notwithstanding anything to the contrary contained herein or in the Plan, in accordance with Section 9.03 of the Plan, on the Effective Date, the rights, remedies, and benefits of the Prepetition Lender under each of the Subordination Agreements is hereby be deemed assigned to the Liquidation Trust without any further action by or on behalf of the Prepetition Lender, and nothing in the Plan or this Confirmation Order shall reduce, waive, diminish, or otherwise affect the rights of the Holder of the Stipulated Deficiency Claim or any assignee thereof (including the Liquidation Trust), under the Subordination Agreements.  Except as may be provided for in the Plan, all subordination rights and claims relating to the subordination by the Debtors or the Liquidation Trustee of any Allowed Claims shall remain valid, enforceable, and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

28.    <u>Professional Fee Claims</u>.  Any Professional or other Entity asserting a Professional Fee Claim must file with the Court and serve on respective counsel for the Debtors and the Liquidation Trust and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, an application for final allowance of such Claim no later than thirty (30) calendar days after the Effective Date.  All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Court.

29.    <u>Notices of Confirmation and Effective Date</u>.  The Plan Proponents shall serve a combined notice of entry of this Confirmation Order and notice of the Effective Date, in the form attached hereto as <u>Exhibit B</u> (the "<u>Confirmation Notice</u>"), in accordance with Bankruptcy Rules

2002 and 3020(c) on all creditors, equity holders and parties having requested notice in these Chapter 11 Cases within seven (7) calendar days after the Effective Date.  Notwithstanding the above, no notice of confirmation or Effective Date or service of any kind shall be required to be mailed or made upon any party to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  The Confirmation Notice is adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

30.    <u>Appointment of Liquidation Trustee</u>.  E. Lynn Schoenmann is hereby appointed to serve as the Liquidation Trustee on the terms set forth in this Confirmation Order, the Plan, and the Liquidation Trust Agreement.

31.    <u>Authorization, Duties, and Powers of Liquidation Trustee</u>.  The Liquidation Trustee is hereby authorized to take any and all actions necessary or appropriate in furtherance of, and to implement, effectuate, and consummate the Plan, this Confirmation Order, and the Liquidation Trust, including, without limitation, all of the procedures and undertakings specified in Article VI of the Plan and, further without limitation of the foregoing, all of the specified rights, duties, powers, options, and elections of the Liquidation Trustee set forth in the Liquidation Trust Agreement.

32.    <u>Appointment of Initial Members of the Post-Confirmation Committee</u>.  ATEME, Inc. and Loma Alta Holdings, Inc. are hereby appointed to serve as the initial members of the Post-Confirmation Committee on the terms set forth in this Confirmation Order, the Plan, and the Liquidation Trust Agreement.

33.    <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain jurisdiction over these Chapter 11 Cases and any of the proceedings related to these Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.

34.    <u>Statutory Committees and Cessation of Fee and Expense Payment</u>.  On the Effective Date, the Committee shall be dissolved.  As of the Effective Date, the Liquidation Trust shall no longer be responsible for paying any fees or expenses incurred after the Effective Date by the members of or advisors to the Committee.

35.    <u>Successors and Assigns</u>.  The rights, duties, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

36.    <u>Binding Effect of the Plan</u>.  Pursuant to Sections 14.05 and 14.09 of the Plan, and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, the Liquidation Trust, the Liquidation Trustee, any Entity acquiring property under the Plan, any Liquidation Trust Beneficiary, and any Holder of a Claim or Interest, whether or not such Holder has filed a Proof of Claim or Interest in these Chapter 11 Cases, whether or not the Claim of such Holder is impaired under the Plan, and whether or not such Holder has accepted or rejected the Plan.  This Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in section 1146(a) of the Bankruptcy Code.  All settlements,

compromises, releases, waivers, exonerations, and injunctions set forth in the Plan shall be, and hereby are, effective and binding on all Persons who may have had standing to assert any settled, released, exculpated, or enjoined causes of action, and no other person or entity shall possess such standing to assert such causes of action after the Effective Date.

37.     <u>Binding Effect of Prior Orders and Agreements</u>.  Pursuant to section 1141 of the Bankruptcy Code, subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Case, all documents and agreements executed by the Debtors as authorized and directed thereunder, and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Liquidation Trust and the Liquidation Trustee.

38.     <u>Governmental Approvals Not Required</u>.  Except as otherwise specifically provided herein, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

39.     <u>Effectiveness of All Actions</u>.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, members, managers, or employees of the Debtors or the Liquidation Trust and with the effect that such actions had been taken by unanimous action of such officers, directors, members, managers, or employees.

40.    <u>Plan and Confirmation Order Mutually Dependent</u>.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) non-severable and mutually dependent.

41.    <u>No Stay</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidation Trust, and any and all Holders of Claims, all entities that are parties to or subject to the settlements, compromises, releases, and injunctions described in the Plan or in this Order, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

42.    <u>Recording</u>.  The Debtors and the Liquidation Trust are hereby authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached, to any state or local recording officer, and such officer must accept for filing such documents or instruments.  Such notice (a) shall have the effect of an order of this Court and (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers.  The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

43.    <u>Internal Revenue Service</u>.    Notwithstanding any provision in the Plan, no governmental unit shall be required to file a request for payment of an Administrative Claim as described in section 503(b)(1)(D) of the Bankruptcy Code, as a condition of its being an Allowed Administrative Claim.

44.    <u>Conflicts Between this Confirmation Order and the Plan</u>. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency

between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

45.     <u>Plan and Confirmation Order Govern</u>.  Without intending to modify any prior order of this Court (or any agreement, instrument, or document addressed by any prior order), in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document); <u>provided</u>, <u>further</u>, that, for the avoidance of doubt, in the event of any inconsistency between the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern.

46.     <u>Final Order</u>.   The stay of this Confirmation Order imposed by Bankruptcy Rule 3020(e) is hereby waived in accordance with Bankruptcy Rule 3020(e).  This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

# <u>EXHIBIT A</u>

**Confirmed Plan**

**[As Modified]**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MOBITV, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 21-10457 (LSS)<br><br>Jointly Administered |

## FIRST AMENDED COMBINED DISCLOSURE STATEMENT
## AND CHAPTER 11 PLAN OF LIQUIDATION [AS MODIFIED]

| | |
|---|---|
| Debra I. Grassgreen (admitted pro hac vice)<br>Jason H. Rosell (admitted pro hac vice)<br>Mary F. Caloway (DE Bar No. 3059)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware  19899-8705<br>Tel:  (302) 652-4100<br>Fax:  (302) 652-4400<br><br>*Counsel for the Debtors and<br>Debtors in Possession* | Michael A. Sweet (admitted pro hac vice)<br>Gordon E. Gouveia (admitted pro hac vice)<br>Seth A. Niederman (DE Bar No. 4588)<br>**FOX ROTHSCHILD LLP**<br>919 N. Market Street, Suite 300<br>Wilmington, Delaware 19899-2323<br>Tel:  (302) 654-7444<br>Fax: (302) 656-8920<br><br>*Counsel for the Official Committee<br>of Unsecured Creditors* |

Dated: September 23, 2021

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: MobiTV, Inc. (2422) and MobiTV Service Corporation (8357). The Debtors' mailing address is 350 S. Grand Avenue, Suite 3000, Los Angeles, CA 90071.

**Table of Contents**

**Page**

DISCLAIMER ...................................................................................................... 1

INTRODUCTION ............................................................................................... 2

ARTICLE I DEFINITION AND CONSTRUCTION OF TERMS.............................. 3

ARTICLE II BACKGROUND.............................................................................. 3

    2.01    General Background ............................................................................. 3

        (a)    The Debtors' History and Organizational Structure ..................... 3

        (b)    Prepetition Capital Structure ....................................................... 4

            (i)    Secured Debt ................................................................. 4

            (ii)    Unsecured and Subordinated Debt.................................. 5

        (c)    Events Giving Rise to These Chapter 11 Cases and the Debtors' Prepetition Marketing Process ................................................... 6

    2.02    These Chapter 11 Cases ...................................................................... 6

        (a)    The Debtors' Bankruptcy Filings and First Day Motions. ........... 6

        (b)    Appointment of the Committee .................................................. 7

        (c)    The Debtors' filing of the Schedules, Section 341(a) Meeting of Creditors, and Bar Date.............................................................. 7

        (d)    The Debtors' Debtor in Possession Financing, the March 29 Announcement, and the T-Mobile Settlement ............................ 7

        (e)    The Sale and the Prepetition Lender Settlement and Plan Support Agreement.................................................................................. 8

        (f)    The Appointment of the CRO.................................................... 9

ARTICLE III CONFIRMATION PROCEDURES ................................................. 9

    3.01    Confirmation Procedures ..................................................................... 9

    3.02    Procedure for Objections ................................................................... 10

    3.03    Requirements for Confirmation .......................................................... 10

i

3.04    Classification of Claims and Interests.................................................. 10

3.05    Impaired Claims or Interests ............................................................... 11

3.06    Confirmation Without Necessary Acceptances; Cramdown ............... 12

3.07    Feasibility .......................................................................................... 13

3.08    Best Interests Test and Liquidation Analysis..................................... 13

3.09    Acceptance of the Plan....................................................................... 14

ARTICLE IV  CLASSIFICATION OF CLAIMS AND INTERESTS AND EXPECTED
RECOVERIES ................................................................................................ 15

4.01    Overview of Classification.................................................................. 15

4.02    Identification and Treatment of Unclassified Claims ......................... 15

    (a)    Administrative Claims. ............................................................ 15

        (i)    Final Administrative Claims Bar Date......................... 15

        (ii)    Bar Date for Applications for Professional Fees. ........ 16

        (iii)    Section 503(b)(9) Claims. ........................................... 16

    (b)    U.S. Trustee Fees. .................................................................. 16

    (c)    Priority Tax Claims.................................................................. 16

    (d)    Ordinary Course Liabilities..................................................... 16

4.03    Identification of Classes of Claims ..................................................... 17

    (a)    Treatment of Secured Claims (Class 1). ................................. 17

    (b)    Treatment of Priority Unsecured Non-Tax Claims (Class 2). ................. 17

    (c)    Treatment of General Unsecured Claims (Class 3)............................... 17

    (d)    Treatment of Intercompany Claims (Class 4)......................... 18

    (e)    Treatment of Interests (Class 5). ............................................. 18

4.04    Treatment of Classified Classes, Rights to Vote, and Estimated
Distributions........................................................................................ 18

4.05    Controversy Concerning Classification, Impairment or Voting Rights.............. 20

4.06     Insurance Recourse ............................................................................. 20

ARTICLE V CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ....... 20

5.01     The Plan May Not Be Accepted............................................................. 21

5.02     The Plan May Not Be Confirmed. ......................................................... 21

5.03     Distributions to Holders of Allowed Claims under the Plan May Be
         Inconsistent with Projections. ............................................................... 21

5.04     Objections to Classification of Claims................................................... 21

5.05     Failure to Consummate the Plan. ........................................................... 22

5.06     Allowance of Claims May Substantially Dilute the Recovery to Holders of
         Claims under the Plan. ........................................................................... 22

5.07     Plan Releases May Not Be Approved...................................................... 23

5.08     Certain Tax Considerations.................................................................... 23

ARTICLE VI THE LIQUIDATION TRUST ............................................................... 23

6.01     Liquidation Trust ................................................................................... 23

6.02     Establishment and Purpose of the Liquidation Trust ............................. 23

6.03     Authority and Role of the Liquidation Trustee....................................... 23

6.04     Appointment of the Liquidation Trustee................................................. 24

6.05     Liquidation Trust Assets ........................................................................ 24

6.06     Treatment of Liquidation Trust for Federal Income Tax Purposes; No
         Successor-in- Interest............................................................................. 24

         (a)     Liquidation Trust as a "Grantor Trust."................................... 24

         (b)     Valuation of Liquidation Trust Assets....................................... 25

         (c)     Liquidation Trustee's Right and Power to Invest. .................... 25

6.07     Responsibilities of the Liquidation Trustee ........................................... 25

6.08     Establishment of the Post-Confirmation Committee .............................. 26

6.09     Expenses of the Liquidation Trust ......................................................... 26

iii

6.10    Compensation of the Liquidation Trustee .............................................. 26

6.11    Bonding of the Liquidation Trust .......................................................... 26

6.12    Fiduciary Duties of the Liquidation Trustee .......................................... 26

6.13    Transfer of Books and Records ............................................................. 27

6.14    Dissolution of the Liquidation Trust ..................................................... 27

6.15    Full and Final Satisfaction against Liquidation Trust ........................... 27

ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN ...................... 27

7.01    Interests in the Debtors ........................................................................ 27

7.02    Causes of Action .................................................................................. 27

7.03    Release of Liens ................................................................................... 27

7.04    Vesting and Sale or Other Disposition of Assets; Representative of the Estate .................................................................................................... 28

7.05    Effectuating Documents; Further Transactions .................................... 28

7.06    Deemed Substantive Consolidation ...................................................... 28

7.07    Records ................................................................................................. 29

7.08    Insurance Policies ................................................................................ 29

    (a)    Insurance Policies Remain In Force. ...................................... 29

    (b)    Insurance Policies; Employment Practice Liability Policies; Similar Policies. ..................................................................... 29

7.09    Dissolution of Committee .................................................................... 29

7.10    Transfer of Privilege/No Waiver .......................................................... 30

7.11    Termination of the Claims Agent .......................................................... 30

7.12    Closing of Bankruptcy Case of MobiTV Service Corporation ............. 30

7.13    Final Decree ......................................................................................... 30

7.14    Winddown of MobiTV India ................................................................ 30

ARTICLE VIII EXECUTORY CONTRACTS ........................................................ 31

8.01    Rejection of Executory Contracts ........................................................ 31

8.02    Bar Date for Rejection Damages .......................................................... 31

ARTICLE IX  PROVISIONS  GOVERNING  RESOLUTION  OF  CLAIMS  AND
DISTRIBUTIONS OF PROPERTY UNDER THE PLAN ............................................ 31

9.01    Claim Objections .................................................................................. 31

        (a)    Right to Object to Claims. ........................................................ 31

        (b)    Claims Objection Deadline. ...................................................... 32

        (c)    Claim Estimation. ..................................................................... 32

9.02    Distribution Provisions ........................................................................ 32

        (a)    Distributions to be Made........................................................... 32

        (b)    Establishment of Reserves........................................................ 32

        (c)    Distribution Record Date. ......................................................... 32

        (d)    No Liability................................................................................ 33

        (e)    Distributions on Account of Disputed Claims. ........................ 33

        (f)    No Distributions Pending Allowance. ...................................... 33

        (g)    Distributions in Cash................................................................ 33

        (h)    Timing of Distributions............................................................ 33

        (i)    Unclaimed Distributions. ......................................................... 33

        (j)    Delivery of Distributions and Undeliverable Distributions to Holders
               of Claims.................................................................................. 34

        (k)    Undeliverable Distributions. .................................................... 34

        (l)    De Minimis Distributions.......................................................... 34

        (m)    Remainder Amounts after final Distribution. ........................... 35

9.03    Preservation and Assignment of Subordination Rights ....................... 35

9.04    Prepetition  Lender  Deficiency  Claim  and  Waiver  of  Other  or  Further
        Claims ................................................................................................... 35

ARTICLE X RELEASES, INJUNCTION, AND RELATED PROVISIONS ........................... 35

    10.01  Releases by Debtors .......................................................................... 35

    10.02  Releases by Third Parties .................................................................. 36

    10.03  Exculpation and Limitation of Liability ............................................ 37

    10.04  Injunction ......................................................................................... 37

ARTICLE XI CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE .................... 38

    11.01  Conditions Precedent to Confirmation .............................................. 38

    11.02  Conditions Precedent to the Effective Date ...................................... 39

    11.03  Waiver of Conditions ........................................................................ 39

    11.04  Effect of Failure of Conditions ......................................................... 39

    11.05  Filing of Notice of the Effective Date ............................................... 39

ARTICLE XII MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN ............... 40

    12.01  Modification and Amendments .......................................................... 40

    12.02  Effect of Confirmation on Modifications .......................................... 40

    12.03  Revocation or Withdrawal of the Plan .............................................. 40

ARTICLE XIII JURISDICTION .................................................................................. 41

    13.01  Bankruptcy Court Jurisdiction .......................................................... 41

    13.02  Limitation on Jurisdiction ................................................................. 42

ARTICLE XIV MISCELLANEOUS ............................................................................. 42

    14.01  Exemption from Taxes ...................................................................... 42

    14.02  Compliance with Tax Requirements .................................................. 43

    14.03  Defenses and Setoff .......................................................................... 43

    14.04  Governing Law .................................................................................. 44

    14.05  Successors and Assigns ..................................................................... 44

    14.06  Transfer of Claims ............................................................................ 44

14.07   Post-Effective Date Service List .......................................................................... 44

14.08   Notices ................................................................................................................. 45

14.09   Immediate Binding Effect .................................................................................... 45

14.10   Severability of Plan Provisions ........................................................................... 45

14.11   Exhibits ................................................................................................................ 46

14.12   Votes Solicited in Good Faith .............................................................................. 46

14.13   Conflicts ............................................................................................................... 46

14.14   U.S. Trustee Fees ................................................................................................. 46

14.15   Implementation .................................................................................................... 46

14.16   No Admissions ..................................................................................................... 47

## **DISCLAIMER**

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS

THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

SEE ARTICLE V OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## **INTRODUCTION**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") together with the official committee of unsecured creditors (the "Committee," and together with the Debtors, the "Plan Proponents"), hereby jointly propose this Combined Disclosure Statement and Plan pursuant to sections 1125 and 1129 of the Bankruptcy Code.

This Combined Disclosure Statement and Plan contemplates the establishment of a liquidation trust by and through which the Liquidation Trustee will marshal the remaining Assets of the Estates, review Claims, and make Distributions from such Assets to Holders of Allowed Claims, as set forth herein and consistent with the priority provisions of the Bankruptcy Code.

Importantly, this Combined Disclosure Statement and Plan, among other things, implements the Prepetition Lender Settlement, which contemplates, *inter alia*, the enforcement of the Subordination Agreements with respect to the Subordinated Notes and reallocation of any Distributions on account of the Prepetition Lender Deficiency Claim to certain beneficiaries of the Liquidation Trust.  As more fully set forth below and in the Liquidation Analysis, the Prepetition Lender Settlement increases the estimated recoveries to Holders of Allowed General Unsecured Claims (other than the Prepetition Lender and the Subordinated Note Parties) from 6.3% - 9.7% under chapter 7 to 11.8% - 23.5% under the Plan.

This Combined Disclosure Statement and Plan contains, among other things, (i) a discussion of the Debtors' history and businesses, (ii) a summary of the events leading to these Chapter 11 Cases, (iii) a description of these Chapter 11 Cases, (iv) risk factors, (v) a summary and analysis of this Combined Disclosure Statement and Plan, and (vi) certain other related matters.

ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

# ARTICLE I
## DEFINITION AND CONSTRUCTION OF TERMS

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, (i) capitalized terms used herein shall have the meanings ascribed to them on Exhibit A annexed hereto, (ii) any capitalized term used in this Combined Disclosure Statement and Plan that is not defined herein or on Exhibit A annexed hereto, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (iii) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter, (iv) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (v) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (vi) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (vii) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (viii) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Plan, and (ix) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

# ARTICLE II
## BACKGROUND

### 2.01    General Background

#### (a)    The Debtors' History and Organizational Structure

Founded in 2000, the Debtors were the first company to bring live and on-demand television to mobile devices and were a leader in application-based television and video delivery solutions. Prior to the Sale, the Debtors provided end-to-end internet protocol streaming television services ("IPTV") *via* a proprietary cloud-based, white label application (the "IPTV Application"). The IPTV Application is fully customizable, allowing the Debtors' customers, generally television operators, broadband providers, and cellular device carriers, to provide a fully branded and customized video streaming platform on retail devices such as Roku, Apple TV, Amazon Fire TV, Xbox, and smart TVs, as well as other devices utilizing Android and iOS operating systems to their subscribers.

In support of the IPTV Application, the Debtors secured certain transportation rights (the "Transportation Rights") by which the Debtors provided content through the IPTV Application from over 375 leading video content providers such as HBO, Fox, the Walt Disney Company, Viacom, NBC, CBS, and others. The Transportation Rights held by the Debtors, coupled with the IPTV Application, simplified the content sourcing and delivery mechanics required to provide

3

high quality streaming services to consumer end users through a single application feed, and significantly reduce the costs of the Debtors' customers to provide content to their subscribers.

As of the Petition Date, the Debtors held key contracts with the T-Mobile Parties, the Debtors' most significant customers, and over 120 cable/broadband television (also referred to as "pay TV" or "premium television") providers to deliver streaming content to over 300,000 end-user subscribers *via* business customer-specific branded iterations of the IPTV Application.

In calendar year 2020, the Debtors generated approximately $13.5 million in revenue, resulting in an operating loss of approximately $34 million. Prior to the Sale, the Debtors derived their revenue from contracts with their subscription television customers, T-Mobile, and certain other broadband and cellular service providers, who utilized the IPTV Application.

MobiTV is a privately held Delaware corporation.  MobiTV Services is also a Delaware corporation and is wholly owned by MobiTV. As of the Petition Date, MobiTV Services had no operations, no employees, and no material assets, but was an obligor on the Prepetition Loan Facility.  MobiTV and MobiTV Services hold 99% and 1%, respectively, of the outstanding equity in non-Debtor MobiTV India, an Indian entity created to facilitate the Debtors' presence in India. As of the Petition Date, MobiTV India had no operations, no employees, no material assets, and is not an obligor on the Prepetition Loan Facility.

### (b)    Prepetition Capital Structure

### (i)    Secured Debt

As of the Petition Date, the Debtors' aggregate funded and matured secured debt obligations were approximately $25.4 million, plus accrued interest and expenses, pursuant to the Prepetition Loan, the Debtors' only prepetition secured loan.  On February 3, 2017, the Debtors and the Prepetition Lender entered into the Prepetition Loan Documents.  Under the terms of the Prepetition Loan Documents, the Debtors borrowed a $10 million term loan and fully drew down a revolving loan in the amount of $5 million.  The original maturity of the Prepetition Loan was February 3, 2019.  However, over a series of seventeen (17) amendments and forbearance agreements, the maturity date was effectively extended to January 2021.

On January 29, 2021, the Debtors and the Prepetition Lender entered into that certain *Forbearance Agreement and Eighteenth Amended to Loan and Security Agreement* whereby T-Mobile agreed to provide $2.5 million in bridge financing through the existing Prepetition Loan Facility.  To facilitate the transaction, T-Mobile and the Prepetition Lender entered into that certain *Junior Participation Agreement* dated January 29, 2021, whereby T-Mobile purchased a "last-out" participation interest in certain "Bridge Loans" extended by the Prepetition Lender to the Debtors under the Prepetition Loan Facility.

On February 12, 2021, the Debtors and the Prepetition Lender entered into that certain *Second Forbearance Agreement and Nineteenth Amendment to Loan and Security Agreement* (the "Nineteenth Amendment"), whereby T-Mobile agreed to provide an additional approximate $2.3 million in bridge financing through the existing Prepetition Loan Facility.  Pursuant to the Nineteenth Amendment, the Prepetition Lender agreed to forbear until February 26, 2021.

4

As of the Petition Date, the Prepetition Loan Facility was secured by substantially all of the Debtors' assets, including intellectual property, accounts receivable, inventory, and equipment. The Debtors also entered into various deposit account control agreements with the Prepetition Lender.

           (ii)      <u>Unsecured and Subordinated Debt</u>

As of the Petition Date, the Debtors estimate they had approximately $18 million, in the aggregate, of unsecured debt, consisting primarily of approximately $3 million owed to Silicon Valley Bank on account of a Paycheck Protection Program loan (the "<u>PPP Loan</u>"),[2] and approximately $15 million in trade debt owed to the Debtors' trade vendors.

Additionally, as of the Petition Date, the Debtors had approximately $9.3 million, in the aggregate, of unsecured debt on account of the Subordinated Notes. On August 6, 2020, December 14, 2020, and December 30, 2020, respectively, the Debtors entered into the Oak Investment Subordinated Notes with Oak Investment, pursuant to which Oak Investment loaned $4,000,000, $1,000,000, and $300,000, respectively, to the Debtors. In connection with each of the Oak Investment Subordinated Notes, the Prepetition Lender and Oak Investment entered into the Oak Investment Subordination Agreements, on substantially identical terms, each of which provides, among other things, that in the event of bankruptcy proceedings relating to the Debtors, (i) the claims of the Prepetition Lender shall be paid in full before any payment is made to Oak Investment on account of the Oak Investment Subordinated Notes, and (ii) the Prepetition Lender is appointed Oak Investment's attorney-in-fact to (a) file appropriate proofs of claims and (b) accept or reject any chapter 11 plan on behalf of Oak Investment with respect to the Oak Investment Subordinated Notes. The rights, remedies, and benefits of the Prepetition Lender under the Oak Investment Subordination Agreements are transferable to any assignee of the Prepetition Lender.

On October 9, 2020, the Debtors entered into the Rackspace Subordinated Note, pursuant to which Rackspace loaned $4,000,000 to the Debtors. In connection with the Rackspace Subordinated Note, the Prepetition Lender and Rackspace entered into the Rackspace Subordination Agreement, which provides, among other things, that in the event of bankruptcy proceedings relating to the Debtors, (i) the claims of the Prepetition Lender shall be paid in full before any payment is made to Rackspace on account of the Rackspace Subordinated Notes, and (ii) the Prepetition Lender is appointed Rackspace's attorney-in-fact to (a) file appropriate proofs of claims in respect to the Rackspace Subordinated Note and (b) accept or reject any chapter 11 plan on behalf of Rackspace with respect to the Rackspace Subordinated Note. The rights, remedies, and benefits of the Prepetition Lender under the Rackspace Subordination Agreement are transferable to any assignee of the Prepetition Lender.

---

[2]    On September 9, 2021, the Debtors submitted the requisite materials seeking forgiveness of the PPP Loan. As of the date hereof, the Debtors' request that the PPP Loan be forgiven remains pending, and the balance of the PPP Loan remains outstanding.

(c)    **Events Giving Rise to These Chapter 11 Cases and the Debtors'**
       **Prepetition Marketing Process**

Despite growing revenue and increasing subscriber and customer bases, as of and prior to the Petition Date, the Debtors were incurring substantial operating losses. While the Debtors projected significant and material subscriber and revenue growth for 2020, the COVID-19 pandemic and related stay-at-home orders, materially impaired the Debtors' growth opportunities. As a result, the Debtors had limited liquidity and were at risk of default under their debt agreements.  On August 6, 2020, the Debtors and the Prepetition Lender entered into that certain *Fifteenth Amendment to Loan and Security Agreement*, dated August 6, 2020 (the "Fifteenth Amendment"), which provided for a limited forbearance on the Prepetition Loan Facility. In exchange for this forbearance, the Debtors were required to engage in good faith efforts to raise additional capital from the sale of equity or through new financing in a sufficient amount to repay the Debtors' obligations under the Prepetition Loan Facility.

In accordance with the terms of the Fifteenth Amendment, in August 2020, the Debtors engaged FTI to assist with the Debtors' evaluation of strategic alternatives. The Debtors, with FTI's assistance, evaluated various avenues to improve the Debtors' liquidity and financial position, including a structured marketing effort to secure new debt or equity capital partners to provide for a refinancing of the Prepetition Loan Facility and provide operating liquidity to fully bridge the Debtors' business plan to positive cash flow in 2022.  While the Debtors entered into advanced negotiations with several potential capital providers, including a period of exclusive negotiations with several potential investors, negotiations to structure an acceptable out-of-court refinancing were unsuccessful.

The Debtors ultimately concluded that given the significant challenges in achieving positive free cash flows in the near term, the business likely would not be viable on a stand-alone basis absent a strategic transaction.  Further, in light of the Debtors' most recent marketing process, and the desire of potential acquirers to purchase the Debtors' assets free and clear of any liabilities, the Debtors believed it would be unable to consummate a strategic transaction out of court - especially given their limited available liquidity.

**2.02**    **These Chapter 11 Cases**

(a)    **The Debtors' Bankruptcy Filings and First Day Motions.**

On the Petition Date, each of the Debtors filed a voluntary chapter 11 bankruptcy petition. Substantially contemporaneously with filing the petitions, the Debtors filed a number of "first day" motions, including (i) an application for an order approving the retention of Stretto as claims and noticing agent pursuant to section 156(c) of the Judicial Code and Local Rule 2002-1(f); (ii) a motion for an order authorizing the continued use of the Debtors' cash management system, including authorizing the Debtors to maintain existing bank accounts and business forms; (iii) a motion for an order authorizing the Debtors to provide adequate assurance of future payment to utility companies pursuant to section 366(b) of the Bankruptcy Code; (iv) a motion to pay certain prepetition employee wages and benefits; and (v) a motion to pay certain "critical vendors" (collectively, the "First Day Motions"), among motions for other, initial relief.

On March 2, 2021, the Bankruptcy Court granted each of the First Day Motions on an interim or final basis, as applicable, and each of the First Day Motions previously approved on an interim basis was subsequently approved on a final basis on March 26, 2021.

On March 3, 2021, the Bankruptcy Court also approved the DIP Financing Motion on an interim basis, as more fully discussed in Section 2.02(d) herein.

### (b)    Appointment of the Committee

On March 15, 2021, the U.S. Trustee appointed ATEME, Inc., BEAR Cloud Technologies Inc., and Loma Alta Holdings, Inc. as the members of the Committee. *See* Docket No. 92. The Committee selected Fox Rothschild LLP as legal counsel and PriceWaterhouseCoopers LLP as financial advisor.

On August 17, 2021, the U.S. Trustee filed an *Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 453], reflecting that BEAR Cloud Technologies Inc. resigned as a member of the Committee.

### (c)    The Debtors' filing of the Schedules, Section 341(a) Meeting of Creditors, and Bar Date

On March 29, 2021, the Debtors filed their Schedules.  *See* Docket Nos. 129-132.

The U.S. Trustee conducted the Debtors' section 341(a) meeting on April 5, 2021.  *See* Docket Nos. 62 and 149.

On April 27, 2021, the Bankruptcy Court entered the Bar Date Order which, among other relief, established the Bar Dates.  Notice of the Bar Dates was provided in accordance with the Bar Date Order.  *See* Docket Nos. 216-218.

### (d)    The Debtors' Debtor in Possession Financing, the March 29 Announcement, and the T-Mobile Settlement

As more fully set forth in the DIP Motion, on March 2, 2021, the Debtors had an immediate need for financing and access to Cash Collateral.  Accordingly, the Debtors filed the DIP Motion seeking authorization for the Debtors to, *inter alia*, utilize cash collateral of the Prepetition Lender and to borrow up to $15.5 million from the DIP Lender, an affiliate of T-Mobile, pursuant to the terms and conditions of the DIP Facility, a junior secured multi-draw term loan facility.

On March 3, 2021, the Bankruptcy Court entered the Interim DIP Financing Order, which allowed the Debtors to immediately borrow approximately $7.5 million under the DIP Facility.

On March 29, 2021, the T-Mobile Parties announced (the "March 29 Announcement") that after April 29, 2021, they would no longer provide TVision to their customers and notified the Debtors of their intent to terminate the TMO Master Service Agreement.  Upon the termination of the TMO Master Service Agreement, the Debtors would lose their largest customers, the T-Mobile Parties.  However, the Plan Proponents were able to negotiate a comprehensive settlement with the T-Mobile Parties, which provided for, *inter alia*, the consensual termination of the TMO

Master Service Agreement effective as of April 29, 2021, the funding of the remaining availability under the DIP Financing in the approximate amount of $8 million, the waiver of all claims and interests by the DIP Lender related to the repayment of the DIP Financing, and certain mutual releases. In addition, as part of the T-Mobile Settlement, the Debtors, Committee, and DIP Lender were able to finalize an agreed form of Final Order approving the DIP Facility.

On April 27, 2021, the Bankruptcy Court entered the Final DIP Order and an order approving the T-Mobile Settlement. *See* Docket Nos. 212 and 213.

The T-Mobile Settlement allowed the Debtors to draw down the remaining availability under the DIP Facility, which provided the Debtors sufficient liquidity to maintain operations and complete a fulsome marketing process for the sale of substantially all of their Assets. Furthermore, the waiver of the DIP Lender's claims against the Debtors for, *inter alia*, the amounts under the DIP Facility, formed a cornerstone of the basis for the anticipated recovery for General Unsecured Creditors contemplated by this Combined Disclosure Statement and Plan.

### (e)    The Sale and the Prepetition Lender Settlement and Plan Support Agreement

Following the Petition Date, the Debtors continued their robust marketing process for the Sale. On March 8, 2021, the Debtors filed the Sale Motion, and on April 7, 2021, the Bankruptcy Court entered the Bid Procedures Order. As part of the Debtors' post-petition marketing efforts, the Debtors and/or their professionals contacted and engaged with numerous parties, culminating in the receipt of eight qualified bids for some or substantially all of the Debtors' Assets.

On May 11-12, 2021 the Debtors conducted an auction pursuant to the terms of the Bid Procedures Order, which included eight rounds of competitive bidding from an opening bid of approximately $13 million. Following the conclusion of the auction, the Debtors selected the bid submitted by the Purchaser as the successful bidder and the joint bid submitted by Amino Technologies (US) LLC, Roku, Inc., and RPX Corporation as the backup bid. The Purchaser's successful bid resulted in the Asset Purchase Agreement, which consisted of, *inter alia*, a purchase price of $17.4 million (the "Purchase Price") plus assumed cure and other liabilities in the approximate amount of $6 million. On May 21, 2021, the Bankruptcy Court entered the Sale Order approving the Sale to the Purchaser pursuant to the Asset Purchase Agreement. The Sale closed on or about June 1, 2021 (the "Closing Date").

The Sale Order established a settlement framework among the Debtors, the Committee, and the Prepetition Lender (the "Settlement Framework"). Under this Settlement Framework, (i) the Debtors were authorized and directed to pay the proceeds of the Sale to the Prepetition Lender, net of certain expenses, (ii) the Prepetition Lender agreed to transfer any further recovery the Prepetition Lender is entitled to in connection with the Prepetition Loan Documents, including on account of any diminution and deficiency claims, to general unsecured creditors in the Bankruptcy Cases, while preserving the priorities set forth in the Subordination Agreements, and (iii) the Debtors' estates would release any claims against the Prepetition Lender, including any Challenge Proceedings (as defined in the Final DIP Order). Accordingly, at the closing of the Sale, the Debtors paid to the Prepetition Lender the Purchase Price, less certain fees, costs and expenses in

connection with the Sale and Prepetition Loan, resulting in the Prepetition Lender Deficiency Claim.

On June 24, 2021, the Plan Proponents filed the Prepetition Lender Settlement Motion, seeking Bankruptcy Court approval of the Prepetition Lender Settlement by and among the Debtors, the Committee, and the Prepetition Lender. The Prepetition Lender Settlement provides for, *inter alia*, (i) the stipulated allowance of the Prepetition Lender Deficiency Claim as a General Unsecured Claim in the amount of $11,300,922 in settlement of any and all Claims the Prepetition Lender may hold against the Debtors' Estates, (ii) the allocation of any Distributions or payments on account of the Prepetition Lender Deficiency Claim to the Liquidation Trust and the beneficiaries thereof pursuant to the terms of a chapter 11 plan, (iii) certain mutual releases among the parties to the Prepetition Lender Settlement, (iv) the enforcement of the Subordination Agreements pursuant to the terms of a chapter 11 plan, (v) the assignment of the Subordination Agreements to the Debtors' Estates or successor thereto, including the Liquidation Trust, (vi) an agreement among the parties thereto that the Prepetition Lender would support a chapter 11 plan which was consistent with the Prepetition Lender Settlement, and (vii) certain related terms. As a result of, *inter alia*, the Sale and Prepetition Lender Settlement, the Debtors no longer have any secured obligations in connection with the Prepetition Loan and have the support of the Prepetition Lender for this Combined Disclosure Statement and Plan. The Prepetition Lender Settlement Motion was approved by the Bankruptcy Court on July 12, 2021. *See* Docket No. 395.

### (f)    The Appointment of the CRO

Contemporaneously with the closing of the Sale, the Debtors terminated the employment of their employees. Accordingly, following the closing of the Sale, the Debtors no longer had any employees. In order to continue to manage and wind down the Debtors' affairs, the Debtors' board of directors approved the retention of FTI to provide the CRO and additional personnel. Accordingly, on May 28, 2021, the Debtors filed a motion for Bankruptcy Court approval of the retention of FTI to provide the CRO and additional personnel at Docket No. 307, which the Bankruptcy Court approved on June 11, 2021. *See* Docket No. 332.

### ARTICLE III
### CONFIRMATION PROCEDURES

### 3.01    Confirmation Procedures

On August 10, 2021, the Bankruptcy Court entered the Solicitation Procedures Order [Docket No. 438]. Among other things, the Solicitation Procedures Order, approved the adequacy of the disclosures in this Combined Disclosure Statement and Plan on an interim basis and set certain deadlines for the solicitation of the Plan, voting on the Plan, filing objections to the Plan and a hearing to consider approval of the Plan. The Confirmation Hearing was held on **September 22, 2021 at 2:00 p.m. (Eastern Time)** at the Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801 to consider (a) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtors without

further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

### 3.02    Procedure for Objections

Any objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or Confirmation of the Plan must be made in writing and Filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **September 13, 2021 at 4:00 p.m. (Eastern Time)** upon (i) counsel to the Debtors, Pachulski Stang Ziehl & Jones, LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn:   Debra I. Grassgreen (dgrassgreen@pszjlaw.com), Jason H. Rosell (jrosell@pszjlaw.com), and Mary F. Caloway (mcaloway@pszjlaw.com); (ii) the Office of the United States Trustee, Attn: Benjamin Hackman (benjamin.a.hackman@usdoj.gov); and (iii) counsel to the Official Committee of Unsecured Creditors, Fox Rothschild LLP, 321 N. Clark St., Suite 1600, Chicago, IL 60654, Attn: Seth Niederman (sniederman@foxrothschild.com), Michael A. Sweet (msweet@foxrothschild.com) and Gordon E. Gouveia (ggouveia@foxrothschild.com). Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

### 3.03    Requirements for Confirmation

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among other requirements, the Plan (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (b) must be feasible. The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

### 3.04    Classification of Claims and Interests

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified). The Plan Proponents also are required, under section 1122 of the Bankruptcy Code, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Plan Proponents believe that the Plan complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the Holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that

any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date. The Plan Proponents believe that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a Holder of a Claim or Interest may challenge the Plan Proponents' classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If such a situation develops, the Debtors intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its Confirmation. Any such reclassification could adversely affect Holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distribution received by Creditors. The projected recoveries are based on information available to the Debtor as of the date hereof and reflect the Plan Proponents' views as of the date hereof only.

The classification of Claims and Interests and the nature of Distributions to members of each Class are summarized herein. The Plan Proponents believe that the consideration, if any, provided under the Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

### 3.05    Impaired Claims or Interests

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under a plan may vote to

accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable or contractual rights are changed under such plan. In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected such plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, only Holders of Claims in Class 3 are Impaired and are entitled to vote on the Plan. Under the Plan, Holders of Claims in Class 4 and Holders of Interests in Class 5 are Impaired and will not receive or retain any property under the Plan on account of such Interests and, therefore, are not entitled to vote on the Plan and are deemed to reject the Plan. Under the Plan, Holders of Claims in Classes 1 and 2 are Unimpaired and, therefore, not entitled to vote on the Plan and are deemed to accept the Plan.

ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3 (GENERAL UNSECURED CLAIMS).

### 3.06    Confirmation Without Necessary Acceptances; Cramdown

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. Here, because Holders of Claims and Interests in Classes 4 and 5 are deemed to reject the Plan, the Plan Proponents will seek confirmation of the Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. The Plan Proponents believe that such requirements are satisfied, as no Holder of a Claim or Interest junior to those in Classes 4 and 5, respectively, will receive or retain any property under the Plan.

A plan does not "discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Plan Proponents believe that, under the Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class. Accordingly, the Plan Proponents believe that the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." In order to determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

a.    <u>Secured Creditors</u>. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

b.    <u>Unsecured Creditors</u>. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

c.    <u>Equity Interests</u>. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan. As discussed above, the Plan Proponents believe that the Distributions provided under the Plan satisfy the absolute priority rule, where required.

### 3.07    <u>Feasibility</u>

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan will not likely be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors (unless such liquidation or reorganization is proposed in the Plan). The Plan Proponents have analyzed the ability of the Liquidation Trustee to meet its obligations under the Plan. Based on the Plan Proponents' analysis, the Liquidation Trust will have sufficient assets to accomplish its tasks under the Plan. Therefore, the Plan Proponents believe that the liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

### 3.08    <u>Best Interests Test and Liquidation Analysis</u>

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code. To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to chapter 7 cases under the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtors' unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative

13

claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the Distributions to be received by such parties under the Plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class. *See* Liquidation Analysis attached as <u>Exhibit B</u> to this Combined Disclosure Statement and Plan.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. However, the Plan Proponents believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating the Estates in chapter 7.  The costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee. The Plan Proponents believe such amount would exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during these Chapter 11 Cases (such as compensation for Professionals) that are allowed in the chapter 7 case. Conversion also would likely delay the liquidation process and ultimate Distribution of whatever value remains in the Estates.

Furthermore, the Prepetition Lender Settlement, as incorporated herein, increases the estimated recoveries to Holders of Allowed General Unsecured Claims (other than the Prepetition Lender and the Subordinated Note Parties) due to the reallocation of the Prepetition Lender Deficiency Claim and enforcement of the Subordination Agreements.  Accordingly, under the Plan, estimated recoveries to Holders of Allowed General Unsecured Claims (other than the Prepetition Lender and the Subordinated Note Parties) are approximately 11.8% - 23.5%, whereas under a chapter 7 case, estimated recoveries for such parties are approximately 6.3% - 9.7%.

Accordingly, the Plan Proponents believe that Holders of Allowed Claims would receive less than anticipated under the Plan if these Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, and therefore, the classification and treatment of Claims and Interests in the Plan complies with section 1129(a)(7) of the Bankruptcy Code.

**3.09**    <u>**Acceptance of the Plan**</u>

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of ballots are set forth in the Solicitation Procedures Order. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one Voting Class, excluding the votes of Insiders, must actually vote to accept the Plan.

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL, OR SUBMIT THROUGH THE E-BALLOTING PORTAL, THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY AND TO IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE HOLDER. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU

RECEIVED A DAMAGED BALLOT OR YOU LOST YOUR BALLOT OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE VOTING AGENT AT (949) 617-1902 OR (855) 294-0902 OR YOU CAN GO TO THE DEBTORS' WEBSITE AT HTTPS://CASES.STRETTO.COM/MOBITV/. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS AND EXPECTED RECOVERIES

### 4.01    Overview of Classification.

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Interest qualifies within the description of that Class; and (ii) the Claim or Interest has not been paid, released, or otherwise compromised before the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Compensation Claims, and Priority Tax Claims are not classified under the Plan and are excluded from the following Classes.

### 4.02    Identification and Treatment of Unclassified Claims

### (a)    Administrative Claims.

On the Effective Date, each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtors or the Liquidation Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

### (i)    Final Administrative Claims Bar Date.

Any Holders of an Administrative Claim accruing from the Closing Date through the Effective Date, other than Professional Fee Claims, shall File with the Claims Agent and serve on the Liquidation Trustee a request for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before the Final Administrative Claims Bar Date. Any such Claim not Filed by the Final Administrative Claims Bar Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Final Administrative Claims Bar Date and shall constitute notice of such Bar Date. The Liquidation Trustee shall have one hundred and eighty (180) days (or such longer period as may be allowed by order of the Bankruptcy Court on motion of the Liquidation Trustee) following the Final Administrative Claims Bar Date to review and object to Administrative Claims.

     (ii)    <u>Bar Date for Applications for Professional Fees.</u>

Professional Fee Claims are Administrative Claims and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date. If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Professional Fee Bar Date and shall constitute notice of such Bar Date.

     (iii)    <u>Section 503(b)(9) Claims.</u>

For the avoidance of doubt, (i) the deadline for Filing requests for payment of 503(b)(9) Claims was the General Bar Date and (ii) the deadline for Filing requests for payment of Administrative Claims that arose between the Petition Date through the Closing Date is the Initial Administrative Claim Bar Date, and neither deadline is extended by this Plan or the Confirmation Order.

### (b)    **U.S. Trustee Fees.**

All U.S. Trustee Fees payable on or before the Effective Date shall be paid by the Debtors on or before the Effective Date. From and after the Effective Date, the Liquidation Trust shall be responsible for payment of all U.S. Trustee Fees assessed in these Chapter 11 Cases until such time as these Chapter 11 Cases are closed, dismissed or converted.  The Liquidation Trust shall file post-confirmation quarterly reports in a format prescribed by the U.S. Trustee until such time as these Chapter 11 Cases are closed, dismissed or converted.  Notwithstanding anything to the contrary in this Combined Disclosure Statement and Plan, the U.S. Trustee shall not be required to File a request for payment of an administrative expense.

### (c)    **Priority Tax Claims.**

On the Effective Date, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) such other treatment as to which the Debtors or the Liquidation Trustee, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

### (d)    **Ordinary Course Liabilities.**

All Ordinary Course Liabilities are deemed to be Allowed Claims to the extent set forth in the budget approved by the Final DIP Order (the "<u>Approved Budget</u>"). Holders of Administrative Claims on account of Ordinary Course Liabilities are not required to File or serve any request for payment of the Ordinary Course Liability. To the extent applicable, the Debtors shall continue to pay each Ordinary Course Liability accrued prior to the Effective Date, pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability, and the Approved Budget. To the extent that a holder of an Administrative Claim, on account of Ordinary Course Liability which accrued prior to the Effective Date, did not submit an invoice for the Ordinary Course Liability to the Debtors prior to the Effective Date, the holder must submit

the invoice to the Liquidation Trust in the ordinary course of business pursuant to the terms and conditions of the particular transaction giving rise to the Ordinary Course Liability. The Liquidation Trustee shall remit payment on any undisputed Ordinary Course Liability within fifteen (15) days of receipt of the invoice.

### 4.03    Identification of Classes of Claims

#### (a)    Treatment of Secured Claims (Class 1).

Each Holder of an Allowed Class 1 Claim, at the option of the Liquidation Trustee, shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) return of the collateral securing such Allowed Class 1 Claim; (B) Cash equal to the amount of such Allowed Secured Claim; or (C) such other treatment which the Plan Proponents and the Holder of such Allowed Class 1 Claim have agreed upon in writing. Such Claims are therefore unimpaired and not entitled to vote.

#### (b)    Treatment of Priority Unsecured Non-Tax Claims (Class 2).

Each holder of an Allowed Priority Unsecured Non-Tax Claim against the Debtors shall receive on the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Unsecured Non-Tax Claim, either Cash equal to the full unpaid amount of such Allowed Priority Unsecured Non-Tax Claim, or such other treatment as the Liquidation Trustee and the holder of such Allowed Priority Unsecured Non-Tax Claim shall have agreed. Such Claims are therefore unimpaired and not entitled to vote.

#### (c)    Treatment of General Unsecured Claims (Class 3).

After satisfaction in full of all Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Priority Unsecured Non-Tax Claims, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of any Distributable Cash or such other treatment as may be agreed upon by such Holder and the Liquidation Trustee.  The Liquidation Trustee shall make one or more Distributions on account of such Allowed General Unsecured Claims to each Holder of such Allowed General Unsecured Claims on each Distribution Date (or the date on which such Claim becomes an Allowed General Unsecured Claim) on a Pro Rata basis, provided, however, that the Liquidation Trustee shall have no obligation to make a Distribution to Holders of Allowed General Unsecured Claims where the Liquidation Trustee determines that to make such a Distribution would prevent the Liquidation Trustee from having sufficient funds to pay Allowed Administrative Claims, and the actual and necessary costs and expenses of the Estates and the Liquidation Trust, including Liquidation Trust Expenses.

Reallocation of Pro Rata Share of Prepetition Lender Deficiency Claim.  As set forth more fully in Sections 9.03 and 9.04 below, and in accordance with the Prepetition Lender Settlement, Holders of Allowed Non-Subordinated General Unsecured Claims shall receive their Pro Rata share of Distributions otherwise allocable to Holders of Subordinated General Unsecured Claims until the Prepetition Lender Deficiency Claim would otherwise have been paid in full.

For the avoidance of doubt, the Plan Proponents do not expect there to be sufficient Distributable Cash to pay the Prepetition Lender Deficiency Claim in full. Accordingly, the estimated recovery to Holders of Subordinated General Unsecured Claims is 0% and the full amount otherwise allocable to Holders of Subordinated General Unsecured Claims will be re-allocated for distribution to Holders of Non-Subordinated General Unsecured Claims.

### (d)    Treatment of Intercompany Claims (Class 4).

On the Effective Date, all Intercompany Claims in Class 4 shall be deemed canceled, extinguished, and of no further force or effect. Holders of Intercompany Claims in Class 4 shall not be entitled to receive or retain any property on account of such Class 4 Claims. Accordingly, Class 4 Claims are impaired, deemed to reject the Plan, and are not entitled to vote.

### (e)    Treatment of Interests (Class 5).

On the Effective Date, all Interests shall be deemed canceled, extinguished, and of no further force or effect. Holders of Interests shall not be entitled to receive or retain any property on account of such Class 5 Interests. Accordingly, Class 5 Interests are impaired, deemed to reject the Plan, and are not entitled to vote.

### 4.04    Treatment of Classified Classes, Rights to Vote, and Estimated Distributions

The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including related to the amount of proofs of claims that are filed after the Bar Date, and the amount of Claims that exist after the claims reconciliation process, as well as the Liquidation Trust's recoveries from the preserved Causes of Action, if any. Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distributions received by Creditors. The projected recoveries are based on information available to the Plan Proponents as of the date hereof and reflect the Plan Proponents' best estimates as of the date hereof only. In addition to the cautionary notes and risk factors contained elsewhere in the Combined Disclosure Statement and Plan, it is underscored that the Plan Proponents make no representation as to the accuracy of these recovery estimates. The Plan Proponents expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered). A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Combined Disclosure Statement and Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is set forth below. The categories of Claims

18

and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class/Designation | Plan Treatment | Status | Estimated Claim Pool/Projected Recovery |
|---|---|---|---|
| Class 1: Secured Claims | Each Holder of an Allowed Class 1 Claim, at the option of the Liquidation Trustee, shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) return of the collateral securing such Allowed Secured Claim; or (B) Cash equal to the amount of such Allowed Secured Claim; or (C) such other treatment which the Plan Proponents and the Holder of such Secured Claim have agreed upon in writing. | Unimpaired; **Not entitled to vote;** Deemed to accept Plan | Approx. Amount: $0.00<br><br>Est. Recovery: 100% |
| Class 2: Priority Unsecured Non-Tax Claims | Each Holder of an Allowed Priority Unsecured Non-Tax Claim at the option of the Liquidation Trustee, shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim: (A) Cash equal to the amount of such Allowed Priority Unsecured Non-Tax Claim; or (B) such other treatment which the Liquidation Trustee and the Holder of such Allowed Priority Unsecured Non-Tax Claim have agreed upon in writing. | Unimpaired; **Not entitled to vote;** Deemed to accept Plan | Approx. Amount: $0.00<br><br>Est. Recovery: 100% |
| Class 3: General Unsecured Claims | After satisfaction in full of all Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Priority Unsecured Non-Tax Claims, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Distributable Cash or such other treatment as may be agreed upon by such Holder and the Liquidation Trustee. | Impaired; **Entitled to vote** | Approx. Amount: $14.4 million - $23.8 million<br><br>Estimated Recovery: 11.8%-23.5% |

| Class/Designation | Plan Treatment | Status | Estimated Claim Pool/Projected Recovery |
|---|---|---|---|
| Class 4: Intercompany Claims | On the Effective Date, all Intercompany Claims in Class 4 shall be deemed canceled, extinguished and of no further force or effect.  Holders of Intercompany Claims in Class 4 shall not be entitled to receive or retain any property on account of such Class 4 Claims. | Impaired; Deemed to reject Plan and **Not entitled to vote** | Approx. Amount: $1.8 million<br><br>Est. Recovery: 0% |
| Class 5: Interests | On the Effective Date, all Interests shall be deemed canceled, extinguished and of no further force or effect, and the Holders of Interests shall not be entitled to receive or retain any property on account of such Interests. | Impaired; Deemed to reject Plan and **Not entitled to vote** | Est. Recovery: 0% |

### 4.05    Controversy Concerning Classification, Impairment or Voting Rights

In the event a controversy or dispute should arise related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of these Chapter 11 Cases and (ii) any right to payment arising from an equitable remedy for breach of performance.

### 4.06    Insurance Recourse

Notwithstanding anything to the contrary herein, unless elected otherwise by the Liquidation Trustee, if any Allowed Claim is covered by an Insurance Policy, such Claim shall first be paid from proceeds of such Insurance Policy to the extent such proceeds are available, with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

### ARTICLE V
### CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE

ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 5.01    The Plan May Not Be Accepted.

The Debtor can make no assurances that the requisite acceptances to the Plan will be received, and the Debtor may need to obtain acceptances to an alternative plan of liquidation for the Debtor, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Creditors as those proposed in the Plan.

### 5.02    The Plan May Not Be Confirmed.

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan. Even if the Bankruptcy Court determined that the Combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation had not been met. Moreover, there can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for confirmation or that such modifications would not necessitate the resolicitation of votes. If the Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation.

### 5.03    Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections.

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for Distribution to such Class may differ from the Debtors' estimates. If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for Distribution to such Class are lower than the Debtors' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

### 5.04    Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Debtors believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors would seek to (i) modify the Plan to provide for whatever classification might be required for confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class

or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires resolicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Debtors believe that under the Bankruptcy Rules, it would be required to resolicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder. The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors believe that the Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and Consummation of the Plan and could increase the risk that the Plan will not be consummated.

### 5.05    Failure to Consummate the Plan.

The Plan provides for certain conditions that must be satisfied (or waived) prior to confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will be consummated.

### 5.06    Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan.

There can be no assurance that the estimated Claim amounts set forth in the Plan are correct, and the actual Allowed amounts of Claims may differ from the estimates. The estimated amounts are based on certain assumptions with respect to a variety of factors, including with respect to any Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Secured Claims. Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein, thereby materially reducing the recovery to the Holders of Allowed General Unsecured Claims under the Plan.

5.07    **Plan Releases May Not Be Approved.**

There can be no assurance that the releases, as provided in Article X of the Plan, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

5.08    **Certain Tax Considerations.**

There are a number of material income tax considerations, risks and uncertainties associated with the plan of liquidation of the Debtors described in this Combined Disclosure Statement and Plan.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## ARTICLE VI
## THE LIQUIDATION TRUST

6.01    **Liquidation Trust**

The Liquidation Trust Agreement, attached hereto as <u>Exhibit C</u>, is incorporated into and made a part of this Combined Disclosure Statement and Plan.

6.02    **Establishment and Purpose of the Liquidation Trust**

On or before the Effective Date, the Debtors and the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall have established the Liquidation Trust pursuant to the Plan. The Liquidation Trust shall be established for the primary purpose of liquidation and distributing the assets transferred to it, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

6.03    **Authority and Role of the Liquidation Trustee**

The authority and role of the Liquidation Trustee shall be in accordance with the provisions of the Liquidation Trust Agreement and the Plan.   In furtherance of and consistent with the purpose of the Liquidation Trust Agreement and the Plan, solely for the purpose of carrying out the Plan and discharging the duties in the Liquidation Trust Agreement, the Liquidation Trustee shall be, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable State corporate law, appointed as the representative of the Estates for the retention, enforcement, settlement, or adjustment of all claims and rights, known and unknown, and all interests belonging to the Debtors or their Estates, which arose prior to the Effective Date.

**6.04    Appointment of the Liquidation Trustee**

The appointment of E. Lynn Schoenmann as Liquidation Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.  In accordance with the Liquidation Trust Agreement, the Liquidation Trustee shall serve in such capacity through the earlier of (i) the date that the Liquidation Trust is dissolved in accordance with the Liquidation Trust Agreement or (ii) the date such Liquidation Trustee resigns, is terminated, or is otherwise unable to serve; provided, however, that, in the event that the Liquidation Trustee resigns, is terminated, or is unable to serve, then the Court, upon the motion of any party-in-interest, including, but not limited to, counsel to the Liquidation Trust, shall approve a successor to serve as the Liquidation Trustee, and such successor Liquidation Trustee shall serve in such capacity until the Liquidation Trust is dissolved.

**6.05    Liquidation Trust Assets**

On the Effective Date, the Debtors shall transfer the Liquidation Trust Assets to the Liquidation Trust. Notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date, the Debtors shall be deemed to have automatically transferred to the Liquidation Trust all of their right, title, and interest in and to all of the Liquidation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidation Trust free and clear of all Claims and Liens. Subsequent to the Effective Date, the Debtors shall have no interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust.

**6.06    Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor-in- Interest**

In accordance with Treas. Reg. § 301.7701-4(d), the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely Distributions pursuant to the Plan, and not unduly prolong its duration. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidation Trust Agreement.

**(a)    Liquidation Trust as a "Grantor Trust."**

The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Claims of the Liquidation Trust Beneficiaries entitled to Distributions from the Liquidation Trust Assets, followed by a transfer by such Holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

24

(b)     **Valuation of Liquidation Trust Assets.**

As soon as reasonably practicable after the Effective Date, the Liquidation Trustee (to the extent that the Liquidation Trustee deems it necessary or appropriate in its absolute sole discretion) shall value the Liquidation Trust Assets based on the good faith determination of the value of such Liquidation Trust Assets. The valuation shall be used consistently by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all federal income tax purposes.    The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

(c)     **Liquidation Trustee's Right and Power to Invest.**

The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets transferred to the Liquidation Trust, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power to invest such Liquidation Trust Assets (pending distributions in accordance with the Plan) in accordance with the Liquidation Trust Agreement; *provided*, *however*, that the scope of any such Permissible Investments shall be limited to include only those investments that a "liquidation trust," within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

**6.07    Responsibilities of the Liquidation Trustee**

The responsibilities of the Liquidation Trustee shall include, but shall not be limited to:

(1)     the making of Distributions as contemplated herein;

(2)     establishing and maintaining the Reserves in accordance with the terms of the Plan;

(3)     conducting an analysis of Administrative Claims, Priority Non-Tax Claims, Secured Claims, and General Unsecured Claims, and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate;

(4)     preparing and filing post-Effective Date operating reports for the Debtors;

(5)     filing appropriate tax returns with respect to the Liquidation Trust and Debtors and paying taxes properly payable by the Liquidation Trust and Debtors, if any, in the exercise of its fiduciary obligations;

(6)     taking such actions as are necessary to wind down and dissolve the Debtors and MobiTV India under applicable law;

(7)     retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations;

(8)     taking such actions as are necessary and reasonable to carry out the purposes of the Liquidation Trust;

25

(9)     protecting and enforcing the rights to the Liquidation Trust Assets vested in the Liquidation Trustee by any method reasonably determined to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity; and

(10)    terminating the Liquidation Trust and seeking to close the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.

### 6.08    Establishment of the Post-Confirmation Committee

On the Effective Date, the Post-Confirmation Committee, which shall consist of two (2) members, shall be formed to serve as an advisory board to the Liquidation Trustee. The initial members of the Post-Confirmation Committee shall be ATEME, Inc. and Loma Alta Holdings, Inc. The Post-Confirmation Committee shall assume the rights and obligations set forth in the Liquidation Trust Agreement, subject to the terms, conditions, and procedures therein. The Liquidation Trustee shall be subject to the oversight and advice of the Post-Confirmation Committee as set forth in the Liquidation Trust Agreement.

### 6.09    Expenses of the Liquidation Trust

Fees and expenses incurred by the Liquidation Trustee shall be paid from the Liquidation Trust Expense Reserve.

### 6.10    Compensation of the Liquidation Trustee

The Liquidation Trustee shall be entitled to receive compensation for services rendered on behalf of the Liquidation Trust in the amount of $10,000 per month, payable on the first Business Day of each month, plus reimbursement of all reasonable, out-of-pocket expenses, until the date the Liquidation Trust is dissolved and terminated or by an order of the Bankruptcy Court. The Liquidation Trustee shall also be entitled to receive an incentive bonus as set forth in the Liquidation Trust Agreement. For the avoidance of doubt, all compensation of the Liquidation Trustee shall be a Liquidation Trust Expense.

### 6.11    Bonding of the Liquidation Trust

The Liquidation Trustee shall post an appropriate bond with respect to the performance of the obligations and liabilities of the Liquidation Trustee under the Plan and the Liquidation Trust Agreement (the "Liquidation Trust Bond"). The cost of the Liquidation Trust Bond shall be an expense of the Liquidation Trust and paid from the Liquidation Trust Assets.

### 6.12    Fiduciary Duties of the Liquidation Trustee

Pursuant to the Plan and the Liquidation Trust Agreement, the Liquidation Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims against the Debtors that will receive Distributions pursuant to the terms of the Plan.

### 6.13    Transfer of Books and Records

On the Effective Date, the Debtors will transfer and assign, or cause to be transferred and assigned, to the Liquidation Trust, all of the books and records of the Debtors.

### 6.14    Dissolution of the Liquidation Trust

The Liquidation Trust shall be dissolved no later than two (2) years from the Effective Date unless the Bankruptcy Court, upon a motion Filed prior to the second anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets. After (a) the final Distribution of the balance of the assets or proceeds of the Liquidation Trust pursuant to the Plan, (b) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, and (c) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

### 6.15    Full and Final Satisfaction against Liquidation Trust

On and after the Effective Date, the Liquidation Trust shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the Liquidation Trust Agreement. All payments and all Distributions made by the Liquidation Trustee under the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Interests against the Released Parties, as applicable.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.01    Interests in the Debtors

Except as otherwise may be provided in the Plan, on the Effective Date, the Interests in the Debtors shall be cancelled.

### 7.02    Causes of Action

On the Effective Date, all Released Causes of Action shall be deemed waived, discharged, forgiven, and forever compromised, and all other Causes of Action shall be vested in and retained by the Liquidation Trust. Following the Effective Date, except as otherwise expressly provided herein, the Liquidation Trustee may assert, compromise or dispose of the preserved Causes of Action without further notice to Creditors or Interest Holders or authorization of the Bankruptcy Court.

### 7.03    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date

and concurrently with the applicable Distributions made pursuant to the Plan, all Liens against the property of any Estates will be fully released, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against any net proceeds of sales of such assets. For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

### 7.04    Vesting and Sale or Other Disposition of Assets; Representative of the Estate

Except as otherwise provided in this Combined Disclosure Statement and Plan, on the Effective Date, all property of the Debtors' Estates, shall be vested in the Liquidation Trust, free and clear of all Claims, liens, charges, other encumbrances, Interests or other interests. On and after the Effective Date, the Liquidation Trustee may use, acquire and dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan or the Confirmation Order. The Liquidation Trustee, on and after the Effective Date, may conduct any sales or liquidations of assets on any terms it deems appropriate, without further order of the Bankruptcy Court, except as otherwise provided in the Plan or the Confirmation Order.

### 7.05    Effectuating Documents; Further Transactions

On and after the Effective Date, the Liquidation Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the transactions contemplated thereby, in each case, in the name of and on behalf of the Debtors and the Liquidation Trust, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

### 7.06    Deemed Substantive Consolidation

The Plan contemplates and is predicated upon the deemed substantive consolidation of the Estates for voting, confirmation, and Distribution purposes. Accordingly, on the Effective Date, each Claim Filed or to be Filed against any Debtor shall be deemed Filed only against MobiTV, Inc., and shall be deemed a single Claim against and a single obligation of MobiTV, Inc., for Distribution purposes, which shall be paid from the Liquidation Trust. This deemed substantive consolidation of the Estates for Distribution purposes means that the specific Debtor against which a creditor Holds or asserts a Claim will have no effect on the Distribution (if any) provided to such creditor under the Plan.

Absent the consent of affected creditors, the Debtors will bear the burden at the Confirmation Hearing of establishing a *prima facie* case for the deemed substantive consolidation of their respective Estates.  Accordingly, the Debtors will, to the extent necessary, adduce evidence at the Confirmation Hearing to justify the deemed substantive consolidation in accordance with

the standards established by applicable case law. Such evidence may include, without limitation, evidence indicating that creditors have dealt with the Debtors as a single, consolidated enterprise, both before and after the Petition Date, the sale of all of the Debtors' assets without allocation, the Debtors' centralized management, and the Debtors' prepetition use of an integrated cash management system of bank accounts. Further, efforts to deconsolidate the Debtors' respective assets and liabilities would be burdensome and divert professional resources that are more profitably directed elsewhere, all without meaningfully affecting the Distributions to be received under the Plan.

### 7.07    Records

On and after the Effective Date, all documents and records of the Debtors shall be transferred to the Liquidation Trust, which shall preserve and maintain all of the Debtors' documents and records according to practices and terms that it deems reasonable and appropriate in its sole and independent discretion.  At any time following the Effective Date, the Liquidation Trustee shall be entitled to destroy any documents and records of the Debtors (a) following the filing of an appropriate notice with the Bankruptcy Court setting forth the Liquidation Trustee's intent to destroy some or all of the Debtors' documents or records, without further order of the Bankruptcy Court, *provided that*, no objections are Filed to such notice on or before the fourteenth (14th) day following the filing of such notice, (b) upon entry of an order by the Bankruptcy Court authorizing the destruction of some or all of the Debtors' documents and records, or (c) upon dissolution of the Liquidation Trust without the need for further approval of the Bankruptcy Court.

### 7.08    Insurance Policies

#### (a)    Insurance Policies Remain In Force.

Up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third party administrators under such Insurance Policies shall continue following the Effective Date (including any obligations to pay, defend and process insured claims).

#### (b)    Insurance Policies; Employment Practice Liability Policies; Similar Policies.

Nothing contained in this Combined Disclosure Statement and Plan shall affect or impair the rights of any non-Debtor insured persons covered under any Insurance Policy, which expressly includes any director and officer, employment practices, or similar liability Insurance Policies (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

### 7.09    Dissolution of Committee

On the Effective Date, the Committee shall be dissolved and the members of the Committee shall be released and discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, these Chapter 11 Cases, except with respect to the limited purpose of

preparing and prosecuting applications for the payment of fees and reimbursement of expenses incurred by the Committee or its respective Professionals.

### 7.10    Transfer of Privilege/No Waiver

On the Effective Date, all of the Debtors' evidentiary privileges, including the attorney/client privilege, shall be deemed transferred to the Liquidation Trust. The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief. Upon such transfer, the Debtors and the Estates shall have no other further rights or obligations with respect thereto.  Nothing herein shall be deemed a waiver of the Debtors' or the Estates' rights of privilege.

### 7.11    Termination of the Claims Agent

At any time following the Effective Date, the Liquidation Trustee shall be authorized to terminate the services of the Claims Agent by providing fourteen (14) days written notice without the need for further approval by of the Bankruptcy Court or any other party; *provided, however,* such notice may be waived by mutual agreement of the Liquidation Trustee and Claims Agent. Following termination, the Claims Agent shall provide the Liquidation Trustee and the Bankruptcy Court with a copy of the claims register and a copy of all filed proofs of Claim.  No later than thirty (30) days after its termination, the Claims Agent shall provide the Liquidation Trustee with a final invoice, and unless the Liquidation Trustee has any issues with respect to the Claims Agent's fees or expenses, the Liquidation Trustee will be authorized to remit payment of the final invoice within fourteen (14) days of receipt. The Bankruptcy Court will retain jurisdiction to hear any dispute in the event that the Liquidation Trustee and Claims Agent cannot agree upon the amount of fees and expenses sought by the Claims Agent.

### 7.12    Closing of Bankruptcy Case of MobiTV Service Corporation

Upon the occurrence of the Effective Date, the Liquidation Trustee shall File a certification of counsel seeking entry of an Order authorizing the Clerk of the Bankruptcy Court to close the bankruptcy case of MobiTV Service Corporation.

### 7.13    Final Decree

At any time following the Effective Date, the Liquidation Trustee shall be authorized to File a motion for entry of a final decree closing the Chapter 11 Case of MobiTV, Inc.

### 7.14    Winddown of MobiTV India

On or after the Effective Date, the Liquidation Trustee shall take such actions as are necessary or appropriate to winddown MobiTV India as expeditiously and efficiently as reasonably practicable, including the establishment of any winddown accounts or the retention of appropriate professionals.  The fees and expenses (including attorneys' and advisors' fees and expenses) incurred by the Liquidation Trustee for the winding-down of MobiTV India shall be paid first by MobiTV India, then the Liquidation Trust, in the ordinary course of business and shall not be subject to Bankruptcy Court approval; *provided, however*, any disputes related to such fees

and expenses should be brought before the Bankruptcy Court. After MobiTV India is wound-down, any remaining Cash or Assets of MobiTV India shall be transferred to the Liquidation Trust.

## ARTICLE VIII
## EXECUTORY CONTRACTS

### 8.01    Rejection of Executory Contracts

(a)    Except for any Executory Contracts of the Debtors: (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to, and remains pending as of, the Confirmation Date; or (iii) that were previously assumed and assigned to the Purchaser, each Executory Contract and Unexpired Lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Nothing herein is intended to affect the validity of contracts and leases entered into by the Debtors on or after the Petition Date, or the rights of the Debtors thereunder, which shall remain in full force and effect after the Effective Date in accordance with their terms.

(b)    The Insurance Policies shall not be considered Executory Contracts for purposes of subsection (a), above. As discussed in section 7.08, the Insurance Policies shall remain in full force and effect following the Effective Date.

### 8.02    Bar Date for Rejection Damages

If the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, Estates, or Liquidation Trust, unless a Proof of Claim is Filed with the Bankruptcy Court by the Rejection Damages Bar Date.

## ARTICLE IX
## PROVISIONS GOVERNING RESOLUTION OF
## CLAIMS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN

### 9.01    Claim Objections

(a)    **Right to Object to Claims.**

Notwithstanding anything to the contrary herein, notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Liquidation Trustee will have the authority, but not the obligation, to do any of the following with respect to any Claims or Interests: (1) File, withdraw or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

The Liquidation Trustee shall succeed to any pending objections to Claims Filed by the Debtors prior to the Effective Date, and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim.

### (b)    Claims Objection Deadline.

Objections to Claims must be Filed with the Bankruptcy Court and a copy of the objection must be served on the subject Creditor before the expiration of the Claims Objection Deadline; otherwise such Claims shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code. The objection shall notify the Creditor of the deadline for responding to such objection.

### (c)    Claim Estimation.

Pursuant to section 502(c) of the Bankruptcy Code, the Liquidation Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

### 9.02    Distribution Provisions

### (a)    Distributions to be Made.

The Liquidation Trustee shall be responsible for making Distributions required or permitted to be made under the Plan.

### (b)    Establishment of Reserves.

On the Effective Date, the Liquidation Trustee shall establish and maintain a Reserve of Cash from the Liquidation Trust Assets as the Liquidation Trustee deems reasonably necessary to satisfy any Disputed Claims and any Ordinary Course Liabilities, as well as for the Liquidation Trust Expense Reserve. Further, upon the Professional Fee Bar Date, the Liquidation Trustee shall establish a Reserve of Cash from the Liquidation Trust Assets in an amount that the Liquidation Trustee deems reasonably necessary to satisfy all Professional Fee Claims.

### (c)    Distribution Record Date.

As of 5:00 p.m. (Eastern Time) on the Distribution Record Date, the transfer registers for Claims shall be closed. The Liquidation Trustee shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those Holders who are Holders of Claims as of 5:00 p.m. (Eastern Time) on the Distribution Record Date. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (Eastern Time) on the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

(d)     **No Liability.**

The Liquidation Trustee shall only be required to make Distributions in accordance with the terms of the Plan. Except on account of gross negligence, fraud, illegality or willful misconduct, the Liquidation Trustee shall have no (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to it in accordance with the Plan, or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of the Plan.

(e)     **Distributions on Account of Disputed Claims.**

Except as otherwise provided in a Final Order or as agreed by the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidation Trustee at such periodic intervals as the Liquidation Trustee determines to be reasonably prudent.

(f)     **No Distributions Pending Allowance.**

Notwithstanding anything herein to the contrary: (a) no Distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Liquidation Trustee no Distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim until such Person's Disputed Claims have been resolved by settlement or Final Order.

(g)     **Distributions in Cash.**

Any required Cash payments to the Holders of Allowed Claims or Interests shall be made by the Liquidation Trustee: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a domestic bank, and (b) by first-class mail (or by other equivalent or superior means as determined by the Liquidation Trustee).

(h)     **Timing of Distributions.**

Except as specifically set forth in the Plan, the Liquidation Trustee may determine, in its discretion, the appropriate timing, amount, and cadence for Distributions.

(i)     **Unclaimed Distributions.**

Any entity which fails to claim any Cash within 90 days from the date upon which a Distribution is first made to such entity shall forfeit all rights to any Distribution under the Plan, and the Liquidation Trustee shall be authorized to cancel any Distribution that is not timely claimed. Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the source of such Distribution (*i.e.,* the Liquidation Trust or the applicable Reserve) free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules.  Upon forfeiture, the claim of any Creditor or Interest Holder with respect to such funds shall be irrevocably waived and forever barred against the all of the Debtors, the Estates, and the Liquidation Trustee, notwithstanding any federal or state escheat laws to the contrary, and such

33

Creditor or Interest Holder shall have no claim whatsoever against the any of the foregoing or to any Holder of a Claim to whom Distributions are made.

      **(j)**      **Delivery of Distributions and Undeliverable Distributions to Holders of Claims.**

      Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Liquidation Trustee, as set forth on the latest date of the following documents: (a) at the address of payment set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed; (b) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related Proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtors have not received a written notice of a change of address prior to the Effective Date.

      **(k)**      **Undeliverable Distributions.**

      The Liquidation Trustee shall make one attempt to make the Distributions contemplated hereunder in accordance with the procedures set forth herein. The Liquidation Trustee in its sole discretion may, but shall have no obligation to, attempt to locate Holders of undeliverable Distributions. Any Distributions returned to the Liquidation Trustee as undeliverable or otherwise shall remain in the possession of the Liquidation Trust, until such time as a Distribution becomes deliverable, and no further Distributions shall be made to such Holder unless such Holder notifies the Liquidation Trustee of its then current address. Any Holder of an Allowed Claim or Interest entitled to a Distribution of property under this Plan that does not assert a claim pursuant to the Plan for an undeliverable Distribution, or notify the Liquidation Trustee of such Holder's then current address, within 60 days of such Distribution shall have its claim for such undeliverable Distribution irrevocably waived and shall be forever barred from asserting any such claim against the Debtors, the Estates, and/or the Liquidation Trustee or their respective property, and such Distribution shall be deemed an Unclaimed Distribution under Section 9.02(i).

      **(l)**      **De Minimis Distributions.**

      If any interim distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may withhold such Distribution until a final Distribution is made to such Holder. If any final Distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may cancel such Distribution. Any potential Distributions pursuant to this Section shall be treated as an Unclaimed Distributions under Section 9.02(i) of the Plan.

(m)     **Remainder Amounts after final Distribution.**

After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and Undeliverable Distributions is less than $5,000, the Liquidation Trustee may donate such amount to Delaware Pro Se Bankruptcy Foundation or such other charitable organization as may be determined by the Liquidating Trustee in its sole discretion.

### 9.03    Preservation and Assignment of Subordination Rights

On the Effective Date, the rights, remedies, and benefits of the Prepetition Lender under each of the Subordination Agreements shall be deemed assigned to the Liquidation Trust without any further action by or on behalf of the Prepetition Lender, and nothing in this Combined Disclosure Statement and Plan shall reduce, waive, or diminish or otherwise affect the rights of the Holder of the Stipulated Deficiency Claim or any assignee thereof (including the Liquidation Trust), under the Subordination Agreements.  Except as may be provided for herein, all subordination rights and claims relating to the subordination by the Debtors or the Liquidation Trustee of any Allowed Claims shall remain valid, enforceable, and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

### 9.04    Prepetition Lender Deficiency Claim and Waiver of Other or Further Claims

On the Effective Date, the Prepetition Lender Deficiency Claim shall be deemed an Allowed General Unsecured Claim pursuant to section 502 of the Bankruptcy Code and shall not be subject to reconsideration, objection, reduction, increase, counterclaim, subordination, offset, or recoupment; *provided, however*, the Prepetition Lender shall not have, nor be entitled to, any additional or other Claims against the Debtors or their Estates, whether pursuant to section 503 of the Bankruptcy Code or otherwise; *provided*, *further*, that the Holder(s) of the Prepetition Lender Deficiency Claim shall be deemed to have assigned any right to receive Distribution from the Liquidation Trust on account of such Claim (including any Distribution that would otherwise be payable with respect to a claim junior to the Prepetition Lender Deficiency Claim under the Subordination Agreements), without any further action by or on behalf of the Prepetition Lender, to the Liquidation Trust (for the benefit of the Liquidation Trust beneficiaries other than the Holder(s) of any claim in connection with the Subordinated Notes, pursuant to and to the extent set forth in the Subordination Agreements), and such assignment and the Plan as a whole shall not reduce, waive, or diminish or otherwise affect the rights of the holder of the Stipulated Deficiency Claim or any assignee thereof (including the Liquidation Trust), under the Subordination Agreements, including with respect to the Subordination Agreements provisions regarding turnover from subordinated creditors, including Oak Investment and Rackspace, all of which are fully preserved.

## ARTICLE X
## RELEASES, INJUNCTION, AND RELATED PROVISIONS

### 10.01   Releases by Debtors

**As of the Effective Date, for good and valuable consideration, including the contributions of the Released Parties in facilitating the administration of these Chapter 11**

35

Cases and other actions contemplated by the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, the Released Parties are deemed forever released and discharged by the Debtors and Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Estates or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other entity, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, these Chapter 11 Cases, the Plan, the Disclosure Statement, or related agreements, instruments or other documents, including any rights or remedies under section 506 of the Bankruptcy Code, other than Claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, actual fraud or willful misconduct, as determined by a Final Order.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the releases herein which include by reference each of the related provisions and definitions contained herein.

### 10.02    Releases by Third Parties

To the extent allowed by applicable law, on, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Released Parties shall be forever released from any and all claims, obligations, actions, suits, rights, debts, accounts, Causes of Action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of facts or circumstances that existed as of or prior to the Effective Date, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise) which the Debtors, their Estates, Creditors or other persons receiving or who are entitled to receive Distributions under the Plan may have against any of them in any way related to these Chapter 11 Cases, the Debtors (or their predecessors), or any of their operations or businesses; *provided*, *however*, that the foregoing release is granted only by (a) Creditors who are unimpaired and (b) Creditors who voted to accept the Plan and did not check the opt-out box on the Ballot; *provided further*, *however* that the release provided in this Section shall not apply to any Creditor in category (b) above that does not receive a Distribution pursuant to Section 9.01(l) of this Plan; and *provided further*, *however*, that the release provided in this Section shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, or ultra vires acts under applicable law.

### 10.03    Exculpation and Limitation of Liability

**(a)      The Exculpated Parties will neither have nor incur any liability to any entity for any claims or Causes of Action arising on or after the Petition Date and prior to the Effective Date for any act taken or omitted to be taken in connection with, or related to (i) these Chapter 11 Cases, (ii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Combined Disclosure Statement and Plan, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan, (iii) any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, or (iv) the approval of the Combined Disclosure Statement and Plan or confirmation or Consummation of the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence, actual fraud, or willful misconduct.**

**(b)      The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.**

### 10.04    Injunction

(a)      FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

(b)      FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN SECTIONS 10.01 THROUGH 10.03 (INCLUSIVE), THE APPLICABLE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED UNDER THIS COMBINED DISCLOSURE STATEMENT AND PLAN.

(c)      EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN OR THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF SECTION 10.03, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE

37

FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

(d)    THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.

(e)    ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE LIQUIDATION TRUST, THE LIQUIDATION TRUSTEE, AND EACH OF THEIR RESPECTIVE ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.  NOTHING IN THIS SECTION 10.04 SHALL ENJOIN ANY CLAIM OR CAUSE OF ACTION THAT IS NOT RELEASED OR EXCULPATED PURSUANT TO SECTIONS 10.01 THROUGH 10.03 (INCLUSIVE) OF THIS PLAN. NOTWITHSTANDING ANY OTHER PROVISION OF THIS PLAN TO THE CONTRARY, THE DEBTORS SHALL NOT RECEIVE A DISCHARGE.

## ARTICLE XI
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### 11.01   Conditions Precedent to Confirmation

It shall be a condition to confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 11.03:

(a)    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Plan Proponents, approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

(b)    The Plan, the exhibits thereto, and the Confirmation Order shall be in a form and substance reasonably acceptable to the Plan Proponents.

## 11.02    Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 11.03.

(a)    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Plan Proponents confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(b)    All authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained.

(c)    No order of a court shall have been entered and remain in effect restraining the Debtors from consummating the Plan and the transactions contemplated therein, and the Confirmation Order shall be in full force and effect.

(d)    All actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws, and are in form and substance, acceptable to the Debtors.

## 11.03    Waiver of Conditions

The conditions to confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article XI may be waived at any time by each of the Plan Proponents.

## 11.04    Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest or any other entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Committee, any Creditors or Interest Holders or any other entity in any respect.

## 11.05    Filing of Notice of the Effective Date.

On the Effective Date or as shortly thereafter as reasonably practicable, the Debtors shall File a notice of the Effective Date with the Bankruptcy Court.

## ARTICLE XII
## MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN

### 12.01   Modification and Amendments

Except as otherwise specifically provided herein, the Plan Proponents reserve the right to modify the Plan as to material terms and seek confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend or modify materially the Plan with respect to any or all Debtors, one or more times, after confirmation and before the Effective Date, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; provided, however, that any alterations, amendments or modifications to the Plan, the Disclosure Statement and Confirmation Order must be consistent in all respects with the Settlements. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article and with the consent of both of the Plan Proponents. In addition, prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

### 12.02   Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 12.03   Revocation or Withdrawal of the Plan

The Plan Proponents reserve the right to revoke or withdraw the Plan before the Effective Date. If the Plan Proponents revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of any Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or Claims by any Debtor against any other entity; (b) prejudice in any manner the rights of such Debtor, the Committee, the Holder of any Claim or Interest or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, the Committee or any other entity.

## ARTICLE XIII
## JURISDICTION

### 13.01   Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over these Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)      To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b)      To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)      To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(d)      To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)      To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any Plan Documents or any entity's obligations in connection with the Plan or any Plan Documents, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)      To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, or the Liquidation Trustee;

(g)      To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, or the Estates that may be pending on the Effective Date or that may be brought by the Debtors or the Liquidation Trustee, or any other related proceedings by the Liquidation Trustee, and to enter and enforce any default judgment on any of the foregoing;

(h)      To decide or resolve any and all applications for compensation with respect to Professional Fee Claims;

(i)      To issue orders in aid of execution and implementation of the Plan or any Plan Documents to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)    To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or Consummation of the Plan or any Plan Documents;

(k)    To interpret and enforce any orders entered by the Bankruptcy Court in these Chapter 11 Cases;

(l)    To address issues and disputes related to the actions by the Liquidation Trustee or to the enforcement and interpretation of the Liquidation Trust Agreement; and

(m)    To enter an order closing these Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

### 13.02    Limitation on Jurisdiction

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents. For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

(a)    Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in accordance with 28 U.S.C. § 157(c) and any and all related proceedings, including, without limitation, (i) all proceedings concerning disputes with, or Causes of Action or Claims against, any Person that the Debtors, the Estates, or the Liquidation Trust or any of their successors or assigns, may have, and (ii) any and all Causes of Action or other Claims against any Person for harm to or with respect to (x) any Estate Property, including conversion of Estate Property, or (y) any Estate Property liened or transferred by the Debtors to any other Person;

(b)    Include jurisdiction over the recovery of any Estate Property (or property transferred by the Debtors with Bankruptcy Court approval) from any Person wrongly asserting ownership, possession or control of the same, whether pursuant to sections 542, 543, 549, and/or 550 of the Bankruptcy Code or otherwise, as well as to punish any violation of the automatic stay under section 362 of the Bankruptcy Code or any other legal rights of the Debtors or the Estates under or related to the Bankruptcy Code; and

(c)    Permit the taking of any default judgment against any Person who has submitted himself or herself to the jurisdiction of the Bankruptcy Court.

### ARTICLE XIV
### MISCELLANEOUS

### 14.01    Exemption from Taxes

The Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; and (b) the creation, execution and delivery of agreements or other documents creating or evidencing the

formation of the Liquidation Trust and any right or interest in the Liquidation Trust. Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 14.02   Compliance with Tax Requirements

Notwithstanding anything to the contrary in this Combined Disclosure Statement and Plan, the Liquidation Trust shall be entitled to deduct any federal, state or local withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate. The Liquidation Trust shall be authorized to take all actions necessary to comply with applicable withholding and reporting requirements, including, without limitation, applying a portion of any Distribution of Cash to be made under the Plan to pay applicable withholding Taxes. Any amounts withheld pursuant to the immediately preceding sentence will be deemed to have been Distributed and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution. The Liquidation Trustee shall have the right, but not the obligation, to not make a Distribution until the applicable recipient has made arrangements satisfactory to the Liquidation Trustee for the payment of any Tax obligations. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date, and the remaining portion of such Distributions, if any, will apply to any interest on such Claim after the Petition Date. The Liquidation Trustee shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation or certification as may be requested by the Liquidation Trustee as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Liquidation Trustee with an executed Form W- 9, Form W-8 or other requested tax form within 90 days after the date of the Liquidation Trustee's initial request, the Liquidation Trustee may, in its sole discretion (a) make such Distribution net of applicable withholding or (b) reserve such Distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, (ii) any such Distribution shall revert to the source of such Distribution (*i.e.,* the Liquidation Trust or the applicable Reserve), for Distribution on account of other Allowed Claims and (iii) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court. The Liquidation Trustee reserves the right to allocate and Distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

### 14.03   Defenses and Setoff

Nothing contained in this Combined Disclosure Statement and Plan shall constitute a waiver or release by the Debtors, their estates, or the Liquidation Trustee of any right rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Liquidation Trustee may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of

such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtors, the Estates, or the Liquidation Trustee may have against the Holder of such Claim or Interest.

### 14.04   Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

### 14.05   Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan or any Plan Document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 14.06   Transfer of Claims

Prior to the Effective Date, any transfer of a Claim shall be in accordance with Bankruptcy Rule 3001(e) and the terms of this Section. Notice of any such transfer shall be forwarded to counsel for the Debtors and the Liquidation Trustee. Both the transferee and transferor shall execute any notice, and the signatures of the parties shall be acknowledged before a notary public. The notice must clearly describe the interest in the Claim to be transferred. No transfer of a partial interest shall be allowed. All transfers must be of one hundred percent (100%) of the transferor's interest in the Claim.

The beneficial interests owned by the Liquidation Trust Beneficiaries, which shall be reflected only on the records of the Liquidation Trust maintained by the Liquidation Trustee, shall be uncertificated, non-negotiable, and neither assignable nor transferable voluntarily. In the case of a deceased individual Liquidation Trust Beneficiary, its executor or administrator shall succeed to such decedent's beneficial interest upon notice to the Liquidation Trustee.

### 14.07   Post-Effective Date Service List

Pursuant to Bankruptcy Rule 2002 and any applicable Local Rule, notice of all post-confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee, counsel to the Debtors, counsel for the Liquidation Trustee, all persons on the Bankruptcy Rule 2002 service list, and all persons (and their counsel, if known) whose rights are affected by such post-confirmation matters. With the exception of the Debtors and the U.S. Trustee, any Person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to File a request for continued service and to serve such request upon counsel to the Liquidation Trustee within thirty (30) days subsequent to the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. **Persons who do not File a request for continued service within thirty (30) days subsequent to the Effective Date shall be removed from the Debtors' Bankruptcy Rule 2002 service list.**

**14.08    Notices**

To be effective, any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to counsel to the Debtors, the Committee, and the U.S. Trustee must be sent by electronic mail, overnight delivery service, courier service, or messenger to:

> Debtors' Counsel:
> Debra I. Grassgreen (dgrassgreen@pszjlaw.com)
> Jason H. Rosell (jrosell@pszjlaw.com)
> Mary F. Caloway (mcaloway@pszjlaw.com)
> PACHULSKI STANG ZIEHL & JONES LLP
> 919 Market Street, 17th Floor | P.O. Box 8705
> Wilmington, Delaware  19899-8705
>
> Committee Counsel:
> Michael A. Sweet (msweet@foxrothschild.com)
> Gordon E. Gouveia (ggouveia@foxrothschild.com)
> Seth A. Niederman (sniederman@foxrothschild.com)
> FOX ROTHSCHILD LLP
> 919 N. Market Street, Suite 300
> Wilmington, Delaware 19899-2323

**14.09    Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidation Trust, any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts with one or more of the Debtors.

**14.10    Severability of Plan Provisions**

If, before the Effective Date of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Plan Proponents.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted

in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Plan Proponents' consent; and (iii) non-severable and mutually dependent.

### 14.11   Exhibits

All exhibits and documents attached hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan, to the extent not inconsistent with the Plan.  The Plan Proponents reserve the right to amend the Exhibits and schedules (if any) to the Plan any time prior to the Confirmation Date.

### 14.12   Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non- bankruptcy law, and pursuant to section 1125(e), the Plan Proponents and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, including, if applicable, in the offer, issuance, sale and purchase of any Plan securities (if any) provided under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan.

### 14.13   Conflicts

If there is a conflict between this Combined Disclosure Statement and Plan and an exhibit hereto, including the Liquidation Trust Agreement, the Combined Disclosure Statement and Plan shall govern and control, except for inconsistencies or clarifications in furtherance of the Liquidation Trust as a liquidating trust for federal income tax purposes, in which case the terms and/or provisions of the Liquidation Trust Agreement shall govern. If any provision of this Combined Disclosure Statement and Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

### 14.14   U.S. Trustee Fees

The Debtors will pay pre-confirmation fees owed to the U.S. Trustee on or before the Effective Date of the Plan. After the Effective Date, the Liquidation Trustee will File with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Liquidation Trustee will pay post-Effective Date quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

### 14.15   Implementation

The Debtors and the Liquidation Trsutee shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan and the Plan Documents, without further order from the Bankruptcy Court.

**14.16**  <u>**No Admissions**</u>

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtors, the Estates, or the Committee with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

*[Signature page follows]*

September 23, 2021

_/s/ Christopher Tennenbaum_
Christopher Tennenbaum,
Solely in his capacity as Chief Restructuring Officer of the
Debtors and Debtors in Possession

September 23, 2021

_/s/ Mark McGourty_
Name: Mark McGourty
Chairperson of the
Official Committee of Unsecured Creditors

Submitted by:

*Debtors' Counsel*

*/s/ Mary F. Caloway*
Debra I. Grassgreen (admitted pro hac vice)
Jason H. Rosell (admitted pro hac vice)
Mary F. Caloway (DE Bar No. 3059)
PACHULSKI STANG ZIEHL & JONES LLP
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware  19899-8705
Tel:  (302) 652-4100
Fax:  (302) 652-4400

        -and-

*Committee Counsel*

*/s/ Seth A. Niederman*
Michael A. Sweet (admitted pro hac vice)
Gordon E. Gouveia (admitted pro hac vice)
Seth A. Niederman (DE Bar No. 4588)
Fox Rothschild LLP
919 N. Market Street, Suite 300
Wilmington, Delaware 19899-2323
Tel:  (302) 654-7444
Fax: (302) 656-8920

# **Exhibit A**

*Definitions*

As used in the Plan, the following terms have the following meanings:

1.      **"503(b)(9) Claims"** shall mean Claims arising under section 503(b)(9) of the Bankruptcy Code against one or more of the Debtors that were Filed against one or more of the Debtors on or before the General Bar Date.

2.      **"Administrative Claim"** shall mean any right to payment constituting a cost or expense of administration of these Chapter 11 Cases as it relates to one of the Debtors under section 503(b) and 507(a)(2) of the Bankruptcy Code including, any actual and necessary costs and expenses of preserving the Debtors' Estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred by the Debtors after the Petition Date in connection with the conduct of its business, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under section 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code, all wages, salaries and health and other benefits on account of services rendered after the Petition Date, all post-Petition Date taxes, and all other claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court, in each case relating to the period from the Petition Date to the Effective Date but not beyond.

3.      **"Allowed"** shall mean all or a portion of a Claim against one of the Debtors or an Interest in the Debtors (a) that has been listed by one of the Debtors in its Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Claim or proof of Interest has been Filed, (b) for which a proof of claim has been Filed and as to which no Objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any Objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and one or more of the Debtors prior to the Effective Date, or the Liquidation Trustee on behalf of the Debtors Estates after the Effective Date or (iii) pursuant to the terms of this Combined Disclosure Statement and Plan. For purposes of computing Distributions under this Combined Disclosure Statement and Plan, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Combined Disclosure Statement and Plan. For the avoidance of doubt, any Claim that relates to obligations that were assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be an Allowed Claim for purposes of this Combined Disclosure Statement and Plan.

4.      **"Asset Purchase Agreement"** shall mean that certain *Asset Purchase Agreement* by and between the Debtors and the Purchaser dated as of May 12, 2021, including all schedules and exhibits thereto.

5.      **"Assets"** means all tangible and intangible assets of every kind and nature of the Debtors and their Estates within the meaning of section 541 of the Bankruptcy Code.

6.     **"Bankruptcy Code"** shall mean Title 11 of the United States Code and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

7.     **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

8.     "**Bankruptcy Rules"** shall mean, when referenced generally, (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of Title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedures for the United States Bankruptcy Court for the District of Delaware, and (iv) any standing orders governing practice and procedure issues by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases or proceedings therein, as the case may be; provided, however, when a specific Bankruptcy Rule is referenced (*e.g.*, Bankruptcy Rule 9019), such reference shall be to such Rule under the Federal Rules of Bankruptcy Procedure.

9.     **"Bar Date"** shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing proofs of Claim or proofs of Interest against one or more of the Debtors in these Chapter 11 Cases for that specific Claim or Interest.

10.     **"Bar Date Order"** shall mean the *Order (I) Setting Bar Dates for Fling Proofs of Claim Including Requests for Payment Under Section 503(b)(9), (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units, (III) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims, (IV) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (V) Approving the Form of and Manner for Filing Proofs of Claim, (VI) Approving Notice of Bar Dates, and (VII) Granting Related Relief* on April 27, 2021 at Docket No. 215.

11.     **"Bid Procedures Order"** means the *Order (A) Approving Bid Procedures for the Sale of Substantially All Assets of the Debtors; (B) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; and (D) Granting Related Relief* entered on April 7, 2021 at Docket No. 164.

12.     **"Business Day"** shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

13.     **"Cash"** or **"$"** shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

14.     **"Causes of Action"** shall mean any and all actions, suits, claims for relief, causes of action, including claims arising under chapter 5 of the Bankruptcy Code, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether arising prior to or after the Petition Date.

15.    **"Chapter 11 Cases"** shall mean the Debtors' chapter 11 cases, which are jointly administered under Case No. 21-10457 (LSS) in the Bankruptcy Court.

16.    **"Claim"** or **"Claims"** shall mean a claim or claims against one or more of the Debtors, as such term is defined in section 101(5) of the Bankruptcy Code.

17.    **"Claims Agent"** shall mean Bankruptcy Management Solutions, Inc., d/b/a Stretto, or any successor appointed by the Bankruptcy Court.

18.    **"Claims Objection Deadline"** shall mean one hundred eighty (180) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidation Trustee may File one or more motions with the Bankruptcy Court on notice and an opportunity for a hearing to extend such deadline from time to time.

19.    **"Class"** shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article IV of this Combined Disclosure Statement and Plan.

20.    **"Closing Date"** shall have the meaning ascribed to it in Section 2.01(e) herein.

21.    **"Combined Disclosure Statement and Plan"** shall mean this entire document and all exhibits, schedules and related documents, whether annexed hereto or Filed in connection herewith, including the Disclosure Statement portions and the Plan portions.

22.    **"Confirmation Date"** shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

23.    **"Confirmation Hearing"** shall mean the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

24.    **"Confirmation Order"** shall mean the order of the Bankruptcy Court (a) approving the adequacy of the information in the Combined Disclosure Statement and Plan pursuant to section 1125 of the Bankruptcy Code, and (b) confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

25.    **"Consummation"** shall mean the occurrence of the Effective Date.

26.    **"Contingent"** shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

27.    **"Committee"** shall mean the official committee of unsecured creditors appointed by the U.S. Trustee.

28.     **"Creditor"** shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

29.     **"CRO"** shall mean Chris Tennenbaum, solely in his capacity as the Debtors' Chief Restructuring Officer, or such successor Chief Restructuring Officer approved by the Bankruptcy Court.

30.     **"Debtors"** shall mean MobiTV, Inc. and MobiTV Service Corporation.

31.     **"DIP Facility"** shall mean that certain debtor in possession financing facility as evidenced by the DIP Financing Documents.

32.     "**DIP Financing Documents"** shall mean the underlying secured credit agreement together with any other related agreements, amendments, supplements, documents, security agreements, pledge agreements, and intercreditor agreements between the Debtors and the DIP Lender approved by the Bankruptcy Court on an interim basis on March 3, 2021 [Docket No. 64], and on a final basis on April 27, 2021 [Docket No. 213].

33.     **"DIP Lender"** shall mean TVN Ventures, LLC.

34.     **"DIP Motion"** shall mean the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Secured Postpetition Financing; (II) Authorizing the Use of Cash Collateral; (III) Granting (A) Liens and Superpriority Administrative Expense Claims, and (B) Adequate Protection to the Prepetition Lender; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* filed on the March 2, 2021 at Docket No. 13.

35.     **"Disallowed"** shall mean with respect to any Claim or Interest or portion thereof, any Claim against or Interest in one or more of the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtors or the Liquidation Trust, whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, Contingent or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) is evidenced by a proof of Claim or a proof of Interest which has been File, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (viii) where the Holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim or a Disallowed Interest is

Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

36.    **"Disallowed Claim"** shall mean a Claim, or any portion thereof, that is Disallowed.

37.    **"Disallowed Interest"** shall mean an Interest, or any portion thereof, that is Disallowed.

38.    **"Disbursing Agent"** shall mean the Liquidation Trustee or any third party designated by the Liquidation Trustee to act as Disbursing Agent.

39.    **"Disclosure Statement"** shall mean the disclosure statement, as amended, supplemented or modified from time to time, that is embodied within this Combined Disclosure Statement and Plan and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

40.    **"Disputed"** shall mean any Claim or Interest which has not yet been Allowed or Disallowed in accordance with the terms of this Combined Disclosure Statement and Plan.

41.    **"Disputed Claims"** shall mean any Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Secured Claims.

42.    **"Distributable Cash"** shall mean the Cash remaining in the Liquidation Trust following the payment of Professional Fee Claims, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, and Liquidation Trust Expenses.

43.    **"Distribution"** shall mean any distribution made pursuant to the Plan by the Liquidation Trustee or another Entity acting as the Disbursing Agent, to the Holders of Allowed Claims.

44.    **"Distribution Date"** shall mean the date on which a Distribution is made pursuant to this Combined Disclosure Statement and Plan.

45.    **"Distribution Record Date"** shall mean the date established for determining the Holders of Allows Claims or Allowed Interests entitled to Distributions pursuant to the Plan, which shall be the Confirmation Date.

46.    **"Effective Date"** shall mean the first Business Day after the later of the date on which (a) all conditions in Article XI of this Combined Disclosure Statement and Plan have been satisfied or waived in accordance with that Article and (b) no stay of the Confirmation Order is in effect.

47.    **"Entity"** shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

48.    **"Estate"** or **"Estates"** shall mean one or more estate of the Debtors created pursuant to section 541 of the Bankruptcy Code.

49.     **"Exculpated Parties"** shall mean as of the Petition Date through the date of the closing of these Chapter 11 Cases (and in the event that these Chapter 11 Cases are closed and subsequently reopened, during such time as these Chapter 11 Cases are reopened): (i) the Debtors, (ii) the Debtors' directors and officers, (iii) the Committee, and (iv) in the case of (i) – (iii), each of their respective Representatives, and in the case of the Committee, each of its members (each solely in such capacity); *provided, however,* that with respect to any Person identified herein, such Person shall be considered an Exculpated Party solely to the extent that such Person participated in actions to which section 1125(e) of the Bankruptcy Code applies.

50.     **"Executory Contract"** shall mean a contract or lease to which one of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

51.     **"File," "Filed,"** or **"Filing"** shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Case; provided, however, that with respect to proofs of Claim and proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by the Bar Date Order or as otherwise established by order of the Bankruptcy Court.

52.     **"Final Administrative Claims Bar Date"** means the date that is 30 days after the Effective Date, which shall be the deadline for Filing requests for payment of Administrative Claims that arose after the Closing Date.

53.     **"Final Order"** shall mean an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Liquidation Trustee on behalf of the Estates (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under rule 59 or rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

54.     **"Final DIP Order"** shall mean the *Final Order (I) Authorizing the Debtor to Obtain Secured Postpetition Financing; (II) Authorizing the Use of Cash Collateral; (III) Granting (A) Liens and Superpriority Administrative Expense Claims, and (B) Adequate Protection to Prepetition Lender; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* entered on April 27, 201 at Docket No. 213.

55.     **"FTI"** shall mean FTI Consulting, Inc. and/or its affiliates.

56.    **"General Bar Date"** shall mean June 15, 2021 at 5:00 p.m. (Eastern Time) for certain Claims arising before the Petition Date, including 503(b)(9) Claims, Secured Claims, General Unsecured Claims, or Priority Non-Tax Claims as established by the Bar Date Order.

57.    **"General Unsecured Claim"** shall mean any unsecured Claim against the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not: (i) an Administrative Claim, (ii) a Priority Tax Claim, (iii) a Secured Claim, (iv) a Priority Non-Tax Claim, or (v) an Intercompany Claim.

58.    **"Governmental Unit"** shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

59.    **"Governmental Unit Bar Date"** shall mean August 30, 2021 at 5:00 p.m. (Eastern Time) as established by the Bar Date Order.

60.    **"Holder"** or **"Holders"** shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

61.    **"Impaired"** shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

62.    **"Impaired Class"** shall mean a Class of Claims or Interests that is Impaired.

63.    **"Interim DIP Order"** shall mean the *Interim Order (I) Authorizing the Debtor to Obtain Secured Postpetition Financing; (II) Authorizing the Use of Cash Collateral; (III) Granting (A) Liens and Superpriority Administrative Expense Claims, and (B) Adequate Protection to Prepetition Lender; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* entered on March 3, 201 at Docket No. 64.

64.    **"Insider"** shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

65.    **"Insurance Policies"** shall mean all insurance policies that have been issued to, or provide coverage at, any of the Debtors and all agreements, instruments, or documents relating thereto.

66.    **"Intercompany Claim"** shall mean (i) any account reflecting intercompany book entries by one Debtor with respect to another Debtor or non-Debtor affiliate, including MobiTV India, or (ii) any Claim that is not reflected in such book entries and is held by a Debtor against the other Debtor, in each case accruing before or after the Petition Date through the Effective Date, including, but not limited to, any Claim for reimbursement, payment as guarantor or surety, or any Claim for contribution or expenses that were allocable between the one or more of the Debtors.

67.    **"Interests"** shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited

liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

68.    **"IRS"** shall mean the Internal Revenue Service.

69.    **"Liquidation Analysis"** shall mean that certain liquidation analysis, as may be amended, modified or supplemented, attached to this Combined Disclosure Statement and Plan as <u>Exhibit B</u>.

70.    **"Liquidation Trust"** shall mean the trust established under the Plan and the Liquidation Trust Agreement.

71.    "**Liquidation Trust Agreement**" means the trust agreement that establishes the Distribution Trust and governs the powers, duties, and responsibilities of the Liquidation Trustee. The Liquidation Trust Agreement is attached hereto as <u>Exhibit C</u>.

72.    **"Liquidation Trust Assets"** shall mean all Assets, including Causes of Action, of the Estates as of the Effective Date.

73.    **"Liquidation Trust Beneficiaries"** shall mean the Holders of all Allowed General Unsecured Claims.

74.    "**Liquidation Trust Expenses**" shall mean the reasonable fees, costs and expenses of the Liquidation Trusts' retained professionals, as determined in the reasonable discretion of the Liquidation Trustee. For the avoidance of doubt, U.S. Trustee Fees shall be considered a Trust Expense.

75.    "**Liquidation Trust Expense Reserve**" shall mean the reserve established pursuant to Section 9.02 of this Combined Disclosure Statement and Plan for payment of the actual and projected costs and expenses of the Liquidation Trust, which may be replenished or adjusted from time to time for Cash held by the Liquidation Trust, other than funds in the other Reserves.

76.    **"Liquidation Trustee"** shall mean E. Lynn Schoenmann, solely in her capacity as Liquidation Trustee of the Liquidation Trust pursuant to the terms and conditions of this Combined Disclosure Statement and Plan and the Liquidation Trust Agreement.

77.    "**Local Rules**" shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

78.    **"MobiTV"** shall mean Debtor MobiTV, Inc.

79.    **"MobiTV India"** shall mean non-Debtor affiliate MobiTV India Services Private Limited.

80.    **"MobiTV Services"** shall mean Debtor MobiTV Services Corporation.

81.    **"Non-Subordinated General Unsecured Claims"** means General Unsecured Claims other than on account of the Prepetition Lender Deficiency Claim, Oak Investment Subordinated Notes, and Rackspace Subordinated Notes.

82.    **"Oak Investment"** shall mean Oak Investment Partners XII, Limited Partnership.

83.    **"Oak Investment Subordination Agreement"** shall mean that certain *Subordination Agreement*, dated as of August 6, 2020, by and between Oak Investment and the Prepetition Lender.

84.    **"Oak Investment Subordinated Notes"** shall mean those certain *Subordinated Convertible Promissory Notes* by and between MobiTV and Oak Investment dated on August 6, 2020, December 14, 2020, and December 30, 2020.

85.    "**Objection(s)**" shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

86.    **"Ordinary Course Liabilities"** shall mean those obligations incurred in the ordinary course of business by one or more of the Debtors following the Petition Date.

87.    "**Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

88.    "**Petition Date**" shall mean March 1, 2021, the date on which the Debtors commenced these Chapter 11 Cases in the Bankruptcy Court.

89.    "**Plan**" shall mean that portion of this Combined Disclosure Statement and Plan that specifies the classification, treatment, and means for implantation of the distribution to certain Creditors under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules.

90.    "**Plan Proponents**" shall mean the Debtors and the Committee.

91.    **"Post-Confirmation Committee"** shall mean the Liquidation Trust advisory board established on the Effective Date, pursuant to the Liquidation Trust Agreement.

92.    **"Prepetition Lender"** shall mean Ally Bank.

93.    **"Prepetition Lender Deficiency Claim"** shall mean the Stipulated Deficiency Claim, as such term is defined in the Prepetition Lender Settlement.

94.     **"Prepetition Lender Settlement"** shall mean the settlement by and among the Debtors, the Committee, and the Prepetition Lender, as evidenced by that certain *Settlement and Plan Support Agreement*, dated as of June 21, 2021 and attached as Exhibit 1 to the order approving the Prepetition Lender Settlement Motion.

95.     **"Prepetition Lender Settlement Motion"** shall mean the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Rule 9019, for Approval of a Settlement and Plan Support Agreement with Ally Bank* filed on June 24, 2021 at Docket No. 354.

96.     **"Prepetition Loan"** shall mean the prepetition secured loan as evidenced by the Prepetition Loan Documents.

97.     **"Prepetition Loan Documents"** shall mean that certain *Loan and Security Agreement*, dated as of February 3, 2017 collectively, with any amendments, supplements, and related agreements and documents evidencing the Prepetition Loan.

98.     **"Priority Non-Tax Claim"** shall mean any and all Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

99.     **"Priority Tax Claim"** shall mean a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

100.     **"Pro Rata"** shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan, as applicable.

101.     **"Professional"** shall mean any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328 or 1103, or for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

102.     **"Professional Fee Bar Date"** shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be thirty (30) days after the Effective Date.

103.     **"Professional Fee Claims"** shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

104.     **"Purchaser"** shall mean TiVo Corporation and TiVo Platform Technologies, LLC, as applicable.

105.     **"Rackspace"** shall mean Rackspace International Holdings, Inc.

106. **"Rackspace Subordination Agreement"** shall mean that certain *Subordination Agreement*, dated as of October 9, 2020, by and between Rackspace and the Prepetition Lender.

107. **"Rackspace Subordinated Note"** shall mean that certain *Subordinated Convertible Promissory Note* between MobiTV and Rackspace dated October 9, 2020.

108. **"Rejection Claim"** shall mean any Claim for amounts due as a result of the rejection by one of the Debtors of any Executory Contract under section 365 of the Bankruptcy Code.

109. **"Rejection Damages Bar Date"** shall mean the deadline by which a counterparty to an Executory Contract of the Debtor rejected under this Combined Disclosure Statement and Plan must File Rejection Claim and shall be 5:00 p.m. (Eastern Time) on the date that is 30 days following service of an order approving rejection of any Executory Contract of one of the Debtors.

110. **"Released Causes of Action"** shall mean those causes of action of the Estates that were released pursuant to the Sale Order, Asset Purchase Agreement, T-Mobile Settlement, Prepetition Lender Settlement, and/or Final DIP Order.

111. **"Released Party"** shall mean each of the following in their respective capacity as such: (a) the Debtors and (b) the Estates; and with respect to each of the foregoing Persons in clauses (a) and (b), such Person's Representatives, each in their capacities as such.

112. **"Representatives"** shall mean with respect to an Entity, all of that Entity's current and former managed and controlled affiliates, subsidiaries, officers, directors, managers, managing members, principals, shareholders, members, partners, employees, agents, advisors, attorneys, professionals, accountants, investment bankers, consultants and other representatives and such Person's respective heirs, executors, estates, servants and nominees, in each case in their capacity as such.

113. **"Reserves"** shall mean, collectively, the Reserves established by the Liquidation Trustee pursuant to Section 9.02 of the Plan.

114. **"Retained Assets"** shall mean all of the Debtor's Cash and other Assets existing on the Effective Date.

115. **"Sale"** shall mean the sale of substantially all of the Debtors' Assets to the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

116. **"Sale Documents"** shall mean the Purchase Agreement, the Sale Order, and all documents, instruments, and agreements executed and delivered in connection with the consummation of the transactions contemplated by the Purchase Agreement.

117. **"Sale Motion"** shall mean the *Motion for (I) an Order (A) Approving Bid Procedures for the Sale of Substantially All Assets of the Debtors; (B) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; and (D) Granting Related Relief; and (II) an Order (A) Approving*

*the Sale of the Debtors' Assets Free and Clear of All Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases* Filed on March 8, 2021 at Docket No. 73.

118.    "**Sale Order**" shall mean the *an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases* Filed on May 21, 2021 at Docket No. 292.

119.    "**Schedules**" shall mean the schedules of Assets and Liabilities, schedules of Executory Contracts and Statements of Financial Affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time, which were filed on March 29, 2021 at Docket Nos. 129-132.

120.    "**Secured Claim**" shall mean, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of one or more of the Debtors in and to property of the Estate, to the extent of the value of the Holder's interest in such property as of the Petition date, or (b) Allowed as such pursuant to the terms of this Combined Disclosure Statement and Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the one or more of the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

121.    "**Solicitation Procedures Order**" shall mean the Court's *Order (I) Approving on an Interim Basis the Adequacy of Disclosures in the Combined Plan and Disclosure Statement, (II) Fixing Voting Record Date, (III) Scheduling the Confirmation Hearing and Approving Form and Manner of Related Notice and Objection procedures Deadline for Filing Objections, (IV) Approving Solicitation Packages and Procedures and Deadlines for Soliciting, Receiving, and Tabulating Votes to Accept or Reject the Combined Plan and Disclosure Statement, and (V) Approving Form of Ballot and Notice to Non-Voting Classes*, including all exhibits thereto, entered on August 10, 2021 at Docket No. 438.

122.    "**Subordinated General Unsecured Claims**" means General Unsecured Claims on account of the Prepetition Lender Deficiency Claim, Oak Investment Subordinated Notes, and Rackspace Subordinated Notes.

123.    "**Subordinated Note Parties**" shall mean Oak Investment and Rackspace.

124.    "**Subordinated Notes**" shall mean, collectively, the Rackspace Subordinated Note and the Oak Investment Subordinated Notes.

125.    "**Subordination Agreements**" shall mean, collectively, the Rackspace Subordination Agreement and the Oak Investment Subordination Agreement.

126. **"TMO Master Service Agreement"** shall mean that certain *Master Agreement*, dated as of November 6, 2019 by and between T-Mobile and MobiTV, as may have been amended and supplemented from time to time, together with all related statements of work in connection therewith.

127. **"T-Mobile"** shall mean T-Mobile USA, Inc.

128. **"T-Mobile Parties**" shall mean, collectively, T-Mobile, the DIP Lender, and Sprint/United Management Company.

129. **"T-Mobile Settlement"** shall mean the settlement by and among the Debtors, the T-Mobile Parties, and the Committee, as evidenced by the *Settlement Agreement* attached as Exhibit A to the T-Mobile Settlement Motion.

130. **"T-Mobile Settlement Motion"** shall mean *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors, Pursuant to Fed. R. Bankr. P. 9019, for Entry of an Order Approving T-Mobile Settlement Agreement* filed on April 20, 2021 at Docket No. 189.

131. **"Tax**" or **"Taxes**" shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

132. **"Third Party Release**" shall mean the voluntary releases to be granted pursuant to the Plan as set forth in Section 10.02 hereof.

133. **"TVision"** shall mean that certain internet protocol streaming television services provided by the Debtors to the T-Mobile Parties, branded as "TVision".

134. **"Unclaimed Distributions**" shall mean any undeliverable or unclaimed Distributions.

135. **"Unimpaired**" shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

136. **"Unimpaired Class**" shall mean a Class of Claims that are not impaired within the meaning of section 1124 of the Bankruptcy Code.

137. **"U.S. Trustee**" shall mean the office of the United States Trustee for the District of Delaware.

138. **"U.S. Trustee Fees**" shall mean all fees payable pursuant to 28 U.S.C. § 1930 and any interest thereon pursuant to 31 U.S.C. § 3717.

139. **"Voting Agent"** shall mean Bankruptcy Management Solutions, Inc. d/b/a Stretto or any successor appointed by the Bankruptcy Court.

140.    "**Voting Deadline**" shall mean September 13, 2021, at 4:00 p.m. (Eastern Time), the date and time by which ballots to accept or reject the Plan must be received by the Voting Agent in order to be counted, as set forth by the Solicitation Procedures Order.

# **Exhibit B**

*Liquidation Analysis*

<u>**LIQUIDATION ANALYSIS**</u>

*Projected as of August 31, 2021*

---

**NOTHING CONTAINED IN THE FOLLOWING LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THESE CHAPTER 11 CASES COULD DIFFER MATERIALLY FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.**

---

<u>**Introduction**</u>

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to confirmation of the Plan, that each Holder of a Claim or Interest in each Impaired Class: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  To make these findings, the Bankruptcy Court must: (1) estimate the Cash proceeds that a chapter 7 trustee would generate if each Chapter 11 Case was converted to a chapter 7 case on the Effective Date and the Assets of such estate were liquidated; (2) determine the distribution that each non-accepting Holder of a Claim or Interest would receive from the net estimated liquidation proceeds under the priority scheme dictated in chapter 7; and (3) compare each Holder's estimated recovery under liquidation to the distribution under the Plan that such Holder would receive if the Plan were confirmed and consummated.

Based on the following hypothetical Liquidation Analysis, the Debtors believe that the Plan satisfies the best interests test and that each Holder of an Impaired Claim or Interest will receive value under the Plan on the Effective Date that is not less than the value such Holder would receive if the Debtors liquidated under chapter 7 of the Bankruptcy Code.  The Debtors believe that this Liquidation Analysis and the conclusions set forth herein are fair and represent management's best judgment regarding the results of a liquidation of the Debtors under chapter 7 of the Bankruptcy Code taking into account various factors, including the additional costs of a chapter 7 trustee and its counsel.  This Liquidation Analysis was prepared for the sole purpose of assisting the Bankruptcy Court and Holders of Impaired Claims or Interests in making this determination, and should not be used for any other purpose.  Nothing contained in this Liquidation Analysis is intended as or constitutes a concession or admission for any purpose other than the presentation of a hypothetical Liquidation Analysis for purposes of the best interests test.  Accordingly, asset values discussed herein may be different than amounts referred to in the Plan.  This Liquidation Analysis is based upon certain assumptions discussed herein and in the Combined Disclosure Statement and Plan.

<u>**Significant Assumptions**</u>

This Liquidation Analysis was prepared by FTI in connection with FTI's representation of the Debtors in these Chapter 11 Cases and for use in this Combined Disclosure Statement and Plan.  This Liquidation Analysis assumes that the liquidation of the Debtors would commence on or about August 31, 2021 (the "<u>Conversion Date</u>") under the direction of a chapter 7 trustee and would continue for a period of approximately six months, during which time the chapter 7 trustee would reconcile claim amounts with historical records, oversee the collection of outstanding accounts receivable, and oversee the final reconciliation and payment of any outstanding Administrative Claims.  Upon completion of these tasks, any remaining Cash would then be distributed to creditors in accordance with the priority scheme

established under the Bankruptcy Code. The Debtors expect any chapter 7 trustee to retain professionals to assist in the liquidation of the Estates.

For the avoidance of doubt, the vast majority of the value of the Estates is derived from Cash on the Debtors' balance sheet. Accordingly, there would be minimal "liquidation of assets" activities prior to moving on directly to claims analysis and distribution of value to creditors in accordance with the priorities established under the Bankruptcy Code.

The Plan is based in part on the Prepetition Lender Settlement. Pursuant to the Prepetition Lender Settlement, the Prepetition Lender agreed to, among other things, effectively waive its approximate $11 million deficiency claim. For purposes of this Liquidation Analysis, the Debtors assume the terms of the Prepetition Lender Settlement are not enforceable upon conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

This Liquidation Analysis was prepared on a consolidated basis for all Debtors. The liquidation of the Debtors' Assets is based on projected book values as of the Conversion Date, unless noted otherwise.

The statements in this Liquidation Analysis, including estimates of Allowed Claims, were prepared solely to assist the Bankruptcy Court in making the findings required under section 1129(a)(7) of the Bankruptcy Code and they may not be used or relied upon for any other purpose.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WILL NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

ADDITIONALLY, THE VALUE RANGE ASCRIBED IN THIS DISCLOSURE STATEMENT TO THE PLAN CONSIDERATION TO BE DISTRIBUTED TO CREDITORS DOES NOT PURPORT TO REFLECT OR CONSTITUTE AN APPRAISAL, NOR IS IT INTENDED TO BE AN ESTIMATE OF THE VALUE OF THE DEBTORS' BUSINESS AND ASSETS.

**Summary Notes to Liquidation Analysis**

1. *Dependence on assumptions.* This Liquidation Analysis is based on a number of estimates and assumptions that are inherently subject to significant economic, business, regulatory, and competitive uncertainties and contingencies beyond the control of the Debtors. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such liquidation and actual results could vary materially and adversely from those contained herein.

2. *Additional claims in a liquidation.* The liquidation itself may trigger certain obligations and priority payments that otherwise would not be due in the ordinary course of business or would otherwise not exist under the Plan. These priority payments would be made in full before any distribution of proceeds to Holders of General Unsecured Claims or Interests. As discussed above, this Liquidation Analysis assumes the terms of the Prepetition Lender Settlement are not available in a chapter 7 liquidation. Accordingly, a conversion to chapter 7 may subject the chapter 7 estates to additional claims.

3. *Litigation claims.* This Liquidation Analysis does not attribute any value to potential litigation claims that may belong to the Estates, including any claims to recover potentially avoidable preferential and/or fraudulent transfers (if any).

4. *Dependence on a forecasted Cash balance.* This Liquidation Analysis is dependent on a forecasted Cash balance after payment of Administrative Claims and the Debtors' current best estimates with respect to such forecasted balance based on the Debtors' current legal and financial review. Forecasted balances could vary materially from the Debtors' estimates.

5. *Chapter 7 liquidation costs.* It is assumed that a period of six months would be required to complete the liquidation or wind-down of the Debtors' Estates. The fees and operating expenses incurred during the chapter 7 process are included in the estimate of Operating and Recovery Expense.

6. *Claim estimates.* Claims are estimated at the Conversion Date based on the Debtors' current projections. When Claims could not be projected, liabilities as of February 28, 2021 were used.

**Conclusion: The Debtors have determined, as summarized in the following analysis, that confirmation of the Plan will provide all Impaired Holders of Claims or Interests with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.**

**Detailed Assumptions**

| All values in thousands | Chapter 11 | | Chapter 7 | |
|---|---|---|---|---|
| | High | Low | High | Low |
| **Proceeds of Realization[1]** | $ 4,000 | $ 3,500 | $ 4,000 | $ 3,500 |
| | | | | |
| *Estimated Expenses of Liquidating Trust:* | | | | |
| Trustee Fee[2] | $ (143) | $ (128) | $ (143) | $ (128) |
| Operating and Recovery Expense[3] | (300) | (300) | (450) | (450) |
| | | | | |
| *Estimated Claims and Reserves Before General Unsecured Claims ("GUC"):* | | | | |
| No Class - Administrative Claims[4] | $ - | $ - | $ - | $ - |
| No Class - Priority Tax Claims[5] | (616) | (691) | (616) | (691) |
| Class 1 - Secured Claims[6] | - | - | - | - |
| Class 2 - Priority Non-Tax Claims[7] | - | - | - | - |
| **Total Estimated Claims Before GUC[8]** | $ (616) | $ (691) | $ (616) | $ (691) |
| | | | | |
| **Remaining Proceeds for GUC - Class 3** | $ 3,384 | $ 2,809 | $ 3,384 | $ 2,809 |
| | | | | |
| **Total Estimated GUC - Class 3[9]** | $ 14,400 | $ 23,800 | $ 35,000 | $ 44,400 |
| *Estimated Recovery for GUC (%)* | 23.5% | 11.8% | 9.7% | 6.3% |

**Estimated Recovery by Creditor Class:**

1) <u>Proceeds of Realization</u>: The Debtors estimated Cash after collection of outstanding receivables and payout of all pre-confirmation accrued and unpaid expenses (*e.g.*, professional fees, postpetition payables, etc.) as of August 31, 2021.  A range is provided based on an estimate of outstanding receivables to be collected.

2) <u>Trustee Fees</u>:  This Liquidation Analysis assumes that a chapter 7 trustee would be compensated in accordance with the guidelines of section 326 of the Bankruptcy Code. Chapter 7 and chapter 11 trustee fees are expected to be equivalent.

3) <u>Operating Expenses and Professional Fees</u>:  Operating expenses incurred during the liquidation period were estimated for the six months following the Conversion Date.  Operating expenses consist primarily of liquidation expenses including payroll and record retention.  Legal and financial professionals are expected to assist the trustee throughout the liquidation period. Estimates also assume that a chapter 7 Trustee hires its own counsel and other professionals and will incur costs and time to get up to speed. There may be incremental costs to pursue litigation, which are not included in this analysis.

4) <u>Administrative Claims</u>: For purposes of this Liquidation Analysis, the Proceeds for Realization is net of any chapter 11 Administrative Claims.  Accordingly, the balance of chapter 11 Administrative Claims is $0 under a chapter 11 or chapter 7 scenario.

5) <u>Priority Tax Claims</u>: For both the chapter 7 and chapter 11 scenarios, the Debtors estimate Priority Tax Claims based on scheduled claims in High recovery scenarios.  Incremental Priority Tax Claims yet to be reconciled are shown as incremental in Low recovery scenarios.

6) <u>Class 1 – Secured Claims</u>: For both the chapter 7 and chapter 11 scenarios, Secured Claims are assumed to have been partially or completely satisfied through sale proceeds, letters of credit, or collection of physical collateral.

7) <u>Class 2 – Priority Non-Tax Claims</u>: Priority Non-Tax Claims related to employee paid time off were either assumed by the Purchaser or paid as part of final payroll for terminated employees. Accordingly, Debtors estimate there are no Priority Non-Tax Claims.

8) <u>Total Estimated Claims</u>: Estimated claims are based on scheduled and filed Claims as of the General Bar Date (6/15/2021), plus estimates for additional claims. Estimated claim amounts may change as the Governmental Unit Bar Date has not yet occurred and Rejection Claims may be filed.

9) <u>Class 3 – Total Estimated General Unsecured Claims</u>: The chapter 11 scenario assumes the Prepetition Lender Settlement, in which the Prepetition Lender Deficiency Claim is effectively waived, is not available in a chapter 7 case.

**<u>Conclusion</u>**

Based on the assumptions outlined above, the Debtors project $3.5 million to $4.0 million in liquidation proceeds. After estimated Administrative Claims, Priority Tax Claims, Secured Claims, and Priority Non-Tax Claims are paid, the recovery to Holders of General Unsecured Claims is estimated to range from $2.8 million to $3.4 million, or a recovery rate of 12% to 24% under chapter 11 or 6% to 10% under chapter 7.

# Exhibit C

*Liquidation Trust Agreement*

# LIQUIDATION TRUST AGREEMENT

## PREAMBLE

This Liquidation Trust Agreement, dated as of September __, 2021 (the "**Agreement**"), which pertains to the administration of this MobiTV Liquidation Trust (the "**Liquidation Trust**"), is made effective as of the Effective Date[1] of the Plan, by and among MobiTV, Inc., and its affiliated debtors and debtors-in-possession (together, the "**Debtors**") and E. Lynn Schoenmann, not individually, but solely in its capacity as trustee (the "**Liquidation Trustee**" and together with the Debtors, the "**Parties**") in accordance with the *First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* (including all exhibits thereto, as the same may be further amended, modified, or supplemented from time to time, the "**Plan**") jointly filed by the Debtors and the Official Committee of Unsecured Creditors (the "**Committee**"), and such Plan having been confirmed pursuant to the entry of the Confirmation Order.

## RECITALS

A.      On March 1, 2021 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), thereby commencing their chapter 11 cases (together, the "**Chapter 11 Cases**").

B.      On July 20, 2021, the Debtors filed the Plan.

C.      Among other things, the Plan provides for the creation of a post-confirmation Liquidation Trust to hold and administer certain Liquidation Trust Assets, and distribute the proceeds therefrom to the Holders of certain Allowed Claims, in accordance with the terms of this Agreement and the Plan.  This Agreement is executed to establish the Liquidation Trust and to facilitate the implementation of the Plan.

D.      The Liquidation Trust is created on behalf of, and for the benefit of, the Liquidation Trust Beneficiaries.

E.      The respective powers, authority, responsibilities, and duties of the Liquidation Trustee shall be governed by this Agreement, the Plan, the Confirmation Order, other applicable orders issued by the Bankruptcy Court and, with respect to the Liquidation Trustee only, any obligations under Delaware law.

F.      This Agreement is intended to supplement, complement, and implement the Plan. If any of the terms and/or provisions of this Agreement are inconsistent with the terms and/or provisions of the Plan, then the Plan shall govern except for inconsistencies or clarifications in furtherance of the Liquidation Trust as a liquidating trust for federal income tax purposes, in which case the terms and/or provisions of this Liquidation Trust shall govern.

---

[1]     A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

G.    The Liquidation Trust is intended to qualify as a "liquidating trust" under the United States Internal Revenue Code of 1986 and the Treasury Regulations promulgated thereunder, specifically Treasury Regulation section 301.7701-4(d), and as such is a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as the grantors and owners of the Liquidation Trust.  In particular, as specified in Revenue Procedure 94-95, 1994-2 C.B. 684 (July 11, 1994):

<ol type="a">
<li>The Liquidation Trust is organized for the primary purpose of liquidating the Liquidation Trust Assets, with no objective to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidation Trust.  The Liquidation Trust shall not be deemed a successor of the Debtors or their Estates;</li>

<li>This Agreement provides that the Liquidation Trust Beneficiaries will be treated as the grantors of the Liquidation Trust and deemed owners of the Liquidation Trust Assets, and further, requires the Liquidation Trustee to file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a);</li>

<li>This Agreement provides for consistent valuations of the transferred property by the Liquidation Trustee and the Liquidation Trust Beneficiaries, and those valuations shall be used for all federal income tax purposes;</li>

<li>All of the Liquidation Trust's income is to be and will be treated as subject to tax on a current basis to the Liquidation Trust Beneficiaries who will be responsible for payment of any tax due;</li>

<li>This Liquidation Trust contains a fixed or determinable termination date in that it will terminate as soon as practicable at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidation Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made, and (v) the Chapter 11 Cases have been closed; *provided*, *however*, that, notwithstanding the foregoing, the Liquidation Trust shall be dissolved no later than two (2) years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the second anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a Liquidation trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets;</li>
</ol>

2

(f)    The investment powers of the Liquidation Trustee, other than those reasonably necessary to maintain the value of the Liquidation Trust Assets and to further the liquidating purpose of the Liquidation Trust, are limited to powers to invest in Permissible Investments (as defined herein); and

(g)    The Liquidation Trustee is required to distribute, within thirty (30) days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, to the Liquidation Trust Beneficiaries the Liquidation Trust's net income plus all net proceeds from the sale, realization, settlement or liquidation of the Liquidation Trust Assets, except that the Liquidation Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Liquidation Trust Assets, to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims).

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Parties agree as follows:

## **DEFINITIONS**

"<u>Affiliates</u>" means parents, subsidiaries, members, managers, limited partners, and general partners.

"<u>Agreement</u>" has the meaning specified in the Preamble to this Agreement.

"<u>Bankruptcy Court</u>" has the meaning specified in the Preamble to this Agreement.

"<u>Causes of Action</u>" means all Causes of Action (as defined in the Plan) that are Liquidation Trust Assets.

"<u>Confidential Party</u>" has the meaning specified in Article 16.4.

"<u>Debtors</u>" has the meaning specified in the Preamble to this Agreement.

"<u>Incentive Bonus</u>" has the meaning specified in Article 3.1(b).

"<u>IRS</u>" means the Internal Revenue Service of the United States of America.

"<u>Liquidation Trust</u>" has the meaning specified in the Preamble to this Agreement.

"<u>Liquidation Trust Asset Proceeds</u>" means any and all proceeds from the Liquidation Trust Assets, including, without limitation, any cash or other property received from or in connection with the Liquidation Trust Assets or the prosecution, settlement, or adjudication of any related Causes of Action that are Liquidation Trust Assets.

"<u>Liquidation Trust Beneficiaries</u>" means the Holders of Allowed General Unsecured Claims.

"Liquidation Trustee" has the meaning specified in the Preamble to this Agreement and includes any successor Liquidation Trustee appointed pursuant to Article 10.1.

"Liquidation Trustee Non-Professionals" has the meaning specified in Article 13.1(b).

"Liquidation Trustee Professionals" has the meaning specified in Article 13.1(a).

"Parties" has the meaning specified in the Preamble to this Agreement.

"Person" means any individual, corporation, partnership, joint venture, association, trust, unincorporated organization, or other legal entity, or any governmental authority, entity, or political subdivision thereof.

"Petition Date" has the meaning specified in the Preamble to this Agreement.

"Plan" has the meaning specified in the Preamble to this Agreement.

"Post-Confirmation Committee" means the entity formed as of the Effective Date, pursuant to Article 2.1.

"Undeliverable Distributions" has the meaning specified in Article 4.3.

## ARTICLE 1
## NAME OF TRUST AND LIQUIDATION TRUSTEE

The name of the Liquidation Trust is the "MobiTV Liquidation Trust."

E. Lynn Schoenmann is hereby appointed to serve as the initial Liquidation Trustee under the Plan, and hereby accepts this appointment and agrees to serve in such capacity effective upon the Effective Date of the Plan and pursuant to the terms of the Plan and this Agreement. A successor Liquidation Trustee shall be appointed as set forth in Article 10.1 in the event the Liquidation Trustee is removed or resigns pursuant to this Agreement, or if the Liquidation Trustee otherwise vacates the position.

## ARTICLE 2
## DUTIES AND POWERS OF THE LIQUIDATION TRUSTEE

### 2.1   Generally

The Liquidation Trustee shall be responsible for Liquidation and administering (or abandoning, as the case may be) the Liquidation Trust Assets, including the Causes of Action, and taking actions on behalf of, and representing, the Liquidation Trust. The Liquidation Trustee shall have the authority to bind the Liquidation Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity of Liquidation Trustee and not individually.

### 2.2   Scope of Authority of Liquidation Trustee

Within the limitations set forth herein, and subject to the oversight provisions of the Post-Confirmation Committee set forth in this Agreement, the responsibilities and authority of the

Liquidation Trustee shall include, without limitation: (i) holding and administering the Liquidation Trust Assets, (ii) evaluating and determining strategy with respect to the Causes of Action and litigating Causes of Action, or settling, transferring, releasing, or abandoning any and all Causes of Action on behalf of the Liquidation Trust, (iii) facilitating the prosecution or settlement of objections to, or estimations of, Claims asserted against the Liquidation Trust or the Liquidation Trust Assets, (iv) calculating and implementing distributions to the Liquidation Trust Beneficiaries in accordance with the Plan and this Agreement, (v) filing all required tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (vi) retaining Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals as provided in the Plan or this Agreement, (vii) receiving reasonable compensation for performing services as Liquidation Trustee in accordance with this Agreement and paying the reasonable fees, costs, and expenses of any Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals in accordance with the applicable provisions of this Agreement, (viii) filing all required reports with the Bankruptcy Court regarding the status of the administration of the Liquidation Trust Assets and the assets, liabilities, and transfers of the Liquidation Trust, and (ix) carrying out such other responsibilities not specifically set forth herein as may be vested in the Liquidation Trustee pursuant to the Plan, this Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

2.3    Obligations to Liquidation Trust and Beneficiaries

The Liquidation Trustee's actions as Liquidation Trustee will be held to standards required under Delaware law.

2.4    Additional Powers of Liquidation Trustee

In connection with the administration of the Liquidation Trust, subject to and except as otherwise set forth in this Agreement or the Plan, the Liquidation Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Liquidation Trust, subject to the advice of the Post-Confirmation Committee. Without limiting, but subject to, the foregoing, the Liquidation Trustee shall, unless otherwise provided in this Agreement and subject to the limitations contained herein and in the Plan:

(a)    be expressly authorized and required to hold legal title (on behalf of the Liquidation Trust as Liquidation Trustee, but not individually) to the Liquidation Trust Assets, including, but not limited to, the Causes of Action, and be expressly authorized to vote any Claim held by the Liquidation Trust in any case or proceeding under the Bankruptcy Code or otherwise and to receive any distribution therein;

(b)    be expressly authorized and required to protect and enforce the rights to the Liquidation Trust Assets vested in the Liquidation Trust by the Plan by any method deemed appropriate in its discretion, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(c)    be expressly authorized to invest funds (in the manner set forth in Article 2.8), make distributions, and pay any other obligations owed by the Liquidation Trust from the Liquidation Trust Assets as provided herein and in the Plan;

(d)     be expressly authorized and required to prosecute, defend, compromise, adjust, analyze, arbitrate, abandon, estimate, or otherwise deal with and settle, in accordance with the terms set forth in Article 5 hereof, Claims against the Liquidation Trust or the Liquidation Trust Assets;

(e)     be expressly authorized and required to pay expenses and make disbursements necessary to preserve and liquidate the Liquidation Trust Assets;

(f)     be expressly authorized and required to make the Distributions as contemplated in the Plan and this Agreement;

(g)     be expressly authorized and required to file appropriate tax returns with respect to the Liquidation Trust and the Debtors, and pay taxes properly payable by the Liquidation Trust, if any, in the exercise of its fiduciary obligations;

(h)     be expressly authorized and required to take such actions as are necessary and reasonable to carry out the purposes of the Liquidation Trust;

(i)     be expressly authorized to purchase insurance coverage as the Liquidation Trustee, in its sole discretion, deems necessary and appropriate with respect to the assets, liabilities, and obligations of the Liquidation Trust;

(j)     be expressly authorized to consult with the Post-Confirmation Committee on a regular basis and keep the Post-Confirmation Committee fully advised as to the status of the Liquidation Trust and the Liquidation Trustee's activities;

(k)     be expressly authorized to retain and pay, as applicable, the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals as provided in, and subject to the terms of, this Agreement;

(l)     be expressly authorized to incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash, or otherwise administering the Liquidation Trust, as set forth in the Plan or this Agreement;

(m)     be expressly authorized to terminate the Liquidation Trust and seek to close the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code; and

(n)     be expressly authorized and required to assume such other powers as may be vested in or assumed by the Liquidation Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

2.5     General Authority of the Liquidation Trustee

Unless specifically stated otherwise herein, the Liquidation Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction: (a) authorized in this Agreement, or (b) specifically contemplated in the Plan.

2.6    Limitation of Liquidation Trustee's Authority; No On-Going Business

(a)    The Liquidation Trustee shall have no power or authority except as set forth in this Agreement or in the Plan.

(b)    For federal income tax purposes, the Liquidation Trustee shall not be authorized to engage in any trade or business with respect to the Liquidation Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.  The Liquidation Trustee shall take such actions consistent with the prompt orderly liquidation of the Liquidation Trust Assets as required by applicable law and consistent with the treatment of the Liquidation Trust as a liquidation trust under Treasury Regulation section 301.7701-4(d), to the extent such actions are permitted by this Agreement.

2.7    Other Activities

The Liquidation Trustee shall be entitled to retain Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals in accordance with the terms of this Agreement and to assist with the administration of the Liquidation Trust. The Liquidation Trustee, the Liquidation Trustee Professionals, and the Liquidation Trustee Non-Professionals may be retained in matters that are unrelated to the Liquidation Trust by banks, bank groups or other institutional lenders or debt holders who are, or whose Affiliates are, Beneficiaries of the Liquidation Trust or its Affiliates, so long as such other retention does not involve holding or representing any interest adverse to the interests of the Liquidation Trust, or otherwise preclude or impair the Liquidation Trustee from performing its duties under this Agreement.

2.8    Investment and Safekeeping of Liquidation Trust Assets

All monies and other assets received by the Liquidation Trustee shall, until distributed or paid over as herein provided, be segregated from all other monies and assets of the Liquidation Trustee, and further, shall be held in trust for the benefit of the Liquidation Trust Beneficiaries, but need not be segregated from other Liquidation Trust Assets, unless and to the extent required by the Plan and this Agreement. The Liquidation Trustee shall promptly invest any such monies in the manner set forth in this Article 2.8, but shall otherwise be under no liability for interest or income on any monies received by the Liquidation Trust hereunder and held for distribution or payment to the Liquidation Trust Beneficiaries, except as such interest shall actually be received. Investment of any monies held by the Liquidation Trust shall be administered in accordance with the general duties and obligations hereunder. The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power to (i) invest such Liquidation Trust Assets (pending distributions in accordance with the Plan or this Agreement) in (a) short-term direct obligations of, or obligations guaranteed by, the United States of America or (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or (ii) deposit such assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "**Permissible Investments**") *provided*, *however*, that the scope of any such Permissible Investments shall be limited to include

7

only those investments that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

2.9    Establishment of Reserves

On the Effective Date, the Liquidation Trustee shall establish and maintain a Reserve of Cash from the Liquidation Trust Assets as the Liquidation Trustee deems reasonably necessary to satisfy Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Secured Claims, and for the Liquidation Trust Expense Reserve. Further, upon the Professional Fee Bar Date, the Liquidation Trustee shall establish a Reserve of Cash from the Liquidation Trust Assets in an amount that the Liquidation Trustee deems reasonably necessary to satisfy all Professional Fee Claims.

2.10    Post-Confirmation Committee

(a)    Formation. On the Effective Date, the Committee will be dissolved and the Post-Confirmation Committee, which shall consist of two (2) members, will be formed to serve as an advisory board to the Liquidation Trustee. The Post-Confirmation Committee will assume the rights and obligations set forth in this Agreement. The initial members of the Post-Confirmation Committee shall be the persons identified in that certain *Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 453]. Each member of the Post-Confirmation Committee must hold, at all times throughout their service on the Post-Confirmation Committee, a General Unsecured Claim against the Estates (or be the legal nominee or designee of a holder of a General Unsecured Claim against the Estates). Any member of the Post-Confirmation Committee that no longer holds a General Unsecured Claim against the Estates shall be immediately removed from the Post-Confirmation Committee. The purchaser of a General Unsecured Claim from a member of the Post-Confirmation Committee shall not automatically succeed to the member's position on the Post-Confirmation Committee by reason of the purchase of such General Unsecured Claim but may be appointed upon unanimous vote of all members of the Post-Confirmation Committee, without approval of the Bankruptcy Court. A member's rights of membership on the Post-Confirmation Committee may not be transferred to or otherwise be assigned or delegated to another person or entity without the express written consent of the Post-Confirmation Committee.

(b)    Procedures for Oversight. The Liquidation Trustee may obtain the Post-Confirmation Committee's advice for any action by email, without a meeting, and advice shall be deemed to have been provided pursuant to majority vote of the Post-Confirmation Committee upon the Liquidation Trustee's receipt of return emails from at least a majority of the Post-Confirmation Committee after a period of time reasonable under the circumstances. If the Liquidation Trustee determines, in its sole discretion, that a meeting of the Post-Confirmation Committee should be held or advice should be obtained on an emergency basis, the Liquidation Trustee shall be entitled to convene a meeting of the Post-Confirmation Committee upon 24-hours' advance written notice, and the Liquidation Trustee shall be entitled to obtain advice by email upon 24-hours' advance written notice.

# ARTICLE 3
## TERM AND COMPENSATION FOR LIQUIDATION TRUSTEE

3.1    Compensation

(a)    The Liquidation Trustee shall be entitled to receive compensation for services rendered on behalf of the Liquidation Trust in the amount of $10,000 per month, payable on the first Business Day of each month, plus reimbursement of all reasonable, out-of-pocket expenses, until the date the Liquidation Trust is dissolved and terminated pursuant to Article 14.1, or by an order of the Bankruptcy Court.

(b)    In addition to the compensation set forth in Article 3.1(a) herein, the Liquidation Trustee shall be entitled to receive an incentive bonus based on the final percentage recovery to Holders of Allowed General Unsecured Claims (excluding Subordinated Claims and the Prepetition Lender Deficiency Claim), calculated as follows (the "**Incentive Bonus**"):

| Percentage Recovery of Allowed General Unsecured Claims | Incentive Bonus[2] |
|---|---|
| ≥ 0.00% and < 23.00% recovery | 0% |
| ≥ 23.00% and ≤ 24.99% recovery | 1% |
| ≥ 25.00% and ≤ 26.99% recovery | 1.5% |
| ≥ 27.00% recovery and ≤ 28.99% recovery | 2% |
| ≥ 29.00% and ≤ 29.99% recovery | 2.5% |
| ≥ 30.00% recovery | 3% |

(c)    All compensation and other amounts payable to the Liquidation Trustee shall be paid out of the Liquidation Trust Expense Reserve.

3.2    Termination

The duties, responsibilities, and powers of the Liquidation Trustee will terminate on the date the Liquidation Trust is dissolved and terminated pursuant to Article 14.1, or by an order of the Bankruptcy Court.

3.3    Bond

The Liquidation Trustee shall post an appropriate bond with respect to the performance of the obligations and liabilities of the Liquidation Trustee under the Plan and this Agreement (the

---

[2]    Incentive Bonuses are expressed as a percentage of proceeds distributable to Liquidation Trust Beneficiaries, inclusive of any earned Incentive Bonus. Incentive Bonuses are not cumulative (*i.e.*, a percentage recovery of 29.00% results in an Incentive Bonus of 2.5%, not 7%).

"Liquidation Trust Bond").  The cost of the Liquidation Trust Bond shall be an expense of the Liquidation Trust and paid from the Liquidation Trust Assets.

3.4     Removal

The Liquidation Trustee may be removed only for (i) cause by a Final Order of the Bankruptcy Court, after notice and a hearing; *provided*, *however*, that the Liquidation Trustee may not be removed until a successor Liquidation Trustee has been named or is capable of being named immediately upon such removal, or (ii) the Post-Confirmation Committee may remove the Liquidation Trustee at its discretion upon unanimous vote of all members without approval of the Bankruptcy Court, provided, however, that the Post-Confirmation Committee shall provide the Liquidation Trustee with thirty (30) days written notice of its intent to remove the Liquidation Trustee.  For purposes of removing the Liquidation Trustee, "cause" shall mean gross negligence, breach of fiduciary duty, breach of trust, and reckless or willful mishandling of the Liquidation Trust Assets.  Any fees and unreimbursed expenses that have been properly incurred by the Liquidation Trustee or the Post-Confirmation Committee in accordance with the terms of this Agreement that are owing to the Liquidation Trustee or Post-Confirmation Committee as of the date of the Liquidation Trustee's removal shall be paid to the Liquidation Trustee or Post-Confirmation Committee, as applicable, within seven (7) calendar days of the removal date.

3.5     Resignation

The Liquidation Trustee may resign by giving not less than sixty (60) calendar days' prior written notice thereof to the Bankruptcy Court and the Liquidation Trust Beneficiaries.

**ARTICLE 4**
**PROVISIONS REGARDING DISTRIBUTIONS**

4.1     Priority and Method of Distributions

(a)     Generally.  The Liquidation Trustee, on behalf of the Liquidation Trust, or such other Person as may be designated in accordance with this Agreement, will make distributions to the Liquidation Trust Beneficiaries in accordance with this Agreement and in accordance with the priorities set forth in, and the other provisions of, the Plan.  Whenever any distribution to be made under the Plan or this Agreement is due on a day other than a Business Day, such distribution shall be made, without interest, on the immediately succeeding Business Day, but any such distribution will have been deemed to have been made on the date due.

(b)     Distribution of Liquidation Trust Assets and Proceeds Thereof.  All Liquidation Trust Assets and all Liquidation Trust Asset Proceeds shall be distributed in accordance with the terms of this Agreement, the Plan, and Confirmation Order.

(c)     Timing of Distributions.  Except as specifically set forth in the Plan, the Liquidation Trustee may determine, in its discretion, the appropriate timing, amount, and cadence for distributions.

(d)     Periodic Distribution Requirement.  Subject to the provisions of this Article 4 and to the extent required to maintain grantor trust tax status, the Liquidation Trustee is required

10

to distribute within thirty (30) days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, to the Liquidation Trust Beneficiaries the Liquidation Trust's net income plus all net proceeds from the sale, realization, settlement, or liquidation of the Liquidation Trust Assets, except that the Liquidation Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Liquidation Trust Assets, to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims).

(e)     Withholding.  When making a Distribution, the Liquidation Trustee may retain an amount of Liquidation Trustee Assets reasonably necessary to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims). The Liquidation Trustee may also withhold from amounts distributable to any Person any and all amounts, to be determined in the Liquidation Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other government equivalent of the United States or of any political subdivision thereof.  To the extent that amounts are so withheld and paid over to the appropriate governmental entity, such amounts shall be treated for all purposes of this Agreement as having been paid to the Person in respect of whom such deduction and withholding was made.

(f)     Tax Identification Numbers.  The Liquidation Trustee is authorized to request and obtain from the Liquidation Trust Beneficiaries or any other Person Forms W-8 and/or W-9 or such other forms or information relating to the Liquidation Trustee's obligations to withhold as the Liquidation Trustee may reasonably request, and the Liquidation Trustee may condition any distribution to any Liquidation Trust Beneficiary or other distributee upon receipt of such forms or information.

4.2     Delivery of Distributions.

Subject to the provisions of Federal Rule of Bankruptcy Procedure 2002(g), and except as otherwise provided herein, Distributions to the Liquidation Trust Beneficiaries shall be made: (i) at the addresses set forth on the respective proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules if no proof of Claim is Filed and the Liquidation Trustee has not received a written notice of a change of address.

4.3     Undeliverable Distributions.

If the Distribution to a Liquidation Trust Beneficiary is returned to the Liquidation Trustee as undeliverable ("**Undeliverable Distributions**"), no further Distribution shall be made to such Liquidation Trust Beneficiary unless and until the Liquidation Trustee is notified in writing of such Liquidation Trust Beneficiary's then current address.  Undeliverable Distributions shall remain in the possession of the Liquidation Trustee until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such Undeliverable Distribution becomes an Unclaimed Distribution under this Agreement and the Plan.

The Liquidation Trustee shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, *provided*, *however*, nothing contained in the Plan or this Agreement shall require the Liquidation Trustee to locate any Liquidation Trust Beneficiary.

### 4.4    Unclaimed Distributions

Any entity which fails to claim any Cash within 90 days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, and the Liquidation Trustee shall be authorized to cancel any distribution that is not timely claimed. Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the source of such distribution (*i.e.,* the Liquidation Trustee or the Distribution Reserve) free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules. Upon forfeiture, the claim of any Creditor or Interest Holder with respect to such funds shall be irrevocably waived and forever barred against the all of the Debtors, the Estates, and the Liquidation Trustee, notwithstanding any federal or state escheat laws to the contrary, and such Creditor or Interest Holder shall have no claim whatsoever against the any of the foregoing or to any Holder of a Claim to whom distributions are made.

### 4.5    Remainder Amounts After Final Distribution

After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and Undeliverable Distributions is less than $5,000, the Liquidation Trustee may donate such amount to Delaware Pro Se Bankruptcy Foundation or such other charitable organization as determined by the Liquidation Trustee in its sole discretion.

### 4.6    De Minimis Distributions

If any interim distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may withhold such distribution until a final distribution is made to such Holder. If any final distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may cancel such distribution. Any potential distributions pursuant to this Section shall be treated as an Unclaimed Distribution under Section 9.02(i) of the Plan.

**ARTICLE 5**
**PROCEDURES FOR RESOLUTION OF DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

### 5.1    Objections to Claims; Prosecution of Disputed Claims

Except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Liquidation Trustee will have the authority, but not the obligation, to do any of the following with respect to any Claims or Interests: (1) file, withdraw, or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or

action, order, or approval by, the Bankruptcy Court. The Liquidation Trustee shall succeed to any pending objections to Claims filed by the Debtors prior to the Effective Date, and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim. The Liquidation Trustee shall not be obligated to object to any Claim, but may consult with the Post-Confirmation Committee in deciding whether to object to any particular Claim.

5.2     Estimation of Claims

The Liquidation Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidation Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.   The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidation Trustee may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

5.3     Payments and Distributions on Disputed Claims

(a)     Notwithstanding anything herein to the contrary: (a) no distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Liquidation Trustee no distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim until such Person's Disputed Claims have been resolved by settlement or Final Order.

(b)     Except as otherwise provided in a Final Order or as agreed by the relevant parties, distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidation Trustee at such periodic intervals as the Liquidation Trustee determines to be reasonably prudent. No interest will be paid on Disputed Claims that later become Allowed or with respect to any distribution in satisfaction thereof to a Holder.

## ARTICLE 6
## LIABILITY AND EXCULPATION PROVISIONS

6.1     Standard of Liability

In no event shall the Liquidation Trustee or the Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Post-Confirmation Committee, Affiliates, representatives, employees, directors, officers or principals be held personally liable for any claim, expense, liability or other obligation asserted against the Liquidation Trust.  The Post-Confirmation Committee, the Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation

13

Trustee Non-Professionals, and each of their Affiliates, representatives, employees, directors, officers or principals shall not be liable for any negligence or any error of judgment made in good faith with respect to any action taken or omitted to be taken in good faith, except to the extent that the action taken or omitted to be taken by each of the same or their respective Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Affiliates, representatives, employees, directors, officers or principals is determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, fraud or, solely in the case of the Liquidation Trustee or Post-Confirmation Committee, breach of fiduciary duty. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct.

6.2    <u>Reliance by Liquidation Trustee</u>

Except as otherwise provided herein:

(a)    the Liquidation Trustee and Post-Confirmation Committee may rely, and shall be protected in acting upon, any resolution, certificate, statement, installment, opinion, report, notice, request, consent, order, or other paper or document reasonably believed to be genuine and to have been signed or presented by the proper party or parties;

(b)    the Liquidation Trustee and Post-Confirmation Committee shall not be liable for any action reasonably taken or not taken in accordance with the advice of a Liquidation Trustee Professional; and

(c)    persons dealing with the Liquidation Trustee or Post-Confirmation Committee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such person in carrying out the terms of this Agreement, and the Liquidation Trustee shall not have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Liquidation Trustee are determined by a Final Order to be solely due to the Liquidation Trustee's own gross negligence, willful misconduct, fraud or breach of fiduciary duty.

6.3    <u>Exculpation; Indemnification</u>

(a)    [Reserved]

(b)    No Holder of a Claim or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Post-Confirmation Committee, Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation Trustee Non-Professionals, or any of their representatives, employees, directors, officers or principals for making payments in accordance with the Plan or this Agreement or for implementing the provisions of the Plan or this Agreement.  Any act taken or not taken, in the case of the Liquidation Trustee and Post-Confirmation Committee, with the approval of the Bankruptcy Court, will be conclusively deemed not to constitute gross negligence, willful misconduct, or a breach of fiduciary duty.

(c)    <u>Indemnification</u>.  The Liquidation Trust shall indemnify, defend and hold harmless the Post-Confirmation Committee, Liquidation Trustee, the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals, solely from Liquidation Trust Assets,

from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees and expenses) occurring after the Effective Date, other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, or, solely in the case of the Liquidation Trustee and Post-Confirmation Committee, breach of fiduciary duty, to the fullest extent permitted by applicable law.  Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this Article shall be payable only from the Liquidation Trust Assets, may be advanced (from insurance or Liquidation Trust Assets) prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a distribution of the Liquidation Trust Assets.

## ARTICLE 7
## ESTABLISHMENT OF THE LIQUIDATION TRUST

### 7.1    Transfer of Assets to Liquidation Trust; Assumption of Liabilities

Pursuant to the Plan, the Debtors and the Liquidation Trustee hereby establish the Liquidation Trust on behalf of the Liquidation Trust Beneficiaries, to be treated as the grantors and deemed owners of the Liquidation Trust Assets and the Debtors hereby transfer, assign, and deliver to the Liquidation Trust, on behalf of the Liquidation Trust Beneficiaries, all of their right, title, and interest in the Liquidation Trust Assets, including the related claims and Causes of Action of the Debtors, other than Released Causes of Action in accordance with the provisions of the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law.  Such transfer includes, but is not limited to, all rights to assert, waive or otherwise exercise any attorney-client privilege, work product protection or other privilege, immunity, or confidentiality provision vested in, or controlled by, the Debtors.  The Liquidation Trustee agrees to accept and hold the Liquidation Trust Assets in the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries, subject to the terms of the Plan and this Agreement.

### 7.2    Title to Assets

(a)    On the Effective Date, the Debtors shall transfer the Liquidation Trust Assets to the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries. Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, all assets and properties encompassed by the Plan shall vest in the Liquidation Trust in accordance with section 1141 of the Bankruptcy Code.  Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Debtors shall have no interest in or with respect to such Liquidation Trust Assets or the Liquidation Trust.

(b)    For all federal income tax purposes, all Parties and Liquidation Trust Beneficiaries shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in this Article 7 and in the Plan, as a transfer of such assets by the Debtors to the Liquidation Trust Beneficiaries entitled to distributions under this Agreement followed by a transfer by such Liquidation Trust Beneficiaries to the Liquidation Trust.  Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

15

7.3     Valuation of Assets

As soon as practicable after the Effective Date, the Liquidation Trustee (to the extent that the Liquidation Trustee deems it necessary or appropriate in its discretion), shall value the Liquidation Trust Assets based on the good faith determination of the Liquidation Trustee.  The valuation shall be used consistently by all Parties and the Liquidation Trust Beneficiaries for all federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

## ARTICLE 8
## LIQUIDATION TRUST BENEFICIARIES

8.1     Identification of Liquidation Trust Beneficiaries

In order to determine the actual names and addresses of the Liquidation Trust Beneficiaries, the Liquidation Trustee shall be entitled to conclusively rely on the names and addresses set forth in the Debtors' Schedules or filed proofs of claim, unless the Liquidation Trustee receives timely notice of a Liquidation Trust Beneficiary's change of address.  Each Liquidation Trust Beneficiary's right to distribution from the Liquidation Trust, which is dependent upon such Liquidation Trust Beneficiary's classification under the Plan, shall be that accorded to such Liquidation Trust Beneficiary under the Plan.

## ARTICLE 9
## ADMINISTRATION

9.1     Purpose of the Liquidation Trust

The Liquidation Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.  Accordingly, the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely distributions to the Liquidation Trust Beneficiaries and not unduly prolong its duration, and shall take or refrain from taking such other actions as may be necessary, in the Liquidation Trustee's reasonable judgment, to preserve and maintain the status of the Liquidation Trust as a "liquidation trust" and as a "grantor trust" within the meaning of Treasury Regulation sections 301.7701-4(d) and 1.671-4(a).  The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in the Plan or this Agreement.

9.2     Books and Records

The Liquidation Trustee shall maintain books and records relating to the administration of the Liquidation Trust Assets and the distribution by the Liquidation Trustee of the proceeds therefrom in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  The Liquidation Trustee shall also maintain books and records relating to the administration of the Liquidation Trust Assets (including the Causes of Action), the income and expenses of the Liquidation Trust,

16

and the payment of expenses of and liabilities of, claims against or assumed by, the Liquidation Trust in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  Except as otherwise provided herein or in the Plan, nothing in this Agreement requires the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Liquidation Trust Assets. The Post-Confirmation Committee may obtain information relating to the management of the Liquidation Trust Assets upon reasonable written notice to the Liquidation Trustee, subject to applicable privileges, confidentiality requirements and applicable law.

    9.3    <u>Compliance with Laws</u>

Any and all distributions of Liquidation Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state tax and securities laws.

**ARTICLE 10**
**SUCCESSOR LIQUIDATION TRUSTEE**

    10.1    <u>Successor Liquidation Trustee</u>

In the event the Liquidation Trustee is removed pursuant to this Agreement, resigns pursuant to this Agreement, or otherwise vacates its position, the Post-Confirmation Committee shall appoint a successor Liquidation Trustee by unanimous vote of all members.  If a successor Liquidation Trustee is not so appointed, then the Bankruptcy Court shall appoint a successor in accordance with the best interests of the Liquidation Trust Beneficiaries.  Any successor Liquidation Trustee appointed hereunder shall execute an instrument accepting such appointment. Thereupon, such successor Liquidation Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Liquidation Trust with like effect as if originally named herein; *provided, however*, that a removed or resigning Liquidation Trustee shall, nevertheless, when requested in writing by the successor Liquidation Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Liquidation Trustee all the estates, properties, rights, powers, and trusts of such removed or resigning Liquidation Trustee.

**ARTICLE 11**
**REPORTING**

    11.1    <u>Quarterly and Final Reports</u>

As soon as practicable but in no event later than thirty (30) calendar days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust has been distributed or otherwise paid out in accordance with the Plan and this Agreement, the Liquidation Trustee shall File a report with the Bankruptcy Court setting forth the amounts, recipients, and dates of all Distributions made by the Liquidation Trustee through each applicable reporting period.

17

11.2    Federal Income Tax

(a)    Grantor Trust Status.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Liquidation Trustee of a private letter ruling if the Liquidation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidation Trustee), the Liquidation Trustee shall file tax returns for the Liquidation Trustee as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(b)    Allocations of Liquidation Trust Taxable Income.  Subject to the provisions of Article 11.2(a) hereof, allocations of Liquidation Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the Liquidation Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Liquidation Trust Beneficiaries (treating any Holder of a Disputed Claim, for this purpose, as a current Liquidation Trust Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the Liquidation Trust (including any distributions held in reserve pending the resolution of Disputed Claims).  Similarly, taxable losses of the Liquidation Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidation Trust Assets.  The tax book value of the Liquidation Trust Assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidation Trust, adjusted in either case in accordance with tax accounting principles prescribed by the United States Internal Revenue Code, the Treasury Regulations and any other applicable administrative and judicial authorities and pronouncements.

(c)    Tax Reporting Duties of Liquidation Trustee.  Within sixty (60) calendar days following the end of each calendar year, the Liquidation Trustee shall prepare and distribute a statement setting forth the information necessary for each Liquidation Trust Beneficiary to determine its share of items of income, gain, loss, deduction or credit for United States federal income tax purposes.

11.3    Other

The Liquidation Trustee shall file (or cause to be filed) any other statement, returns or disclosures relating to the Liquidation Trust or the Liquidation Trust Assets, that are required by the IRS or any other Governmental Unit.

## ARTICLE 12
## TRANSFERABILITY OF LIQUIDATION TRUST BENEFICIARIES' INTERESTS

12.1    Transferability of Liquidation Trust Beneficiaries' Interests

The beneficial interests that are owned by the Liquidation Trust Beneficiaries, which shall be reflected only on the records of the Liquidation Trust maintained by the Liquidation Trustee, shall be uncertificated, are not negotiable, and shall not be assignable or transferable voluntarily. In the case of a deceased individual Liquidation Trust Beneficiary, its executor or administrator shall succeed to such decedent's beneficial interest upon notice to the Liquidation Trustee.

## ARTICLE 13
## LIQUIDATION TRUSTEE PROFESSIONALS
## AND NON-PROFESSIONALS

13.1    Retention of Liquidation Trustee Professionals and Non-Professionals

(a)    The Liquidation Trustee shall have the right to retain its own professionals including, without limitation, claims, disbursing and transfer agents, legal counsel, accountants, experts and other agents or advisors, as the Liquidation Trustee deems appropriate (the "**Liquidation Trustee Professionals**") and on such terms as the Liquidation Trustee deems appropriate.  The Liquidation Trustee Professionals shall be compensated in accordance with Article 13.2 hereof.  The Liquidation Trustee Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of the Committee.

(b)    The Liquidation Trustee shall have the right to retain non-professionals including, without limitation, employees, independent contractors or other agents as the Liquidation Trustee deems appropriate (the "**Liquidation Trustee Non-Professionals**") and on such terms as the Liquidation Trustee deems appropriate.  Such Liquidation Trustee Non-Professionals shall be compensated in accordance with Article 13.2 hereof.  The Liquidation Trustee Non-Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, employees, independent contractors or agents of the Committee.

13.2    Payment to Liquidation Trustee Professionals and Non-Professionals

(a)    After the Effective Date, Liquidation Trustee Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Liquidation Trustee, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses.  The Liquidation Trustee shall pay those invoices fourteen (14) calendar days after a copy of such invoices is provided to the Liquidation Trustee, without Bankruptcy Court approval, unless the Liquidation Trustee objects.  If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(b)    After the Effective Date, Liquidation Trustee Non-Professionals shall be required to submit to the Liquidation Trustee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and charges.  The Liquidation Trustee shall pay those invoices fourteen (14) calendar days after a copy of such invoices is provided to the Liquidation Trustee, without Bankruptcy Court approval, unless the Liquidation Trustee objects.  If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(c)    All payments to Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals shall be paid out of the Liquidation Trust Assets.

**ARTICLE 14**
**TERMINATION OF LIQUIDATION TRUST**

14.1    Duration and Extension

Notwithstanding any provision of the Plan to the contrary, the Liquidation Trust shall be dissolved no later than two (2) years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the second anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a Liquidation trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets; *provided*, *however*, that adequate funding exists for such extension period as determined by the Bankruptcy Court; provided, further, that each request for an extension shall be approved by the Bankruptcy Court within six months prior to the conclusion of the extended term. After (a) the final Distribution of the balance of the assets or proceeds of the Liquidation Trust pursuant to the Plan, (b) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, and (c) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

14.2    Diligent Administration

The Liquidation Trustee shall, as applicable, (i) not unduly prolong the duration of the Liquidation Trust; (ii) at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Liquidation Trust Assets; (iii) effect the liquidation and distribution of the Liquidation Trust Assets to the Liquidation Trust Beneficiaries in accordance with the terms hereof; (iv) consult and confer with the Post-Confirmation Committee and keep it fully advised of its activities, and; (v) endeavor to terminate the Liquidation Trust as soon as reasonably practicable.

**ARTICLE 15**
**AMENDMENT AND WAIVER**

15.1    Amendment and Waiver

Any substantive provision of this Agreement may be materially amended or waived only with the written consent of the Liquidation Trustee or by order of the Bankruptcy Court if necessary to implement the Plan; *provided*, *however*, that no change may be made to this Agreement that would adversely affect the federal income tax status of the Liquidation Trust as a "grantor trust." Technical or non-material amendments to or waivers of portions of this Agreement may be made as necessary, to clarify this Agreement or to enable the Liquidation Trust to effectuate the terms of this Agreement, with the consent of the Liquidation Trustee.

DOCS_SF:105726.7

# ARTICLE 16
## MISCELLANEOUS PROVISIONS

16.1    Intention of Parties to Establish Grantor Trust

This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

16.2    Preservation of Privilege

In connection with the vesting and transfer of the Liquidation Trust Assets, including rights and Causes of Action, any attorney-client privilege, work-product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors shall be transferred to the Liquidation Trust and shall vest in the Liquidation Trust.  Accordingly, in connection with the prosecution and/or investigation of the Causes of Action by the Liquidation Trustee, any and all directors, officers, employees, counsel, agents, or attorneys-in-fact, of the Debtors, cannot assert any attorney-client privilege, work product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors or otherwise prevent, hinder, delay, or impede production or discussion of documents or communications requested by the Liquidation Trustee in discovery (whether formal or informal, and including without limitation, depositions, written discovery, and interviews).  The Debtors and the Liquidation Trustee shall take all necessary actions to protect the transfer of such privileges, protections and immunities.

16.3    Prevailing Party

Subject to Article 6.3(c) hereof, if the Liquidation Trustee or the Liquidation Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Agreement or the enforcement thereof, then such prevailing party shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

16.4    Confidentiality

The Liquidation Trustee, and each of its employees, members, agents, professionals and advisors, including the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals, (each a "**Confidential Party**" and collectively the "**Confidential Parties**") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Entity to which any of the Liquidation Trust Assets relates; *provided*, *however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations.  In the event that any Confidential Party is requested to divulge confidential information pursuant to this subparagraph (b), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice

of such required disclosure to the Liquidation Trustee to allow him sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Liquidation Trustee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

16.5    <u>Laws as to Construction</u>

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of law.

16.6    <u>Severability</u>

Except with respect to provisions herein that are contained in the Plan, if any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

16.7    <u>Notices</u>

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered by facsimile (at the numbers set forth below) and deposited, postage prepaid, in a post office or letter box addressed to the person (or their successors or replacements) for whom such notice is intended at such address as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

> Liquidation Trustee:
>
> E. Lynn Schoenmann
> 35 Miller Ave., #298
> Mill Valley, CA  94941
> Email:  lschoenmann@earthlink.net
>
> With a copy to:
>
> Michael A. Sweet, Esq.
> Fox Rothschild LLP
> 345 California Street
> Suite 2200
> San Francisco, CA 94104
> Email: msweet@foxrothschild.com
>
> -and-
>
> Gordon E. Gouveia, Esq.
> Fox Rothschild LLP
> 321 N. Clark, Suite 1600

Chicago, IL  60654

Email: ggouveia@foxrothschild.com

With a copy to:

[Post-Confirmation Committee Notice]

16.8     <u>Notices if to a Liquidation Trust Beneficiary</u>

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth on such Liquidation Trust Beneficiary's proof of claim or such other notice filed with the Bankruptcy Court, or if none of the above has been filed, to the address set forth in the Debtors' Schedules or provided to the Liquidation Trustee pursuant to Article 8.1.

16.9     <u>Survivability</u>

Notwithstanding any provision of the Plan to the contrary, the terms and provisions of this Agreement shall remain fully binding and enforceable notwithstanding any vacancy in the position of the Liquidation Trustee.

16.10    <u>Headings</u>

The section headings contained in this Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

16.11    <u>Conflicts with Plan Provisions</u>

Except as otherwise expressly stated herein, if any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

E. Lynn Schoenmann, not individually but solely as Liquidation Trustee

By: _____
Name:  E. Lynn Schoenmann

MobiTV, Inc. and related Debtors

By: _____
Name: Chris Tennenbaum
Title:  Chief Restructuring Officer

24

# **<u>EXHIBIT B</u>**

**Confirmation Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MOBITV, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 21-10457 (LSS)<br><br>Jointly Administered<br><br>**Related to Docket No. ___** |

**NOTICE OF (A) ENTRY OF ORDER CONFIRMING THE
CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS; (B) OCCURRENCE
OF THE EFFECTIVE DATE; AND (C) CERTAIN IMPORTANT DEADLINES**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEEST:**

      **PLEASE TAKE NOTICE** that an order [Docket No. ●] (the "Confirmation Order") confirming the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* (as may be modified, the "Plan"), was entered by the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, and docketed by the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Court") on September [●], 2021. A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan or the Confirmation Order, as applicable.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, the Plan, and the related documents, are available to be viewed at the Bankruptcy Court's website (https://www.deb.uscourts.gov) for a small fee. To access the Court's website, you will need a PACER password and login, which can be obtained at https://pacer.uscourts.gov.

      **PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on September [●], 2021.

      **PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by the Plan, the Confirmation Order, or any other applicable order of the Bankruptcy Court, (a) all requests for payment of Administrative Claims arising on or after June 1, 2021, other than Professional Fee Claims, must be filed with the Claims Agent and served on the Liquidation Trustee by no later than _____, 2021 (the "**Final Administrative Claims Bar Date**") and (b) all requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court no later than _____, 2021 (the "**Professional Fee Bar Date**"). Holders of Administrative Claims that do not timely file and serve requests for payment of Administrative Claims by the Final

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: MobiTV, Inc. (2422) and MobiTV Service Corporation (8357). The Debtors' mailing address is 350 S. Grand Avenue, Suite 3000, Los Angeles, CA 90071.

Administrative Claims Bar Date shall be forever barred from asserting such claims against the Debtors or the Liquidation Trust.

**PLEASE TAKE FURTHER NOTICE** that all executory contracts and unexpired leases not assumed before the Effective Date, or subject to a pending motion to assume as of the Effective Date, are rejected pursuant to Section 8.01 of the Plan as of the Effective Date. Any proofs of claim based upon the rejection of a Debtor's executory contract or unexpired lease pursuant to the Plan must be filed by no later than thirty (30) calendar days after service of this Notice. Claims arising from the rejection of an executory contract or unexpired lease that are not filed by the foregoing deadline shall be discharged and forever barred.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Liquidation Trustee, the Liquidation Trust, any holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan and whether or not such Holder voted to accept the Plan.

Dated:  September __, 2021
        Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ DRAFT*
Debra I. Grassgreen (admitted *pro hac vice*)
Jason H. Rosell (admitted *pro hac vice*)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone:     302-652-4100
Facsimile:      302-652-4400
Email:           dgrassgreen@pszjlaw.com
           jrosell@pszjlaw.com
           mcaloway@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

FOX ROTHSCHILD LLP

*/s/ DRAFT*
Seth A. Niederman (DE No. 4588)
Michael A. Sweet (admitted *pro hac vice*)
Gordon E. Gouveia (admitted *pro hac vice*)
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
Telephone: (302) 654-7444
Facsimile: (302) 656-8920

*Counsel to the Official Committee of Unsecured Creditors*

**Dated: September 23rd, 2021**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

2